# 25-501

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

### JOSEPH SAFDIEH,

Petitioner-Appellee

v.

### COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellant

---

## ON APPEAL FROM THE ORDER OF THE UNITED STATES TAX COURT

---

## BRIEF FOR THE APPELLANT

---

JENNIFER M. RUBIN                    (202) 307-0524
ROBERT J. WILLE                      (202) 514-5573
    *Attorneys*
    *Tax Division*
    *Department of Justice*
    *Post Office Box 502*
    *Washington, D.C. 20044*

-i-

# TABLE OF CONTENTS

**Page**

Table of contents.............................................................i

Table of authorities ..................................................... iii

Glossary .................................................................ix

Statement of jurisdiction............................................1

Statement of the issue..................................................2

Statement of the case ...................................................2

    A.    Overview ..........................................................2

    B.    Statutory background: the IRS's assessment authority and the penalties at issue ......................................3

    C.    Factual background ................................................6

    D.    Tax Court proceedings ...........................................7

Summary of argument ........................................................11

Argument:

    The Tax Court erred in holding that the Internal Revenue Code does not authorize assessment of the Section 6038(b) penalty ...............................................................15

        Standard of review ...............................................15

    A.    The broad text of Section 6201(a) includes the Section 6038(b) penalty.....................................................15

    B.    Section 6201(a)'s role in the Code indicates it covers the Section 6038(b) penalty.............................................20

        1.    Section 6201 authorizes inquires and determinations in addition to assessments .................20

        2.    Section 7602 does not undermine the point regarding Section 6201's role in the Code ..................24

-ii-

**Page**

C.   The history of Section 6201 establishes that the term
       "all taxes (including interest, additional amounts,
       additions to the tax, and assessable penalties)" should
       be given a broad reading........................................................26

D.   The Tax Court erred in determining that Section
       6201(a) does not apply to Section 6038(b) penalties ............30

E.   The Tax Court erroneously required specific language to
       render a penalty assessable and ignored other penalty
       provisions that undermine this conclusion..........................35

F.   In the alternative, Section 6038's text, structure,
       function, and history authorize assessment of the
       Section 6038(b) penalty.......................................................38

Conclusion.......................................................................................44
Special appendix.............................................................................45
Certificate of compliance ..............................................................53

-iii-

## TABLE OF AUTHORITIES

**Cases:**                                                 **Page(s)**

*Bostock v. Clayton Cnty.*,
  590 U.S. 644 (2020) ..................................................... 18

*Buitrago-Cuesta v. I.N.S.*,
  7 F.3d 291 (2d Cir. 1993) ..................................................... 37

*Burns v. United States*,
  501 U.S. 129 (1991) ..................................................... 37

*Commodity Futures Trading Comm'n v. Schor*,
  478 U.S. 833 (1986) ..................................................... 34

*Farhy v. Commissioner*,
  100 F.4th 223 (D.C. Cir. 2024)...............2, 9, 14, 32, 34, 36-43

*Farhy v. Commissioner*,
  160 T.C. 399 (2023) ..........................2, 8, 10, 17, 19, 30-31, 35

*Farrell v. Commissioner*,
  136 F.3d 889 (2d Cir. 1998) ..................................................... 17

*Food & Drug Admin. v. Brown & Williamson
  Tobacco Corp.*, 529 U.S. 120 (2000)..................................... 15

*Golsen v. Commissioner*,
  54 T.C. 742 (1970) ..................................................... 8

*Gray v. Commissioner*,
  723 F.3d 790 (7th Cir. 2013)..................................................... 17

*Griffin v. Oceanic Contractors, Inc.*,
  458 U.S. 564 (1982) ..................................................... 24

*Latterman v. United States*,
  872 F.2d 564 (3d Cir. 1989) ..................................................... 19

*Maier v. Commissioner*,
  360 F.3d 361 (2d Cir. 2004) ..................................................... 15

*Motor Fuel Carriers, Inc. v. United States*,
  420 F.2d 702 (Ct. Cl. 1970) ..................................................... 19

*MPM Silicones, LLC v. Union Carbide Corp.*,
  966 F.3d 200 (2d Cir. 2020) ..................................................... 33

*Mukhi v. Commissioner*,
  162 T.C. 177 (2024) .....................................................2, 8-10

-iv-

**Cases (cont'd):**                                         **Page(s)**

*Mukhi v. Commissioner*, 163 T.C. No. 8,
2024 WL 4815052 (2024) (*en banc*) ....................... 2, 9, 24, 28, 30-31, 35, 41

*National Federation of Independent Business v. Sebelius*,
567 U.S. 519 (2012) .................................................. 22

*Polselli v. IRS*,
598 U.S. 432 (2023) .................................................. 3

*Samantar v. Yousuf*,
560 U.S. 305 (2010) .................................................. 16

*Smith v. Commissioner*,
133 T.C. 424 (2009) .................................................. 4

*Taylor v. United States*,
292 F. App'x 383 (5th Cir. 2008) ............................... 25

*United States v. Balanced Fin. Mgmt., Inc.*,
769 F.2d 1440 (10th Cir. 1985) ................................. 25

*United States v. Basye*,
410 U.S. 441 (1973) .................................................. 29

*United States v. Ernst & Whinney*,
735 F.2d 1296 (11th Cir. 1984) ................................. 25

*United States v. Foster Lumber Co.*,
429 U.S. 32 (1976) .................................................... 29

*United States v. Galletti*,
541 U.S. 114 (2004) .................................................. 3

*United States v. Lee, Goddard & Duffy, LLP*,
No. SACA06-408DOC, 2006 WL 2404137
(C.D. Cal. June 29, 2006) ......................................... 25

*United States v. Messina*,
806 F.3d 55 (2d Cir. 2015) ........................................ 23

*United States v. Reingold*,
731 F.3d 204 (2d Cir. 2013) ...................................... 16

*Virgin Islands v. Blumenthal*,
642 F.2d 641 (D.C. Cir. 1980) ................................... 33

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) .................................................. 33

*Ysleta Del Sur Pueblo v. Texas*,
596 U.S. 685 (2022) .................................................. 36

-v-

**Statutes:**                                                                 **Page(s)**

Internal Revenue Code (26 U.S.C.):

§ 45(b)(7)(B) .......................................................... 36
§ 45(b)(7)(B)(i)(II) ................................................ 35
§ 45(b)(7)(B)(ii) .................................................... 36
§ 48(a)(10)(B) ....................................................... 36
§ 179D(b)(4)(B) ..................................................... 36
§ 3640 (1939) .................................................... 26-27
§ 5000A(g) ............................................................ 18
§ 5761(a) ............................................. 13, 18, 31, 38
§ 6038 ................................ 4-5, 10-12, 14, 21, 24, 33-34, 38-43
§ 6038(a) ...................................... 2, 5, 18, 21, 39
§ 6038(a)(1) .......................................................... 4
§ 6038(b) ..................................... 2, 5-6, 8-9, 11-15, 17, 19-20,
                                                        23, 26, 30-35, 37-43
§ 6038(b)(2) ................................................... 21, 32
§ 6038(c) ................................................. 5, 22, 41
§ 6038(c)(3) .......................................................... 5
§ 6038(c)(4) ........................................... 6, 21, 32
§ 6038(c)(4)(B) ..................................... 22, 40
§ 6038D .............................................................. 36
§ 6038D(d) .......................................................... 36
§ 6038D(e) .......................................................... 37
§ 6048 .............................................................. 34
§ 6201 ................................ 9, 11-14, 16, 20, 22-24, 26,
                                                        28, 30-32, 37-38
§ 6201(a) ............................... 3, 5, 8, 11, 13, 15-21, 23-24,
                                                        26-27, 30-31, 36, 38, 40
§ 6201(b) ....................................................... 4, 18
§ 6201(e) ............................................................. 4
§ 6203 ................................................................ 3
§ 6212-15 ............................................................ 4
§ 6303(a) ............................................................. 6
§ 6320 .......................................................... 1, 3, 6
§ 6320(c) .......................................................... 1, 7
§ 6321 ................................................................ 3

-vi-

**Statutes (cont'd):**                                                    **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont'd):

§ 6322 ............................................................................ 3
§ 6330 ............................................................................ 3
§ 6330(d)(1) .................................................................... 1
§ 6331-6340 .................................................................... 3
§ 6601(e) ...................................................................... 19
§ 6662 ............................................................................ 4
§ 6663 ............................................................................ 4
§ 6665 .......................................................................... 31
§ 6665(b) ........................................................................ 4
§ 6671 .......................................................................... 31
§ 6677 .................................................................... 17, 34
§ 6679 .......................................................................... 17
§ 6686 .......................................................................... 17
§ 6688 .......................................................................... 17
§ 6700 .......................................................................... 25
§ 6707 .......................................................................... 17
§ 7122 ............................................................................ 3
§ 7269 ...................................................... 13, 18, 31, 38
§ 7442 ............................................................................ 1
§ 7459(c) ........................................................................ 1
§ 7482(a)(1) .................................................................... 1
§ 7482(b)(1)(G)(i) ............................................................ 1
§ 7483 ............................................................................ 1
§ 7602 .................................................................... 24-25
§ 7602(a) ................................................................ 24-26
§ 7602(b) ...................................................................... 25
§ 7701 .......................................................................... 16
§ 7701(c) ...................................................................... 16
§ 7806(b) ...................................................................... 19

28 U.S.C.:

§ 2461(a) ............................................... 8, 13, 21, 31-32

-vii-

**Statutes (cont'd):**            **Page(s)**

Internal Revenue Service Restructuring and Reform
     Act of 1998, Pub. L. No. 105-206, Title VI, § 6011(f),
     112 Stat. 685 ........................................................ 33

Omnibus Budget Reconciliation Act of 1989,
     Pub. L. No. 101-239, § 7712(a),
     103 Stat. 2106, 2393-94 ..................................... 33

Omnibus Budget Reconciliation Act of 1990,
     Pub. L. No. 101-508, § 11701(f),
     104 Stat. 1388, 1388-508 ................................... 33

Pub. L. No. 76-1, 53 Stat. 1 (1939) ............................... 26

Pub. L. No. 83-591, 68 Stat. 730 (1954) ....................... 27

Pub. L. No. 115-97, Title I, § 14301(c)(36), (37),
     131 Stat. 2054, 2224 (2017) ............................... 34

Small Business Job Protection Act of 1996,
     Pub. L. No. 104-188, Title I, § 1704(f)(5)(A), (t)(40),
     110 Stat. 1755, 1880, 1889 ................................. 33

Tax Reform Act of 1986, Pub. L. No. 99-514,
     §§ 1202(c), 1245(b)(5), 100 Stat. 2085, 2530-31, 2581 .......... 33

Taxpayer Relief Act of 1997, Pub. L. No. 105-34, Title XI,
     § 1142(a)-(e)(2), 111 Stat. 788, 981-983 ............... 33

**Legislative History:**

H.R. Rep. No. 83-1337 (1954) ...................................... 28

S. Rep. No. 83-1622 (1954) .......................................... 29

S. Rep. No. 97-494, Part I (1982) ................................. 5

-viii-

**Rules:**                                                                **Page(s)**

Tax Court Rule:

121(g) ....................................................................... 8

-ix-

## GLOSSARY

| Term | Definition |
|---|---|
| Commissioner | Appellant Commissioner of Internal Revenue |
| *Farhy I* | *Farhy v. Commissioner*, 160 T.C. 399 (2023). |
| *Farhy II* | *Farhy v. Commissioner*, 100 F.4th 223 (D.C. Cir. 2024). |
| I.R.C. | Internal Revenue Code (26 U.S.C.) |
| IRS | Internal Revenue Service |
| A- | Joint Appendix |
| *Mukhi I* | *Mukhi v. Commissioner*, 162 T.C. 177 (2024) |
| *Mukhi II* | *Mukhi v. Commissioner*, 163 T.C. No. 8 (2024). |
| Safdieh | Appellee Joseph Safdieh |

-1-

## STATEMENT OF JURISDICTION

### 1.    Jurisdiction in the Tax Court

On October 15, 2019, the IRS gave Joseph Safdieh notice of a tax-lien filing and informed him of his right to challenge the tax lien in a hearing with the IRS Independent Office of Appeals.  (A-29–32.)  On October 25, 2019, Safdieh timely requested a hearing pursuant to I.R.C. § 6320.  (A-33–36.)  On September 1, 2020, the Appeals Office issued a notice of determination sustaining the lien filing.  (A-46–49.)  On September 14, 2020, Safdieh timely petitioned the Tax Court for review of that determination.  (A-5–10.)  *See* I.R.C. § 6330(d)(1).  The Tax Court had jurisdiction under I.R.C. §§ 6320(c), 6330(d)(1) and 7442.

### 2.    Jurisdiction in the Court of Appeals

On December 5, 2024, the Tax Court entered a decision for Safdieh, resolving all claims of all parties.  (A-53–55); *see* I.R.C. § 7459(c).  On February 25, 2025, the Commissioner filed a timely notice of appeal.  (A-53–55.)  *See* I.R.C. § 7483.  This Court has jurisdiction under I.R.C. § 7482(a)(1).  Venue is proper in this Court because Safdieh resided in New York when the petition was filed.  (A-5); I.R.C. § 7482(b)(1)(G)(i).

-2-

## STATEMENT OF THE ISSUE

Whether the Internal Revenue Code (the "Code") authorizes the Secretary of the Treasury to assess penalties imposed under I.R.C. § 6038(b).

## STATEMENT OF THE CASE

### A.    Overview

This case addresses whether the IRS has the authority to assess a penalty that Congress imposed on taxpayers who failed to report their interests in certain foreign entities.  Joseph Safdieh failed to timely report his interests in foreign corporations as required by I.R.C. § 6038(a).  The IRS assessed penalties imposed by I.R.C. § 6038(b) and sought to collect the penalties administratively.  Safdieh challenged the penalties in an administrative proceeding and then in Tax Court.  The Tax Court (Judge Mark V. Holmes) held that the IRS lacked authority to assess Section 6038(b) penalties, applying its decisions in *Mukhi v. Commissioner*, 162 T.C. 177 (2024) (*Mukhi I*), *Mukhi v. Commissioner*, 163 T.C. No. 8, 2024 WL 4815052 (2024) (*en banc*) (*Mukhi II*), and *Farhy v. Commissioner*, 160 T.C. 399 (2023) (*Farhy I*), notwithstanding the D.C. Circuit's rejection of that position in *Farhy v. Commissioner*, 100 F.4th 223 (D.C. Cir. 2024) (*Farhy II*).  This appeal followed.

-3-

## B.    Statutory background: the IRS's assessment authority and the penalties at issue

The concept of "assessment" is critical to tax administration and collection. After the IRS determines that a taxpayer is liable for taxes owed, it makes an assessment by officially "recording the liability of the taxpayer." I.R.C. § 6203. While an assessment is not a prerequisite for enforcing a tax liability, *see Polselli v. IRS,* 598 U.S. 432, 442 (2023), the IRS almost always makes an assessment. After making an assessment, the IRS can use certain "administrative enforcement methods to collect the tax." *United States v. Galletti*, 541 U.S. 114, 122 (2004). Those methods include collection via liens and administrative levies. *See, e.g.*, I.R.C. §§ 6321, 6322, 6331-6340. And though an assessment triggers the availability of the IRS's administrative collection tools, it also provides the taxpayer an opportunity to resolve the liability through other means with the IRS, such as an offer-in-compromise (*see* I.R.C. § 7122). And if the IRS uses its administrative collection tools, the taxpayer is afforded the opportunity to challenge collection through a collection due process hearing. *See* I.R.C. §§ 6320, 6330.

The IRS's general assessment authority arises from I.R.C. § 6201(a), which states:

-4-

> The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law. . . .

Section 6201(b) provides two exceptions to the assessment authority, stating that unpaid estimated income tax and unpaid federal unemployment tax cannot be assessed. Certain types of taxes and penalties cannot be assessed until after the taxpayer receives a notice of deficiency giving the taxpayer the right to contest the liability in the Tax Court. *See* I.R.C. §§ 6201(e), 6212-15, 6665(b); *Smith v. Commissioner*, 133 T.C. 424, 429 (2009). Deficiency procedures generally apply to income, estate, and gift taxes, as well as the penalties for underpayment of such taxes. *See Smith*, 133 T.C. at 428-29; *see also* I.R.C. §§ 6662 and 6663.

The penalty at issue in this case arises under I.R.C. § 6038, which is located in Chapter 61 of the Code regarding "Information and Returns." Section 6038(a) requires U.S. persons to report information regarding ownership of certain foreign business entities, including the entity's undistributed earnings, balance sheet information, and information regarding a variety of transactions. *See* I.R.C. § 6038(a)(1).

-5-

When Congress added this reporting requirement to the Code in 1960, the only penalty for failing to provide the information was reduction of the taxpayer's foreign tax credit. *See* I.R.C. § 6038(c) (modern version of this penalty). Because this reduction resulted in increased tax, it was clear that the IRS had authority to assess it under I.R.C. § 6201(a)'s reference to taxes.

In 1982, Congress amended Section 6038 to add a fixed-dollar penalty for failure to report. The new penalty was added in light of "complaints about inadequate reporting with respect to controlled foreign corporations." S. Rep. No. 97-494, Part I, at 299 (1982). Congress was concerned that the credit-reduction penalty was not being imposed "because the penalty is complicated," because it could be "unduly harsh in some cases," and because the non-reporting U.S. person may have "paid no foreign income taxes during the year in question." *Id*. Thus, Section 6038(b) imposes a $10,000 penalty for an initial Section 6038(a) violation and a "continuation" penalty (up to $50,000 per violation) if a person fails to report after being notified of a violation. I.R.C. § 6038(b)(1)-(2). Section 6038(c)(3) provides rules coordinating the fixed-dollar penalty and the credit-reduction penalty.

-6-

And Section 6038(c)(4) provides that neither penalty applies where "(as shown to the satisfaction of the Secretary) reasonable cause existed for failure to furnish [the required] information."  I.R.C. § 6038(c)(4).

## C.    Factual background

In December 2018, the IRS assessed Section 6038(b) penalties of $10,000 per year against Safdieh for failure to file required Forms 5471 for tax years 2005 to 2009 and sent notice and demand for payment of the penalties pursuant to I.R.C. § 6303(a).[1]  (A-19–28.)  After Safdieh failed to pay, the IRS filed a notice of federal tax lien covering tax years 2005 to 2009.  (A-31.)

On October 15, 2019, the IRS gave Safdieh notice of the tax-lien filing and informed him of his right to challenge the tax lien in a hearing with the Independent Office of Appeals.  (A-29–32.)  Safdieh requested a hearing pursuant to I.R.C. § 6320, challenging his civil penalty, which he stated was not connected to any tax form.  (A-33–34.)  In an accompanying statement, he stated that he did not "agree with these civil penalties for not responding on time.  These are very

---

[1] In addition to the five $10,000 penalties, Safdieh also owes accrued interest, as well as a small assessment for fees and expenses for collection.

-7-

punitive." (A-36.)  He did not deny failing to timely file the Forms 5471.

The appeals officer sought to arrange an installment agreement to pay

off his penalties, which would result in the tax lien being released, but

could not do so because Safdieh had failed to file several tax returns.

(A-42–43.)

On September 1, 2020, the Appeals Office issued a notice of

determination sustaining the lien filing.  (A-46–49.)  As part of that

notice of determination, the Appeals Office verified "that the

requirements of any applicable law or administrative procedure have

been met."  I.R.C. § 6320(c).  (A-49.)

## D.    Tax Court proceedings

Safdieh filed a petition in the Tax Court contesting the notice of

determination.  (A-5–10.)  His petition asserted that he objected to the

notice of determination because "for the years in question all federal

taxes were paid" and "[t]here were net operating losses as well."  (A-5.)

He also claimed that he need not propose any collection alternatives

because he disputed that he owed any tax.  (A-5.)  After the pleadings

closed, the Commissioner moved for summary judgment, arguing that

Safdieh: (1) failed to establish that the settlement officer abused their

-8-

discretion in sustaining the collection action; and (2) was otherwise precluded from disputing the underlying tax liability. (Doc 10.) On June 1, 2021, Safdieh filed a handwritten opposition to the Commissioner's motion, but did not himself move for summary judgment. (Doc 16.)

While the Commissioner's motion for summary judgment was pending, the Tax Court issued its decision in *Farhy I*, holding that the Section 6038(b) penalty was not assessable but recoverable only via civil action pursuant to 28 U.S.C. § 2461(a). The Tax Court also concluded that such penalties are not otherwise taxes for purposes of Section 6201(a).

The Tax Court in this matter issued an order pursuant to Tax Court Rule 121(g), noting its holding in *Farhy I*, and acknowledging that the government had appealed it to the D.C. Circuit. (A-51–52.) The court recognized that it normally follows its own precedent in cases appealable to other circuits, and that it had recently declined to overrule *Farhy* in a case appealable to the Eighth Circuit, *Mukhi I,* 162 T.C. 177 (2024). (A-51.) *See Golsen v. Commissioner*, 54 T.C. 742, 747 (1970), aff 'd, 445 F.2d 985 (10th Cir. 1971). The court further noted

-9-

that, under its precedent, it could grant summary judgment against the
Commissioner even though Safdieh himself had not moved for summary
judgment.  (A-51.)  In light of this, the court ordered the Commissioner
to file a response pointing out "any difference between this case, and
Farhy and Mukhi," in the absence of which the court intended to enter
summary judgment in Safdieh's favor.  (A-52.)

Before the due date for the Commissioner's response to that order,
the D.C. Circuit reversed the Tax Court's *Farhy I* decision, holding in
*Farhy II* that Section 6038(b) penalties are assessable.  *See Farhy II*,
100 F.4th at 236.  In its response to the court's order, the Commissioner
acknowledged that "the basic facts that underly the assessment issue in
[this matter, *Farhy I*, and *Mukhi I*] do not differ," but it urged the Tax
Court to follow the D.C. Circuit's decision in *Farhy II*.  (Doc. 20 at 14.)
The Commissioner argued that Congress intended Section 6038(b)
penalties to be assessable and/or that Section 6201 authorized their
assessment.  (Doc. 20 at 3-13.)

After the D.C. Circuit overruled its *Farhy I* decision, the Tax
Court declined to reconsider its decision in *Mukhi*.  *See Mukhi II,* 163
T.C. No. 8 (2024).

-10-

The Tax Court granted summary judgment in favor of Safdieh. It acknowledged that the D.C. Circuit had reversed its decision in *Farhy I* and noted that its tradition in that scenario "is to reexamine our reasoning when the issue is next raised in a case appealable to a different circuit." (A-54.) The court then explained that it had conducted this reexamination in *Mukhi II*, in response to the Commissioner's motion for reconsideration in that case. (A-54.) The result, the court observed, was that it would continue to adhere to its interpretation of Section 6038 and "would continue [its] disagreement with the D.C. Circuit in cases appealable to other circuits." (A-54.) As a result, the court entered summary judgment in favor of Safdieh because verification by the appeals officer that the requirements of applicable law have been met was impossible, where the Commissioner lacked the authority to assess the penalties. (A-54.) The court did not conduct further analysis of the issue, but it noted that "we regard any arguments in *Farhy* and *Mukhi* as having been made in this one as well." (A-55.) This appeal followed.

-11-

## SUMMARY OF ARGUMENT

The Tax Court erred in holding that the Section 6038(b) penalty is not assessable. Relying exclusively on its prior reasoning in *Farhy I*, *Mukhi I*, and *Mukhi II*, it primarily erred in failing to comprehend that the broad language and purpose of Section 6201(a) compels the conclusion that Congress has authorized assessments of such penalties, but also required the Treasury Secretary to make inquiries and determinations related to such penalties. Beyond that fundamental misunderstanding of Section 6201(a), the Tax Court also misinterpreted Section 6038, which, properly read, authorizes assessment of Section 6038(b) penalties, as persuasively explained by the D.C. Circuit in *Farhy II*.

1.     Section 6201(a) authorizes the Treasury Secretary to assess "all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title," which includes the Section 6038(b) penalty. This broad, inclusive language covers all exactions imposed by the Code unless Congress has specifically provided otherwise. This reading of the statutory text is reinforced by the fact that Section 6201 not only authorizes assessments; it also

-12-

requires the Treasury Secretary to make "inquiries" and "determinations." If the Secretary may not even make inquiries and determinations regarding the Section 6038(b) penalty, then the Secretary would not be able to carry out any of the enforcement functions that Section 6038 contemplates. It would be highly anomalous for Congress to add a tax penalty to the Code but expect the Secretary not to undertake any investigative or enforcement action with respect to that penalty, without even specifying as much.

Further, the history of Section 6201 establishes that the phrase "all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title" should be given a broad reading that is not limited to the enumerated subcategories of items. The predecessor to Section 6201 provided that "[t]he Commissioner is authorized and required to make the inquiries, determinations, and assessments of all taxes and penalties imposed by this title." In enacting Section 6201 as part of the Internal Revenue Code of 1954, Congress noted specific material changes in the provision, but did not state that the new statutory language of "all taxes," with its inclusion of "interest, additional amounts, additions to the tax, and assessable

-13-

penalties," was intended to effect a material change. Thus, the term "all taxes" in Section 6201 should be construed to include any penalties unless Congress has explicitly provided that the penalty be collected through a civil action, as it has since 1954 in I.R.C. § 5761(a) and I.R.C. § 7269.

The Tax Court's analysis is flawed in several respects. The Tax Court is correct that taxes and penalties generally are distinct categories of exactions, at least in the absence of a provision treating them as the same. But it fails to appreciate that Section 6201(a) *does* treat them (along with interest) the same, at least for the purposes outlined in that statute: authorizing and requiring the Secretary to make inquiries, determinations, and assessments.

In addition, the Tax Court read Congress's omission of explicit assessment authority for the Section 6038(b) penalty as indicating that it must be collected through a civil action under 28 U.S.C. § 2461(a), which provides that civil fines enacted by Congress without an enforcement mechanism may be recovered in a civil action. The Tax Court's conclusion is wrong. Notably, Congress has specified the mode of enforcement to some degree, by requiring the IRS to notify U.S.

-14-

persons of their failure to file the information return before imposing a continuation penalty and to make determinations of reasonable cause for failure to file.  And despite the fact that the IRS has been assessing this penalty for 40 years, Congress has not seen fit to amend the statute to bar those assessments—even though it has amended Section 6038 in other ways multiple times during that period.

2.     Regardless of the overall scope of authority granted in Section 6201, Section 6038 itself is best interpreted as authorizing assessment of the Section 6038(b) penalty.  As the D.C. Circuit explained, this conclusion flows from the text and history of the provision, the need for coordination of subsections (b) and (c), and the potential problems stemming from bifurcation.  *See generally Farhy II*, 100 F.4th 223.

Accordingly, Section 6038(b) penalties are assessable, and the Tax Court's decision should be reversed.

-15-

# ARGUMENT

## The Tax Court erred in holding that the Internal Revenue Code does not authorize assessment of the Section 6038(b) penalty

### Standard of review

The Tax Court's determination that the Commissioner lacks assessment authority is a question of law. This case thus presents a purely legal issue subject to de novo review. *Maier v. Commissioner*, 360 F.3d 361, 363 (2d Cir. 2004).

## A. The broad text of Section 6201(a) includes the Section 6038(b) penalty

Section 6201(a) authorizes the Treasury Secretary to assess "all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title." This broad, inclusive language should be read to include all exactions imposed by the Code unless Congress has specifically provided otherwise. On its face, Section 6201(a) defines the term "taxes" to include exactions that would not be commonly understood as taxes, indicating that Congress eschewed a narrow use of the term. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("The meaning—or ambiguity—of certain words or phrases may only become evident

-16-

when placed in context.") And the words "include" and "including"
generally "signal that the list that follows is meant to be illustrative
rather than exhaustive," and "a word may be known by the company it
keeps." *Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) (cleaned up); *see,
e.g., United States v. Reingold*, 731 F.3d 204, 228–29 (2d Cir. 2013)
("[U]se of the word 'including' in the first sentence and 'includes' in the
second sentence signals that the cited acts of distribution are
illustrative rather than exhaustive.").

These statutory construction principles fully apply to the Code,
including Section 6201(a). I.R.C. § 7701(c) states that "[t]he terms
'includes' and 'including' when used in a definition contained in this
title shall not be deemed to exclude other things otherwise within the
meaning of the term defined."[2] This reading of the Section 6201(a)
parenthetical—illustrative rather than limiting—is reinforced by the
fact that the Code has long used an assortment of terms to refer to what
the layperson would simply call a penalty, including the terms in the
Section 6201(a) parenthetical (none of which are defined by statute) as

---

[2] Though Section 6201 is not a definitional section, Section 7701 is
consistent with the applicable case law cited above regarding the term
"including."

-17-

well as the generic term "penalty." *See, e.g.*, *Farrell v. Commissioner*, 136 F.3d 889, 892 (2d Cir. 1998); *Gray v. Commissioner*, 723 F.3d 790, 794 (7th Cir. 2013). Therefore, the key phrase in Section 6201(a) should be construed as including other types of penalties not specifically enumerated in the parenthetical, given that the parenthetical begins with "including" and expressly references three types of penalties: additional amounts, additions to tax, and assessable penalties.

The Tax Court is of the view that the Section 6038(b) penalty does not bear a close enough connection to "taxes" to be included in that phrase because it is an information-reporting penalty. *Farhy I*, 160 T.C. at 410. But this overlooks the fact that most "assessable penalties" listed in Chapter 68 do not depend on a determination of tax, *e.g.*, other information-reporting penalties, penalties for promoting tax shelters, and penalties for maintaining frivolous litigation. The Section 6038(b) penalty certainly "keeps company" with the host of information-reporting penalties and other such penalties which are specifically designated as "assessable penalties" and clearly covered by Section 6201(a). *See, e.g.,* I.R.C. §§ 6677, 6679, 6686, 6688, 6707. And

-18-

the information reported under Section 6038(a) is used to help the IRS detect unreported income related to foreign corporations.

Moreover, Section 6201(b) sets forth specific exceptions to the broad grant of assessment authority in Section 6201(a), which suggests that other exceptions should not be inferred. (*See supra*, p. 4.) As the Supreme Court has stated, there is no "'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 669 (2020). When Congress has altered the assessment and collection rules for a particular penalty, it has done so expressly. *See, e.g.,* I.R.C. § 5761(a) (certain tobacco-related penalties must be recovered by civil action); I.R.C. § 7269 (failure-to-produce-records penalty must be recovered by civil action); I.R.C. § 5000A(g) (penalty for failure to maintain minimum essential health-care coverage may be assessed and collected but liens and levies are not permitted).

There is little case law interpreting the parenthetical in Section 6201(a), but the phrase "additional amounts, additions to tax, and assessable penalties" appears in many other parts of the Code.

-19-

Circuit courts interpreting that phrase in the context of Section 6601(e), regarding interest on underpayments, rejected the argument that "additional amounts, additions to the tax, and assessable penalties" is limited to what is listed in Chapter 68 of the Code. *See Motor Fuel Carriers, Inc. v. United States*, 420 F.2d 702, 706-07 (Ct. Cl. 1970); *Latterman v. United States*, 872 F.2d 564, 566 n.2 (3d Cir. 1989) (noting the holding of *Motor Fuel Carriers*). Indeed, Section 7806(b) states that "[n]o inference, implication, or presumption of legislative construction shall be drawn or made by reason of the location or grouping of any particular section or provision or portion of this title, nor shall any … descriptive matter relating to the contents of this title be given any legal effect." I.R.C. § 7806(b). Further, the Tax Court acknowledged in its *Farhy I* opinion that the term "assessable penalties" is not limited to penalties in Subchapter B of Chapter 68. *Farhy I*, 160 T.C. at 406 (2023). Thus, the location of the Section 6038(b) penalty outside of Chapter 68 does not mean it falls outside of Section 6201(a)'s assessment authority.

-20-

**B.    Section 6201(a)'s role in the Code indicates it covers the Section 6038(b) penalty**

**1.    Section 6201 authorizes inquires and determinations in addition to assessments**

The soundness of the Commissioner's reading of Section 6201(a) is reinforced by Section 6201's larger role in the Code. As noted, the IRS's assessment authority is found in Section 6201, but Section 6201 does more than authorize assessments. It states that the "Secretary is authorized *and required* to make the *inquiries*, *determinations*, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title …." I.R.C. § 6201(a) (emphasis added). Thus, Section 6201(a) not only confers assessment authority but also authorizes and requires the Secretary to undertake audits and make determinations about amounts owed under the Code.

The scope of Section 6201(a) must be read in light of these broad purposes, because a court's determination that the language of Section 6201(a) does not authorize assessment of a particular penalty would also mean that the Secretary is not required or even authorized to make "inquiries" or "determinations" about that penalty. As relevant to this

-21-

case, Section 6038 contemplates that a U.S. person in control of a foreign business entity shall provide information on that entity to the Secretary. I.R.C. § 6038(a). If the person fails to timely furnish the information, the Secretary will inquire as to whether the taxpayer is liable for a penalty, notify the taxpayer of her liability, and determine whether the taxpayer had reasonable cause for the failure to report. I.R.C. § 6038(b)(2), (c)(4). It is difficult to see how the Secretary could do this without making inquiries and determinations regarding the penalty. But the same provision authorizes both inquiries and determinations *and* assessments: Section 6201(a).

In addition, the purpose of the reporting requirements under Section 6038 is to allow the IRS to determine if taxpayers failed to report taxable income from foreign sources and, if appropriate, assess additional taxes on the unreported income. The Tax Court's decision undermines that purpose by stripping the IRS of its ability to meaningfully impose consequences on taxpayers that do not provide the information, thus stifling its capacity to collect the additional taxes. The Tax Court's suggested alternative—a civil action brought by the Department of Justice under 28 U.S.C. § 2461(a)—is not a reasonable

-22-

alternative for obtaining the relevant information in a timely and efficient manner.

It would be highly anomalous for Congress to add a penalty to the Code to verify compliance with a reporting provision but not expect the Treasury Secretary to undertake any enforcement action with respect to that penalty. The assessment authority and associated collection tools are what give the penalty teeth and ensure taxpayer compliance. But, according to the Tax Court, Congress enacted a penalty and—at the same time and without saying so—deprived the IRS of the tools that Congress provided in the Code to enforce the penalty. The Tax Court's conclusion is particularly anomalous because there is no dispute that the IRS has authority to assess the interrelated penalty—reduction of the foreign tax credit under Section 6038(c)—or that the Secretary is authorized to determine whether reasonable cause exists under Section 6038(c)(4)(B) for a failure to furnish the information.

The Supreme Court also has recognized that Section 6201 occupies a unique place within the Code, in that it equates taxes and assessable penalties for assessment purposes but not necessarily for all purposes. In *National Federation of Independent Business v. Sebelius*,

-23-

the Court addressed the argument that Section 6201's language meant that the Affordable Care Act's individual mandate provision constituted a tax for purposes of the Anti-Injunction Act.  567 U.S. 519, 546 (2012) ("*NFIB*").  Certain amici had argued that the mandate must be a tax "because it is an assessable penalty and § 6201(a) says that taxes include assessable penalties." *Id.*  The Supreme Court rejected this argument, noting that in many other places in the Code taxes and assessable penalties are treated as distinct terms. *Id.*  Rather, the better interpretation of Section 6201(a), the Court held, is that it "instructs the Secretary that his authority to assess taxes includes the authority to assess penalties, but it does not equate assessable penalties to taxes for other purposes." *Id.*

If the Section 6038(b) penalty does not fall within Section 6201's assessment authority, it would be the first of its kind: a penalty sitting within the Code without interacting with the extensive enforcement provisions of the Code, but also without express statutory instruction for other enforcement.  There is no evidence that Congress intended this anomalous result.  Thus, Section 6201(a) should be read as including Section 6038(b) within its assessment authority.  *See United States v.*

-24-

*Messina*, 806 F.3d 55, 70 (2d Cir. 2015) ("As the Supreme Court has cautioned, 'interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.'") (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)).

### 2. Section 7602 does not undermine the point regarding Section 6201's role in the Code

The Tax Court in *Mukhi II* opined that Section 7602 provided the IRS with sufficient tools to investigate compliance with Section 6038. It noted that "Section 7602(a) grants the IRS authority to examine a taxpayer's books and records, issue summonses, take testimony of a taxpayer for the purposes of ascertaining the correctness of any return, make a return where none is filed, determine the liability of any person for any internal revenue tax, and collect any such liability." *Mukhi II*, 2024 WL 4815052, at *9.

But the *Mukhi II* court overlooked that the language of Section 7602(a) suffers from the same potential problem as Section 6201(a). Section 7602(a) provides for the authority to examine records and issue summonses, but it only refers to "any internal revenue tax" without

-25-

mentioning the term "penalties." I.R.C. § 7602(a).[3]  Thus, Section

7602(a) is an example of Congress using the term "taxes" in a way that

encompasses "penalties."  *See United States v. Lee, Goddard & Duffy,*

*LLP*, No. SACA06-408DOC (RNBX), 2006 WL 2404137, at *3 (C.D. Cal.

June 29, 2006) (noting that that an investigation for promoter penalties

is a legitimate purpose for a summons issued under Section 7602); *see*

*also United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1442

(10th Cir. 1985) (enforcing IRS summons to taxpayers for records to

determine their liability for the section 6700 penalty); *United States v.*

*Ernst & Whinney*, 735 F.2d 1296, 1305 n.16 (11th Cir. 1984) ("The IRS

has the ability to seek taxpayer records from Ernst, 26 U.S.C.A.

§§ 7602, 7609, compel disclosure, 26 U.S.C.A. § 7604, and ultimately

---

[3] Section 7602(b) extends the summons authority to investigation
of "any offense connected with the administration or enforcement of the
internal revenue laws."  But the courts have noted that this provision
was primarily intended to clarify that the summons authority is
available in criminal investigations.  *See Taylor v. United States*, 292 F.
App'x 383, 386 (5th Cir. 2008) ("Section 7602(b), added in 1982 to the
statutory framework for IRS summonses, simply codified the extension
of the IRS's summons power to investigations of a taxpayer's criminal
tax-related liability.").  Its enactment was not intended to suggest that
the IRS's authority under Section 7602(a) did not previously apply to
penalties.

-26-

assess penalties against Ernst for preparing improper returns. 26 U.S.C.A. §§ 6694–5."). Thus, Section 7602(a) supports the Commissioner's contention that Section 6201(a) should be interpreted as authorizing the IRS to assess the Section 6038(b) penalty, as well as to make inquiries and investigations supporting assessment.

> **C.** **The history of Section 6201 establishes that the term "all taxes (including interest, additional amounts, additions to the tax, and assessable penalties)" should be given a broad reading**

The history of Section 6201 further establishes that it was intended to cover all penalties in the Code, regardless of their label. In the first comprehensive compilation of revenue laws, *i.e.,* the Internal Revenue Code of 1939, Pub. L. No. 76-1, 53 Stat. 1 (1939), the predecessor to Section 6201(a) stated: "The Commissioner is authorized and required to make the inquiries, determinations, and assessments of *all taxes and penalties imposed by this title*, or accruing under any former internal revenue law, where such taxes have not been duly paid by stamp at the time and in the manner provided by law." I.R.C. § 3640 (1939) (emphasis added).

In 1954, Congress enacted a new, reorganized Internal Revenue Code that simplified assessment procedures, among other things. *See*

-27-

Internal Revenue Code of 1954, Pub. L. No. 83-591, 68 Stat. 730 (1954).

The general grant of assessment authority was recodified as Section

6201(a): "The Secretary or his delegate is authorized and required to

make the inquiries, determinations, and assessments of *all taxes*

*(including interest, additional amounts, additions to the tax, and*

*assessable penalties) imposed by this title*, or accruing under any former

internal revenue law, which have not been duly paid by stamp at the

time and in the manner provided by law."  (Emphasis added.)  Today's

version of Section 6201(a) is materially identical.

Thus, in 1954, the statutory text changed from authorizing

assessment of "all taxes and penalties imposed by this title" (Section

3640) to authorizing assessment of "all taxes (including interest,

additional amounts, additions to the tax, and assessable penalties)

imposed by this title" (Section 6201(a)).  Nothing in the 1954 text

indicates an intent to limit Treasury's previously expansive assessment

authority or to limit the scope of penalties that had previously fallen

within its ambit.  Rather, the term "taxes" was *broadened* beyond a

narrow definition of that term to sweep in exactions that would not

traditionally be thought of as taxes.

-28-

The Tax Court in *Mukhi II* disagreed, opining that the plain text of the 1954 Code "clearly reduced the scope of the IRS's assessment authority." *Mukhi II*, 2024 WL 4815052, at *5. As a result, the court stated that it would not apply the presumption that Congress did not intend a substantive change in a recodification of existing law, nor would it otherwise consult the legislative history. *Id.* But the revision to the text of Section 6201 did not *clearly* reduce the scope of the IRS's assessment authority. Congress introduced the term "assessable penalty"—along with the phrase "additional amounts, additions to the tax, and assessable penalties"—into the Code in 1954, but it did not define those terms individually or explain the meaning of the parenthetical as a whole. Indeed, Congress still has not given the term "assessable penalty" a definition as of today. In other words, the 1954 Code introduced at least as much uncertainty as it resolved.

Further, the House and Senate Reports accompanying the 1954 Code noted only "two material changes from existing law" in Section 6201: authorizing assessment of amounts paid by check or money order given in payment for stamps, and authorizing recovery of certain erroneous refunds by assessment. *See* H.R. Rep. No. 83-1337, at A404

-29-

(1954); S. Rep. No. 83-1622, at 572 (1954).  Notably, the legislative

history did *not* identify the revision of the reference from "all taxes and

penalties" to "all taxes" as effecting a material change in the

assessment of penalties.  Specifically in the context of the enactment of

the 1954 Code, the Supreme Court has noted that Congress's

statements that it had made specific material changes in one provision

are evidence that other changes in that provision were *not* material

changes.  *See, e.g., United States v. Foster Lumber Co.,* 429 U.S. 32, 46

(1976) (where legislative history noted other material changes, "the

complete failure of the Committee Reports in any way to indicate the

shift in policy the respondent claims to discern in the 1954 Code

revision" was persuasive evidence against the respondent's

interpretation); *United States v. Basye*, 410 U.S. 441, 453 n.14 (1973)

("Nothing in the legislative history suggests that any substantive

change was intended by the deletion of this phrase from the 1954 Code

revisions.").  This, in turn, implies that Congress did not intend "all

taxes (including…)" to be materially different from the prior phrase,

"taxes and penalties."  Thus, although the *Mukhi II* court dismissed the

1954 Act's legislative history as inadequate to overcome its textual

-30-

analysis, 2024 WL 4815052, at *6, that legislative history is, in fact, strong evidence that Congress did not intend the 1954 Act to reduce or otherwise change the Secretary's assessment authority.

### D. The Tax Court erred in determining that Section 6201(a) does not apply to Section 6038(b) penalties

The Tax Court in *Farhy I* and *Mukhi II* was correct that taxes and penalties generally are "distinct categories of exactions, at least in the absence of a provision treating them as the same." *Farhy I*, 160 T.C. at 407; *Mukhi II*, 2024 WL 4815052, at *4. But it failed to appreciate that Section 6201(a) *does* treat them (along with interest) the same, at least for the purposes outlined in that statute, *viz.*, authorizing and requiring the Secretary to make inquiries, determinations, and assessments. *Cf. NFIB*, 567 U.S. at 546 ("Section 6201(a) instructs the Secretary that his authority to assess taxes includes the authority to assess penalties, but it does not equate assessable penalties to taxes for other purposes.").[4]

---

[4] The Tax Court misread the Supreme Court's discussion in *NFIB* of the assessment authority in Section 6201. 567 U.S. at 546. This discussion does not buttress the conclusion that the penalties and taxes are distinct categories of exaction *for purposes of Section 6201*. Rather, it means just the opposite. The Supreme Court noted that the existence of provisions explicitly equating taxes and penalties outside Section 6201 does not undermine the conclusion that they are treated the same for purpose of the assessment authority provided by Section 6201. *Id.*

-31-

The Tax Court also stated that construing Section 6201(a) as covering Section 6038(b) penalties would render superfluous other Code provisions that equate penalties with taxes for purposes of the Code and specifically delineate how penalties will be assessed and collected, *i.e.,* Sections 6665 and 6671. *Farhy I*, 160 T.C. at 408; *Mukhi II*, 2024 WL 4815052, at *4. But there is already a fair bit of repetition in this regard (indeed, Section 6671 is redundant because it is subsumed by Section 6665). And Section 6201 does both more and less than these other sections: it does *more* by authorizing and requiring the Secretary to make inquiries and determinations, in addition to assessment, and it does *less* because it omits those sections' specifics on procedure for collection, assessment, and payment. In addition, the Tax Court's view renders surplusage the provisions of the Code providing that certain penalties must be collected via a civil action. *See, e.g.*, I.R.C. §§ 5761(a) and 7269.

The Tax Court also misreads Congress's silence here as indicating that the Section 6038(b) penalty must be collected through a civil action under 28 U.S.C. § 2461(a), which states that "[w]henever a civil fine, penalty or pecuniary forfeiture is prescribed for the violation of an Act

-32-

of Congress without specifying the mode of recovery or enforcement thereof, it may be recovered in a civil action." The Tax Court's conclusion is wrong for several reasons.

*First*, Congress has specified "the mode of . . . enforcement" of the Section 6038(b) penalty to some degree, by requiring the IRS to notify U.S. persons of their failure to file the information return before imposing a continuation penalty. I.R.C. § 6038(b)(2). Congress also requires the IRS to consider whether the filer can show reasonable cause for its failure to timely report in determining whether to impose the penalty. I.R.C. § 6038(c)(4). It is reasonable to infer that, along with administering the penalty, the IRS is expected to assess and collect it, in the absence of any statutory instruction to the contrary. *See Farhy II*, 100 F.4th at 233; *see infra,* p. 38-43 (discussing and applying *Farhy II* analysis).

*Second*, no other penalties in the Code have been determined to be un-assessable through a narrow reading of Section 6201, and thus, held to be enforceable solely by operation of 28 U.S.C. § 2461(a). Indeed, there are virtually no cases invoking Section 2461(a) overall. Given the lack of administrative practice in this regard, it is highly unlikely that

-33-

Congress intended the Section 6038(b) penalty to be collected this way. Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001); *see also MPM Silicones, LLC v. Union Carbide Corp.,* 966 F.3d 200, 228 n.40 (2d Cir. 2020) (rejecting statutory interpretation limiting statutory term in the absence of evidence that Congress intended that limitation); *Virgin Islands v. Blumenthal,* 642 F.2d 641, 649-51 (D.C. Cir. 1980) (rejecting statutory interpretation that conflicted with long-standing administrative practice in the absence of evidence that Congress intended to depart from that practice).

*Third*, the penalty at issue here was added to the Code in 1982, and the IRS has been assessing it since then, for over 40 years.  In the meantime, Congress has amended Section 6038 seven times,[5] but it has

---

[5] *See* Tax Reform Act of 1986, Pub. L. No. 99-514, §§ 1202(c), 1245(b)(5), 100 Stat. 2085, 2530-31, 2581; Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, § 7712(a), 103 Stat. 2106, 2393-94; Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, § 11701(f), 104 Stat. 1388, 1388-508; Small Business Job Protection Act of 1996, Pub. L. No. 104-188, Title I, § 1704(f)(5)(A), (t)(40), 110 Stat. 1755, 1880, 1889; Taxpayer Relief Act of 1997, Pub. L. No. 105-34, Title XI, § 1142(a)-(e)(2), 111 Stat. 788, 981-983; Internal

(continued…)

-34-

never sought to bar the IRS from assessing the Section 6038(b) penalty.
As the D.C. Circuit recognized, "when Congress revisits a statute giving
rise to a longstanding administrative interpretation without pertinent
change, the congressional failure to revise or repeal the agency's
interpretation is persuasive evidence that the interpretation is the one
intended by Congress." *Farhy II*, 100 F.4th at 236 (quoting *Commodity
Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (cleaned
up)).

*Fourth*, the Tax Court's rulings create an absurd system for
reporting foreign assets.  Another provision of the Code—Section
6048—requires the reporting of foreign trusts.  I.R.C. § 6048.  Unlike
Section 6038, Section 6048 has a corollary penalty—Section 6677—
which is located within Subchapter B of Chapter 68, and therefore,
indisputably falls within the Commissioner's assessment authority.
Thus, under the Tax Court's ruling, if a taxpayer had an undisclosed
foreign *trust*, the IRS could examine, assess, and collect penalties for
failure to comply with reporting requirements, but a similarly situated

Revenue Service Restructuring and Reform Act of 1998, Pub. L. No.
105-206, Title VI, § 6011(f), 112 Stat. 685, 818; Pub. L. No. 115-97, Title
I, § 14301(c)(36), (37), 131 Stat. 2054, 2224 (2017).

-35-

taxpayer (or even the same taxpayer) with a foreign corporation or partnership would only face penalties if the Department of Justice brought suit.

### E. The Tax Court erroneously required specific language to render a penalty assessable and ignored other penalty provisions that undermine this conclusion

The Tax Court noted in both *Farhy I* and *Mukhi II* that there is no express authorization in Section 6038(b) to assess the penalty, and that other penalties located outside Chapter 68 generally include an express authorization. *Farhy I*, 160 T.C. at 405; *Mukhi II*, 2024 WL 4815052, at *6. The Tax Court pointed to language in these other provisions that the penalty "shall be assessed and collected in the same manner" as another penalty in the Code which is expressly assessable. *Mukhi II*, 2024 WL 4815052, at *6. The Tax Court considers this type of language mandatory to render a penalty outside of Chapter 68 assessable. *Id.* But the Tax Court failed to grapple with penalty provisions outside of Chapter 68 whose plain text indicates that Congress intended it to be assessable but do not contain any such language.

For example, Section 45(b)(7)(B)(i)(II) contains a penalty for the failure to pay prevailing wages in the construction of certain qualified

-36-

facilities.  But Section 45(b)(7)(B)(ii) says deficiency procedures do not apply to the "assessment or collection" of this penalty.  I.R.C. § 45(b)(7)(B)(ii).  This language would be meaningless if the penalty could not be assessed in the first place.  But the only possible source of assessment authority for this penalty is Section 6201(a).[6]  Thus, under the Tax Court's framework, Section 45(b)(7)(B)(ii) is superfluous and makes no sense.  *See Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698–99 (2022) (noting that the Court normally seeks "to construe Congress's work so that effect is given to all provisions, so that no part will be inoperative or superfluous, void or insignificant") (cleaned up).

Likewise, Section 6038D(d) imposes a fixed-dollar penalty of $10,000 for failure to report to the IRS any interest exceeding $50,000 in certain foreign financial assets, such as financial accounts and foreign entities.  *See* I.R.C. § 6038D(d).  As the D.C. Circuit noted, section 6038D lacks any explicit indication that the IRS may assess the penalty.  *See Farhy II*, 100 F.4th at 235.  But, contrary to the Tax

---

[6] I.R.C. §§ 48 and 179D also contain penalties and note that "[r]ules similar to the rules of section 45(b)(7)(B) shall apply."  I.R.C. §§ 48(a)(10)(B), 179D(b)(4)(B).  Therefore, this same analysis applies to those provisions.

-37-

Court's framework, the same section "spells out a presumption, binding

on the Commissioner 'for purposes of *assessing* the penalties imposed

under this section,' that foreign financial assets not disclosed or

sufficiently described meet the threshold amount required for the

penalties to apply." *Id.* (quoting I.R.C. § 6038D(e) (emphasis in

original)).  Again, this language would be superfluous if the penalty

were not assessable.

   In addition, the Tax Court overreads the lack of explicit language

authorizing the penalty.  "An inference drawn from congressional

silence certainly cannot be credited when it is contrary to all other

textual and contextual evidence of congressional intent." *Burns v.*

*United States*, 501 U.S. 129, 136 (1991); *see also Buitrago-Cuesta v.*

*I.N.S.*, 7 F.3d 291, 295 (2d Cir. 1993) (quoting *Burns*).  The

Section 6038(b) penalty is imposed by Title 26.  As noted above, prior to

*Farhy I*, no other penalty imposed by the Code has been held to be un-

assessable by this narrow reading of Section 6201, precluding

application of the Code's detailed enforcement procedures.  Instead,

when Congress has sought to render certain penalties collectible only by

-38-

suit, it has done so expressly. *See, e.g.*, I.R.C. §§ 5761(a) and 7269.[7]

And, as detailed above, there is a dearth of evidence establishing that

Congress intended that result here. Rather, the broad text of

Section 6201, establishing its significant role in tax enforcement, and

other contextual evidence indicate that Congress intended that all

exactions imposed by the Code be assessable (absent express language

requiring a different process), and that Congress intended for Treasury,

and not the Department of Justice, to enforce the Section 6038(b)

penalty at issue here.

## F.  In the alternative, Section 6038's text, structure, function, and history authorize assessment of the Section 6038(b) penalty

Regardless of the overall scope of authority granted in Section

6201, this Court should hold that Section 6038 itself is best interpreted

as authorizing assessment of the Section 6038(b) penalty. *Farhy II*,

100 F.4th at 231 ("Read in light of its text, structure, and function,

section 6038 itself is best interpreted to render assessable the fixed-

---

[7] Notably, Sections 5761(a) and 7269 were enacted in the Code in 1954 when Section 6201(a) was enacted, which shows that Congress was aware at the time of how to except penalties from the general assessment authority.

-39-

dollar monetary penalties subsection (b) authorizes.").  A close examination of Section 6038 shows that Congress intended the 6038(b) penalties to be assessable without labeling them as such.  *Farhy II*, 100 F.4th at 235-36.  Congress need not use magic words or explicit formulations to make a penalty assessable.  The Internal Revenue Code is an "ever-changing statutory patchwork that contains nearly 10,000 code sections."  *Id.* at 236.  Congress may make a penalty assessable "by implication," and it did so in Section 6038.  *Id.*

First, the text and function of Section 6038 suggest that Congress intended robust enforcement via assessment rather than sparse enforcement via referral to the Justice Department.  As explained, subsection (a) requires United States persons to furnish information as the Secretary of the Treasury may prescribe relating to their ownership of foreign business entities.  I.R.C. § 6038(a).  Subsection (c) imposes a penalty that reduces the amount of foreign tax available for crediting against a taxpayer's liability, which is indisputably assessable as it translates into an increase taxes owed.  Subsection (b) provides that each person "shall pay a penalty of $10,000 for each annual accounting period with respect to which such failure exists."  I.R.C. § 6038(b).  If

-40-

the subsection (b) penalties were not assessable, then Treasury's only enforcement mechanism would be filing a lawsuit for each and every penalty. This burdensome process would fail to "deter the use of international schemes to evade taxes, which are estimated to cost the U.S. government over $100 billion per year." *Farhy II*, 100 F.4th at 228 (citing Jane G. Gravelle, Cong. Rsch. Serv., R40623, TAX HAVENS: INTERNATIONAL TAX AVOIDANCE AND EVASION 1, 21, 29-30 (2022)).

Section 6038 also specifies that the Treasury Secretary should evaluate the reasonable cause defense of the taxpayer. I.R.C. § 6038(c)(4)(B). One "familiar set of secretarial determinations" is showing reasonable cause to the satisfaction of the Secretary. *Farhy II*, 100 F.4th at 234. But if the 6038(b) penalty is not assessable, it would also call into question the authority of the Secretary to make a "determination" regarding the reasonable cause of the taxpayer. *See* I.R.C. § 6201(a).

Second, the structure of Section 6038 implies that the Section 6038(b) penalty ought to be assessable. In particular, the coordination between subsections (b) and (c) shows that Congress thought that they

-41-

ought to be imposed at the same time.  As the D.C. Circuit noted,

Congress likely intended "the subsection (b) penalty to be routinely

assessed, but credited back in cases in which the Service also imposes a

subsection (c) penalty."  *Id.*  The alternative—forcing the Secretary to

await a federal court action before coordinating the penalties—would

mean that "Congress not only failed in its avowed quest to streamline,

but also counterproductively threw sand in the gears of section 6038's

existing enforcement scheme."  *Id.* at 232-33.  It does not detract from

this point that the Section 6038(c) penalty must go through deficiency

procedures to be assessed.  *Mukhi II*, 2024 WL 4815052, at *9.  Those

procedures at least take place in a single forum, instead of requiring

coordination between the Tax Court and a federal district court, during

a process that could potentially take years.

Furthermore, the fact that Section 6038 imposes two different

penalties stemming from the same conduct highlights a problem with

the Tax Court's proposed method of enforcement of the penalties.

Specifically, "the potential bifurcation of the review of penalties arising

from the same violation underscores the anomalous implications of

interpreting subsection (c), but not subsection (b), penalties to be

-42-

assessable." *Farhy II*, 100 F.4th at 234. A federal district court's involvement in a penalty process already subject to IRS administrative review "introduces an inexplicable asymmetry and potential for inconsistent doctrinal development." *Id.* In the case of such bifurcation, "[i]f both penalties were sought in the same case, it could even generate duplicative court proceedings on common issues." *Id.* This, in turn, may raise collateral estoppel concerns, incentivizing one party to push ahead "more quickly in the forum they perceive to be more favorable." *Id.*

Third, the history of Section 6038 reinforces the conclusion that Congress intended to make the subsection (b) penalties assessable. The enactment of Section 6038(b) reflected Congress's desire for a more streamlined process to enforce the reporting requirement in response to difficulties in applying the subsection (c) penalty that reduced the foreign tax credit. *Farhy II*, 100 F.4th at 231-32. As the D.C. Circuit noted, "[r]eading [Section 6038(b)] to require the government to sue taxpayers to collect its fixed-dollar penalty … treats Congress as having enacted a supplemental penalty process that is less streamlined, not more, than the preexisting collection process for subsection (c)

-43-

penalties." *Farhy II*, 100 F.4th at 232. That view "is contradicted by the clear congressional purpose behind the enactment of subsection (b)." *Id.*

Fourth, as discussed above (*supra,* pp. 21-22), the purpose of the reporting requirements under Section 6038 is to allow the IRS to determine if taxpayers failed to report taxable income from foreign sources and, if appropriate, assess additional taxes on the unreported income. The Tax Court's decision here undermines that purpose by stripping the IRS of its ability to meaningfully impose consequences on taxpayers that do not provide the information and thus stifling its capacity to collect the additional taxes.

Thus, for the foregoing reasons, this Court should conclude, in the alternative, the text, structure, and function of Section 6038 authorizes assessment of the Section 6038(b) penalty.

-44-

## CONCLUSION

For the foregoing reasons, the decision of the Tax Court should be

reversed and the case remanded for further proceedings.

Respectfully submitted,

/s/ Robert J. Wille

JENNIFER M. RUBIN                    (202) 307-0524
ROBERT J. WILLE                      (202) 514-5573
  *D.C. Bar No.* 1013587
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*


JUNE 11, 2025

-45-

# SPECIAL APPENDIX

## Table of Contents

Internal Revenue Code (26 U.S.C.):

§ 6201 ........................................................................ 47
§ 6038 ........................................................................ 48

28 U.S.C.:

§ 2461 ....................................................................... 53

-46-

## 26 U.S.C. § 6201 (excerpt)

### (a) Authority of Secretary

The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, which have not been duly paid by stamp at the time and in the manner provided by law. Such authority shall extend to and include the following:

### (1) Taxes shown on return

The Secretary shall assess all taxes determined by the taxpayer or by the Secretary as to which returns or lists (or payments under section 6225(c)(2)(B)(i)) are made under this title.

### (2) Unpaid taxes payable by stamp

#### (A) Omitted stamps

Whenever any article upon which a tax is required to be paid by means of a stamp is sold or removed for sale or use by the manufacturer thereof or whenever any transaction or act upon which a tax is required to be paid by means of a stamp occurs without the use of the proper stamp, it shall be the duty of the Secretary, upon such information as he can obtain, to estimate the amount of tax which has been omitted to be paid and to make assessment therefor upon the person or persons the Secretary determines to be liable for such tax.

#### (B) Check or money order not duly paid

In any case in which a check or money order received under authority of section 6311 as payment for stamps is not duly paid, the unpaid amount may be immediately assessed as if it were a

-47-

tax imposed by this title, due at the time of such receipt, from the person who tendered such check or money order.

\*\*\*

## 26 U.S.C. § 6038 (excerpt)

**(a) Requirement**

**(1) IN GENERAL**

Every United States person shall furnish, with respect to any foreign business entity which such person controls, such information as the Secretary may prescribe relating to—

**(A)** the name, the principal place of business, and the nature of business of such entity, and the country under whose laws such entity is incorporated (or organized in the case of a partnership);

**(B)** in the case of a foreign corporation, its post-1986 undistributed earnings (as defined in section 902(c));

**(C)** a balance sheet for such entity listing assets, liabilities, and capital;

**(D)** transactions between such entity and—

**(i)** such person,

**(ii)** any corporation or partnership which such person controls, and

**(iii)** any United States person owning, at the time the transaction takes place—

**(I)** in the case of a foreign corporation, 10 percent or more of the value of any class of stock outstanding of such corporation, and

-48-

        **(II)** in the case of a foreign partnership, at least a 10-percent interest in such partnership; and

    **(E)**

        **(i)** in the case of a foreign corporation, a description of the various classes of stock outstanding, and a list showing the name and address of, and number of shares held by, each United States person who is a shareholder of record owning at any time during the annual accounting period 5 percent or more in value of any class of stock outstanding of such foreign corporation, and

        **(ii)** information comparable to the information described in clause (i) in the case of a foreign partnership.

\#

The Secretary may also require the furnishing of any other information which is similar or related in nature to that specified in the preceding sentence or which the Secretary determines to be appropriate to carry out the provisions of this title.

**(2) Period for which information is to be furnished, etc.**

The information required under paragraph (1) shall be furnished for the annual accounting period of the foreign business entity ending with or within the United States person's taxable year. The information so required shall be furnished at such time and in such manner as the Secretary shall prescribe.

**(3) Limitation**

No information shall be required to be furnished under this subsection with respect to any foreign business entity for any annual accounting period unless the Secretary has prescribed the

-49-

furnishing of such information on or before the first day of such annual accounting period.

### (4) Information required from certain shareholders in certain cases

If any foreign corporation is treated as a controlled foreign corporation for any purpose under subpart F of part III of subchapter N of chapter 1, the Secretary may require any United States person treated as a United States shareholder of such corporation for any purpose under subpart F to furnish the information required under paragraph (1).

### (5) Information required from 10-percent partner of controlled foreign partnership

In the case of a foreign partnership which is controlled by United States persons holding at least 10-percent interests (but not by any one United States person), the Secretary may require each United States person who holds a 10-percent interest in such partnership to furnish information relating to such partnership, including information relating to such partner's ownership interests in the partnership and allocations to such partner of partnership items.

## (b) Dollar penalty for failure to furnish information

### (1) In general

If any person fails to furnish, within the time prescribed under paragraph (2) of subsection (a), any information with respect to any foreign business entity required under paragraph (1) of subsection (a), such person shall pay a penalty of $10,000 for each annual accounting period with respect to which such failure exists.

### (2) Increase in penalty where failure continues after notification

-50-

If any failure described in paragraph (1) continues for more than 90 days after the day on which the Secretary mails notice of such failure to the United States person, such person shall pay a penalty (in addition to the amount required under paragraph (1)) of $10,000 for each 30-day period (or fraction thereof) during which such failure continues with respect to any annual accounting period after the expiration of such 90-day period. The increase in any penalty under this paragraph shall not exceed $50,000.

## (c) Penalty of reducing foreign tax credit

**(1) IN GENERAL** If a United States person fails to furnish, within the time prescribed under paragraph (2) of subsection (a), any information with respect to any foreign business entity required under paragraph (1) of subsection (a), then—

### (A)

in applying section 901 (relating to taxes of foreign countries and possessions of the United States) to such United States person for the taxable year, the amount of taxes (other than taxes reduced under subparagraph (B)) paid or deemed paid (other than those deemed paid under section 904(c)) to any foreign country or possession of the United States for the taxable year shall be reduced by 10 percent, and

### (B)

in the case of a foreign business entity which is a foreign corporation, in applying section 960 to any such United States person which is a corporation (or to any person who acquires from any other person any portion of the interest of such other person in any such foreign corporation, but only to the extent of such portion) for any taxable year, the amount of taxes paid or deemed paid by each foreign corporation with respect to which such person is required to furnish information during the annual accounting period or periods with respect to which such information is required

-51-

under paragraph (2) of subsection (a) shall be reduced by 10 percent.

> If such failure continues 90 days or more after notice of such failure by the Secretary to the United States person, then the amount of the reduction under this paragraph shall be 10 percent plus an additional 5 percent for each 3-month period, or fraction thereof, during which such failure to furnish information continues after the expiration of such 90-day period.

**(2)** LIMITATION The amount of the reduction under paragraph (1) for each failure to furnish information with respect to a foreign business entity required under subsection (a)(1) shall not exceed whichever of the following amounts is the greater:

> **(A)** $10,000, or
>
> **(B)** the income of the foreign business entity for its annual accounting period with respect to which the failure occurs.

**(3) Coordination with subsection (b)**

The amount of the reduction which (but for this paragraph) would be made under paragraph (1) with respect to any annual accounting period shall be reduced by the amount of the penalty imposed by subsection (b) with respect to such period.

**(4) Special rules**

> **(A)** No taxes shall be reduced under this subsection more than once for the same failure.
>
> **(B)** For purposes of this subsection and subsection (b), the time prescribed under paragraph (2) of subsection (a) to furnish information (and the beginning of the 90-day period after notice by the Secretary) shall be treated as being not earlier than the last day on which (as shown to the satisfaction of the Secretary) reasonable cause existed for failure to furnish such information.

-52-

***

\#

## 28 U.S.C. § 2461 (excerpt)

**(a)** Whenever a civil fine, penalty or pecuniary forfeiture is prescribed for the violation of an Act of Congress without specifying the mode of recovery or enforcement thereof, it may be recovered in a civil action.

***

-53-

## CERTIFICATE OF COMPLIANCE

**Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X]  this document contains 8,461 words, **or**

[ ]  this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]  this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

[ ]  this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   /s/ Robert J. Wille_____

Attorney for  Commissioner of Internal Revenue

Dated:  _____June 11, 2025_____