# 25-501

## In the United States Court of Appeals for the Second Circuit

JOSEPH SAFDIEH,

*Petitioner-Appellee,*

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellant.*

On Appeal from the United States Tax Court, No. 11680-20L,
Hon. Mark V. Holmes, *Judge*

**PETITIONER-APPELLEE JOSEPH SAFDIEH'S
RESPONSE BRIEF**

Parker Rider-Longmaid
  *Counsel of Record*
Shay Dvoretzky
Armando Gomez
Sylvia Tsakos
Eman Cuyler
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
parker.rider-longmaid@skadden.com

Sherry M. Tanious
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

*Counsel for Petitioner-Appellee Joseph Safdieh*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................... v

GLOSSARY ....................................................................................... xiv

STATEMENT REGARDING ORAL ARGUMENT........................................ xv

INTRODUCTION ................................................................................1

STATEMENT OF THE ISSUE ON APPEAL........................................6

PERTINENT STATUTES .....................................................................6

STATEMENT OF THE CASE...............................................................6

    A.    Legal background...............................................................6

        1.    The default rule in 28 U.S.C. § 2461(a) requires the government to sue to recover civil penalties. ....................7

        2.    Section 6201(a) of the Internal Revenue Code recognizes the Secretary's authority to assess taxes and "assessable penalties." ....................................8

        3.    Section 6038(b) imposes penalties for a taxpayer's failure to report information about any controlling interest in a foreign business. ...............................13

    B.    Factual and procedural background ............................15

SUMMARY OF ARGUMENT .............................................................20

STANDARD OF REVIEW ..................................................................25

ARGUMENT......................................................................................25

# TABLE OF CONTENTS
### (continued)

Page

A.  Under 28 U.S.C. § 2461(a) and I.R.C. § 6201(a), the government must file a civil action to collect civil penalties under the Tax Code unless another Code provision grants the Secretary penalty-assessment authority...........................................................................25

  1.  Supreme Court precedent and basic principles of statutory interpretation make clear that default rules govern where Congress is silent or otherwise fails to make an exception......................................................26

  2.  Section 2461(a)'s default rule requires the government to file a civil action to recover civil penalties unless Congress has specified a different method in other provisions. ..................................................28

  3.  Section 6201(a)'s text, context, and history confirm that some civil penalties in the Tax Code are assessable and some are not, and that § 6201(a) itself does not make penalties assessable.....................................30

      a.  Section 6201(a)'s plain text makes clear that there are assessable and non-assessable penalties, and § 6201(a) doesn't itself make penalties assessable. ....................................................30

      b.  Statutory context confirms that some penalties in the Tax Code are assessable and some are not, and § 6201(a) recognizes but does not grant authority to make penalties assessable. .........35

      c.  Statutory history shows that Congress narrowed the reach of § 6201(a) in 1954 when it amended § 6201(a)'s predecessor. .........................36

## TABLE OF CONTENTS
### (continued)

B.  Neither § 6038(b) nor any other Code provision makes § 6038(b) penalties assessable, so the government can collect them only through a civil action under § 2461(a). ..........38

    1.  Section 6038(b)'s text and context show that the provision does not make penalties imposed under that provision assessable, so the government can recover them only by suing in district court under § 2461(a). ...................................................................39

    2.  Because the IRS lacks authority to assess penalties under I.R.C. § 6038(b), the IRS's tax lien is invalid and Mr. Safdieh is entitled to summary judgment. ..........42

C.  The IRS's counterarguments and the D.C. Circuit's contrary reasoning lack merit. ........................................................42

    1.  Section 6201(a) does not grant the IRS authority to assess § 6038(b) penalties. .....................................................43

        a.  The IRS's textual and contextual arguments fail. ...............................................................................43

        b.  The IRS's statutory history argument lacks merit. ............................................................................49

        c.  Legislative history doesn't help the IRS. ..................49

        d.  The IRS's claims about administrative practice are unconvincing. ........................................................51

    2.  Section 6038(b) doesn't authorize the Secretary to assess § 6038(b) penalties either, contrary to the D.C. Circuit's reasoning and the IRS's argument. ............52

## TABLE OF CONTENTS
### (continued)

**Page**

a.    The IRS's textual and contextual arguments fail...................................................................53

b.    The IRS's and D.C. Circuit's concerns about the practical difficulties of coordinating the § 6038(b) and (c) penalties are unpersuasive...........55

c.    The IRS's purposive and administrability arguments lack merit....................................60

d.    The IRS's ratification argument fails........................61

3.    The IRS's and the D.C. Circuit's absurdity and policy arguments cannot overcome text and context and are unconvincing anyway.............................................62

CONCLUSION ....................................................................66

CERTIFICATE OF COMPLIANCE .................................67

CERTIFICATE OF SERVICE ............................................68

INDEX OF ADDENDUM ...................................................70

ADDENDUM..................................................................Add.1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Azar v. Allina Health Services,*
  587 U.S. 566 (2019)...................................................................32

*Babb v. Wilkie,*
  589 U.S. 399 (2020)...................................................................25

*Bachner v. Commissioner,*
  124 F.4th 1066 (7th Cir. 2025)...............................................12

*Beltran v. AuPairCare, Inc.,*
  907 F.3d 1240 (10th Cir. 2018)...............................................8

*Benenson v. Commissioner,*
  910 F.3d 690 (2d Cir. 2018)....................................................41

*Career Colleges & Schools of Texas v. United*
  *States Department of Education,*
  98 F.4th 220 (5th Cir. 2024).....................................................61

*Chai v. Commissioner,*
  851 F.3d 190 (2d Cir. 2017) ........................................ 12, 13, 25, 57

*Commissioner v. Zuch,*
  145 S. Ct. 1707 (2025)................................................ 10, 13, 58

*Connecticut National Bank v. Germain,*
  503 U.S. 249 (1992)...................................................................25

*Corner Post, Inc. v. Board of Governors*
  *of Federal Reserve System,*
  603 U.S. 799 (2024)................................................................8, 26

*Crooks v. Harrelson,*
  282 U.S. 55 (1930)....................................................................62

*Custis v. United States,*
  511 U.S. 485 (1994)............................................................. 32, 40

*Direct Marketing Ass'n v. Brohl,*
  575 U.S. 1 (2015)........................................................................9

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Environmental Protection Agency v. Calumet
   Shreveport Refinery, L.L.C.*,
   145 S. Ct. 1735 (2025) .................................................................. 25, 26

*Epic Systems Corp. v. Lewis*,
   584 U.S. 497 (2018) ........................................................ 34, 50, 51, 59

*Exxon Mobil Corp. & Affiliated Cos. v. Commissioner*,
   689 F.3d 191 (2d Cir. 2012) ................................................................26

*Farhy v. Commissioner*,
   100 F.4th 223 (D.C. Cir. 2024) .................................. 1, 18, 19, 42, 43,
   ...................................................................... 52, 54, 55, 58, 59, 63

*Farhy v. Commissioner*,
   160 T.C. 399 (2023) ........................... 1, 16, 17, 18, 19, 20, 31, 32

*Grajales v. Commissioner*,
   47 F.4th 58 (2d Cir. 2022) ......................................................... 33, 44

*Hayden v. Pataki*,
   449 F.3d 305 (2d Cir. 2006) ...............................................................45

*Hibbs v. Winn*,
   542 U.S. 88 (2004) .................................................................................9

*In re Soussis*,
   136 F.4th 415 (2d Cir. 2025) ...............................................................8

*Kokesh v. Securities & Exchange Commission*,
   581 U.S. 455 (2017) ...............................................................................7

*Lucia v. Securities & Exchange Commission*,
   585 U.S. 237 (2018) .............................................................................61

*Martin v. United States*,
   145 S. Ct. 1689 (2025) .........................................................................50

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*,
   145 S. Ct. 2006 (2025) ........................................................ 8, 26, 27,
   ....................................................................... 28, 29, 45, 62, 63

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Medina v. Planned Parenthood South Atlantic,*
    145 S. Ct. 2219 (2025)................................................................. 5, 56, 60

*Mukhi v. Commissioner,*
    163 T.C. 150 (2024)............................................... 1, 3, 5, 11, 12, 19,
    .......................................................................... 20, 23, 28, 29, 32, 33, 35,
    ................................................................. 37, 38, 40, 41, 44, 45, 46, 48, 50,
    ................................................................. 54, 55, 56, 57, 58, 59, 60, 62, 63, 64, 65

*Mukhi v. Commissioner,*
    162 T.C. 177 (2024).................................................................... 18, 19

*National Ass'n of Manufacturers v. Department of Defense,*
    583 U.S. 109 (2018).................................................................... 32, 45

*National Federation of Independent Business v. Sebelius,*
    567 U.S. 519 (2012)............................................... 5, 31, 33, 41, 59

*Niz-Chavez v. Garland,*
    593 U.S. 155 (2021)..........................................................................56

*Philadelphia & Reading Corp. v. United States,*
    944 F.2d 1063 (3d Cir. 1991) ..........................................................9, 10

*Polselli v. Internal Revenue Service,*
    598 U.S. 432 (2023).........................................................................2, 9

*Rapanos v. United States,*
    547 U.S. 715 (2006).................................................................... 24, 61

*Russello v. United States,*
    464 U.S. 16 (1983)...........................................................................41

*Samantar v. Yousuf,*
    560 U.S. 305 (2010).................................................................... 34, 44

*Securities & Exchange Commission v. Jarkesy,*
    603 U.S. 109 (2024).................................................................... 33, 61

*Soto v. United States,*
    145 S. Ct. 1677 (2025)....................................................................62

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*United States v. Arthur Young & Co.,*
465 U.S. 805 (1984) ................................................................. 48

*United States v. Basye,*
410 U.S. 441 (1973) ............................................................ 50, 51

*United States v. Forma,*
42 F.3d 759 (2d Cir. 1994) ........................................................ 10

*United States v. Foster Lumber Co.,*
429 U.S. 32 (1976) ................................................................. 50

*United States v. Galletti,*
541 U.S. 114 (2004) ......................................................... 2, 9, 10

*United States v. National Bank of Commerce,*
472 U.S. 713 (1985) ................................................................ 10

*Van Buren v. United States,*
593 U.S. 374 (2021) ............................................................ 36, 37

*West Virginia v. Environmental Protection Agency,*
597 U.S. 697 (2022) ................................................................ 61

**STATUTES**

5 U.S.C. § 703 ................................................................... 26, 27

9 U.S.C. § 5 ......................................................................... 8

11 U.S.C. § 1326(c) .................................................................. 8

12 U.S.C. § 5563 .................................................................... 57

12 U.S.C. § 5564 .................................................................... 57

12 U.S.C. § 5565(c) ................................................................. 57

I.R.C. § 45(b)(7)(B) ................................................................ 53

    I.R.C. § 45(b)(7)(B)(i)(II) .................................................. 53

    I.R.C. § 45(b)(7)(B)(ii) ..................................................... 53

I.R.C. § 48(a)(10)(B) ............................................................... 53

# TABLE OF AUTHORITIES
(continued)

Page(s)

I.R.C. § 179D(b)(4)(B) ................................................................53

I.R.C. § 527(j)(1) ................................................................ 11, 29, 36

I.R.C. § 856(g)(5)(C) ................................................................ 12, 29

I.R.C. § 857(f)(2)(A) ................................................................ 12, 29

I.R.C. § 901(b)(1) ................................................................3, 14

I.R.C. § 1275 ................................................................ 11, 29

I.R.C. § 3640 (1939) ................................................................37

I.R.C. § 4980H(d)(1) ................................................................ 11, 29

I.R.C. § 5000A(g)(1) ................................................................ 11, 29

I.R.C. § 5114(c)(3) ................................................................ 11, 29

I.R.C. § 5684(b) ................................................................ 11, 29

I.R.C. § 5761(a) ................................................................ 29, 30

I.R.C. § 5761(e) ................................................................ 11, 29

I.R.C. § 6033(*o*) ................................................................ 11, 29

I.R.C. § 6038 ................................................ 7, 14, 18, 19, 40, 48, 53, 55, 60, 63

    I.R.C. § 6038(a) ................................................ 1, 2, 7, 13, 15, 48

    I.R.C. § 6038(b) ................................................ 1, 2, 3, 4, 5, 6, 7, 8, 13, 14, 15,
    ................................................ 16, 17, 18, 19, 20, 21, 22, 23, 24,
    ................................................ 38, 39, 40, 41, 42, 43, 45, 47, 48, 52,
    ................................................53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64

    I.R.C. § 6038(b)(1) ................................................ 3, 14, 39, 40, 64

    I.R.C. § 6038(b)(2) ................................................ 3, 14, 39, 60, 64

    I.R.C. § 6038(c) ................................................ 3, 14, 15, 20, 24, 55, 57, 58, 59, 60

    I.R.C. § 6038(c)(3) ................................................3, 14

    I.R.C. § 6038(c)(4)(B) ................................................ 13, 14, 54

I.R.C. § 6038D(d) ................................................................53

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

I.R.C. § 6038D(e) .................................................................53

I.R.C. § 6043(d) ............................................................ 11, 29

I.R.C. § 6046(f) ............................................................. 11, 29

I.R.C. § 6046A(e) .......................................................... 11, 29

I.R.C. § 6048 .......................................................................63

I.R.C. § 6201 ......................................................................49

    I.R.C. § 6201(a) ............................ 1, 2, 4, 9, 12, 17, 18, 19, 21,
    ............................................... 22, 23, 25, 26, 30, 31, 32, 33, 34, 35,
    ............................................ 36, 37, 42, 43, 44, 45, 46, 47, 49, 50, 51

    I.R.C. § 6201(a) (1954) ...................................................37

I.R.C. § 6203 ....................................................................2, 9

I.R.C. § 6211(a) .................................................................12

I.R.C. § 6212(a) .................................................................12

I.R.C. § 6213(a) .................................................................12

I.R.C. § 6214(a) ........................................................... 12, 13

I.R.C. § 6215(a) .................................................................13

I.R.C. § 6303(a) .................................................................10

I.R.C. § 6320 ............................................................. 3, 13, 16

    I.R.C. § 6320(c) ...............................................................13

I.R.C. § 6321 ......................................................................10

I.R.C. § 6322 ...................................................................9, 10

I.R.C. § 6330 ............................................................. 2, 10, 13

    I.R.C. § 6330(d)(1) ..........................................................13

I.R.C. § 6331 ....................................................................2, 10

I.R.C. § 6420(i)(2) ........................................................ 11, 29

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

I.R.C. § 6421(j)(1) ........................................................................... 11, 29

I.R.C. § 6427(p)(1) .......................................................................... 11, 29

I.R.C. § 6502(a) .................................................................................. 9, 10

I.R.C. § 6512(b)(1) ......................................................................... 12, 13

I.R.C. § 6665 ............................................................................................46

   I.R.C. § 6665(a) .................................................................... 11, 29, 36

   I.R.C. § 6665(a)(2) ....................................................................... 33, 34

I.R.C. § 6671 ............................................................................................46

   I.R.C. § 6671(a) .............................................................................. 11, 29

I.R.C. § 6721 ..................................................................................... 11, 29

I.R.C. § 6722 ..................................................................................... 11, 29

I.R.C. § 6723 ..................................................................................... 11, 29

I.R.C. § 6724 ..................................................................................... 11, 29

I.R.C. § 6725 ..................................................................................... 11, 29

I.R.C. § 7269 ............................................................................................30

I.R.C. § 7401 ......................................... 7, 28, 31, 32, 33, 39, 40, 47, 48

I.R.C. § 7421(a) ......................................................................................58

I.R.C. § 7482(a)(1) .................................................................................13

I.R.C. § 7482(b)(1) .................................................................................58

I.R.C. § 7501(b) ............................................................................... 11, 29

I.R.C. § 7602 ............................................................................................48

   I.R.C. § 7602(a) .............................................................................. 48, 49

I.R.C. § 9707(f) .......................................................................... 11, 12, 29

28 U.S.C. § 1391(b) ...............................................................................58

28 U.S.C. § 2401(a) ......................................................................... 7, 8, 26

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

28 U.S.C. § 2461 ............................................................26

   28 U.S.C. § 2461(a) ................................... 1, 4, 6, 7, 8, 16, 17, 19, 21,
   ........................................................ 23, 24, 25, 28, 38, 39, 41, 43, 44,
   ........................................... 46, 47, 48, 50, 51, 52, 56, 58, 61, 62, 63

28 U.S.C. § 2462 ..............................................................7

31 U.S.C. § 5314(a) .........................................................64

31 U.S.C. § 5321(a)(5)(B)(i) ............................................64

31 U.S.C. § 5321(b) .........................................................64

33 U.S.C. § 1319(b) .........................................................57

33 U.S.C. § 1319(g) .........................................................57

**REGULATIONS**

26 C.F.R. § 301.6201-1(a) ..................................................9

26 C.F.R. § 301.7601-1 .......................................................9

26 C.F.R. § 301.7701-9 .......................................................9

26 C.F.R. § 601.103(a) ........................................................9

*Transactions With Foreign Trusts and Information Reporting on Transactions*
   *With Foreign Trusts and Large Foreign Gifts,*
   89 Fed. Reg. 39,440 (May 8, 2024) ...................................63

**OTHER AUTHORITIES**

H.R. Rep. No. 83-1337 (1954) ...........................................49

IRS, *About Form 5471, Information Return of U.S. Persons*
   *With Respect To Certain Foreign Corporations,*
   https://www.irs.gov/forms-pubs/about-form-5471 ................15

Pub. L. No. 76-1, 53 Stat. 1 (1939) ....................................37

Pub. L. No. 83-591, 68 Stat. 730 (1954) .............................37

Antonin Scalia & Brian A. Garner, *Reading Law* (2012) ...................................31

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

S. Rep. No. 83-1622 (1954) ......................................................................49

S. Rep. No. 97-494, Vol. I (1982) .................................................. 15, 59

Taxpayer Advocate Service, *National Taxpayer Advocate Annual Report to Congress* (2020) ....................................................64

Taxpayer Advocate Service, *TAS Helps Taxpayer Stop IRS Levy Against Social Security Benefits,* (Jan. 5, 2018), https://www.taxpayeradvocate.irs.gov/news/ success-stories/successstories-tas-helps- taxpayer-stop-irs-levy-against-social- security-benefits/2018/01/ ...........................................................10

## GLOSSARY

| | |
|---|---|
| I.R.C. | Internal Revenue Code (*i.e.*, Title 26 of the U.S. Code) |
| IRS | Internal Revenue Service |
| Secretary | Secretary of the Treasury |
| Tax Code | The I.R.C. (*i.e.*, Title 26 of the U.S. Code) |
| Treasury | U.S. Department of the Treasury |

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents the important question whether the government must pursue the penalties under I.R.C. § 6038(b) by civil action under 28 U.S.C. § 2461 or whether those penalties are instead assessable, giving the IRS access to powerful collection tools. Although the Tax Court correctly ruled that the government must pursue a civil action to collect § 6038(b) penalties—the result required by statutory text, context, and history—the court acknowledged that it was disagreeing with the D.C. Circuit, which has instead held that § 6038(b) penalties are assessable. *Compare Mukhi v. Commissioner*, 163 T.C. 150, 151 (2024), *with Farhy v. Commissioner*, 100 F.4th 223 (D.C. Cir. 2024). Given the importance of the issue and the disagreement in the courts, Mr. Safdieh respectfully submits that oral argument would help the Court resolve the issue presented.

**INTRODUCTION**

This appeal is about how the government can enforce penalties under I.R.C. § 6038(b) for a taxpayer's failure to report information about her controlling interests in foreign business entities under § 6038(a). Is the government required to collect any civil penalties through a civil action in federal court, as the full Tax Court has held and reaffirmed? *See Mukhi v. Commissioner*, 163 T.C. 150 (2024) (*Mukhi II*); *Farhy v. Commissioner*, 160 T.C. 399 (2023) (*Farhy I*), *rev'd* 100 F.4th 223 (D.C. Cir. 2024). Congress has made clear that when it provides for a civil penalty "without specifying the mode of recovery or enforcement thereof," the penalty "may be recovered in a civil action." 28 U.S.C. § 2461(a). Or, as the IRS contends here and the D.C. Circuit held in *Farhy v. Commissioner*, 100 F.4th 223 (D.C. Cir. 2024) (*Farhy II*), does the Secretary of the Treasury instead have authority to assess § 6038(b) penalties—thus triggering the IRS's powerful administrative collection tools—even though § 6038(b) says nothing about assessment? The text and context of I.R.C. § 6201(a)—the provision recognizing the Secretary's general assessment authority—and § 6038(b) provide the straightforward answer: Neither provision gives the Secretary authority to assess § 6038(b) penalties, so the government can collect them only by suing in federal court.

Assessment is a powerful IRS tool. An "assessment" is "the official recording of a taxpayer's liability," or how much the taxpayer owes the government. *Polselli v. Internal Revenue Service*, 598 U.S. 432, 438 (2023). The tax system largely depends on self-assessment: taxpayers calculate the amount they think they owe and report it on their tax returns. *United States v. Galletti*, 541 U.S. 114, 122 (2004). But if the taxpayer doesn't file a return or the Secretary thinks the taxpayer hasn't calculated the correct amount due, the Secretary (who has subdelegated authority to the IRS) must "assess[] … all taxes (including interest, additional amounts, additions to the tax, and assessable penalties)," I.R.C. § 6201(a), and record the liability, I.R.C. § 6203. An assessment triggers the IRS's administrative collection powers, including the ability to file a lien against, and levy (*i.e.*, seize), the taxpayer's property — including their home and bank accounts. *See* I.R.C. §§ 6330, 6331. The taxpayer's only options are to challenge the proposed collection in administrative proceedings and, if necessary, Tax Court, or pay and then sue in federal court for a refund.

The question in this case is whether the Secretary has authority to assess penalties under § 6038(b). Section 6038(a) requires taxpayers to disclose information about foreign business entities that the taxpayer controls.

Failure to do so can result in two penalties. The first penalty, at issue here, provides that the taxpayer "shall pay a penalty of $10,000 for each annual accounting period with respect to which such failure exists." I.R.C. § 6038(b)(1). If the failure continues after notification, the penalty can increase to up to $50,000. I.R.C. § 6038(b)(2). The second penalty reduces the foreign tax credits available to the taxpayer (credits for payments to a foreign government that a taxpayer can use to offset U.S. tax, *see* I.R.C. § 901(b)(1)). *See* I.R.C. § 6038(c). The foreign tax credit reduction is "coordinat[ed]" with § 6038(b) penalties: "[t]he amount of the reduction" in available foreign tax credits "with respect to any annual accounting period shall be reduced by the amount of the" § 6038(b) penalty. I.R.C. § 6038(c)(3).

In Mr. Safdieh's case, the IRS assessed $50,000 in civil penalties under I.R.C. § 6038(b) for failure to report information about foreign controlled businesses for tax years 2005 to 2009. When that amount went unpaid, the IRS notified Mr. Safdieh that it was filing a notice of tax lien on his property and rejected Mr. Safdieh's objections in administrative proceedings.

Mr. Safdieh sought Tax Court review in a collection due process proceeding under I.R.C. § 6320. The Tax Court, after reaffirming its decision in *Mukhi II*, granted summary judgment to Mr. Safdieh. In *Mukhi II*, 15 of the

- 3 -

16 participating Tax Court judges concluded that the IRS lacks authority to assess § 6038(b) penalties and that the IRS's and D.C. Circuit's contrary reasoning lacks merit, so the penalties the IRS assessed are invalid and so is the IRS's tax lien.

The Tax Court got it right, and this Court should affirm. The IRS lacks authority to assess § 6038(b) penalties and the government can thus only collect them through a civil action under 28 U.S.C. § 2461(a).

1.    Section 2461(a) makes clear that when Congress provides for a penalty "without specifying the mode of recovery or enforcement," the government must file a civil action to collect. Nothing in the Tax Code overrides that default rule. The government first points to I.R.C. § 6201(a), which recognizes the Secretary's authority "to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties)." But that text makes clear that the penalty-assessment authority is limited to *assessable* penalties, not *all* penalties. Indeed, the term "taxes" doesn't ordinarily include "penalties," as other Tax Code provisions make clear, and Congress knows how to make penalties assessable when it wants to, as it did for a number of other Code provisions. But Congress did not do so in § 6038(b). As the Tax Court put it, § 6038(b)

contains no "text that approaches the assessment text in the other civil penalty statutes: There is no text demanding that the penalty be treated as an assessable penalty, there is no text indicating the penalty should be treated as a tax, and there is no text directing the taxpayer to pay the penalty in a manner like a tax." *Mukhi II*, 163 T.C. at 162. The straightforward result is that § 6038(b) penalties are not assessable.

**2.** According to the IRS and the D.C. Circuit, policy and purpose support the notion that Congress somehow silently granted the Secretary authority to assess § 6038(b) penalties. That's wrong as a fundamental matter of statutory construction. Congress's decisions about how to enforce penalties reflect legislative judgments about the best answer to "delicate questions of public policy." *Medina v. Planned Parenthood South Atlantic*, 145 S. Ct. 2219, 2229 (2025). It is Congress's job—not the IRS's or this Court's—to make those decisions, and the answer must be found in "the statutory text." *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 544 (2012) (*NFIB*).

The IRS lacked authority to assess § 6038(b) penalties against Mr. Safdieh. This Court should affirm.

## STATEMENT OF THE ISSUE ON APPEAL

Whether the government must pursue a civil action under 28 U.S.C. § 2461(a) to collect penalties under I.R.C. § 6038(b) because no Tax Code provision gives the Secretary authority to assess those penalties.

## PERTINENT STATUTES

Pertinent statutes are set forth in the addendum bound with this brief. *See* Add.1-33.

## STATEMENT OF THE CASE

### A.    Legal background

By default, federal agencies can collect civil penalties through civil actions filed in district court. 28 U.S.C. § 2461(a). Congress has sometimes deviated from that default rule. In many Tax Code provisions, for example, Congress has made clear that the Secretary can instead "assess" penalties — meaning he can record the penalty as a liability, demand payment, and then, if the taxpayer fails to pay, file a lien on or try to levy the taxpayer's property. When the Secretary can exercise that powerful assessment authority, the government doesn't need to sue to recover penalties. This case is about whether the Secretary has authority to assess the penalties imposed under I.R.C. § 6038(b) for a taxpayer's failure to report information, as required by

§ 6038(a), about any foreign business entities that the taxpayer controls. Answering that question requires understanding (1) Congress's default rule for recovering civil penalties; (2) the IRS's assessment authority and the circumstances in which Congress has granted the Secretary penalty-assessment authority; and (3) § 6038's reporting requirements and penalties.

### 1. The default rule in 28 U.S.C. § 2461(a) requires the government to sue to recover civil penalties.

The U.S. Code provides a default rule for how the government must collect civil penalties: sue in federal court.

Under 28 U.S.C. § 2461(a), "[w]henever a civil … penalty … is prescribed for the violation of an Act of Congress without specifying the mode of recovery or enforcement thereof, it may be recovered in a civil action." That includes recovery of penalties imposed under the Tax Code. Indeed, I.R.C. § 7401 confirms that the government can initiate a "civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture."

Section 2461(a) is not unusual in providing a default rule. The U.S. Code contains other examples. For instance, 28 U.S.C. § 2462 provides the default five-year statute of limitations for recovering penalties. *Kokesh v. Securities & Exchange Commission*, 581 U.S. 455, 457 (2017). Similarly, 28 U.S.C.

§ 2401(a) is "[t]he default [six-year] statute of limitations for suits against the United States." *Corner Post, Inc. v. Board of Governors of Federal Reserve System*, 603 U.S. 799, 804 (2024). The U.S. Code provides default rules in other contexts, too, including in bankruptcy, *In re Soussis*, 136 F.4th 415, 423 (2d Cir. 2025) (citing 11 U.S.C. § 1326(c)); and federal arbitration, *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1263 (10th Cir. 2018) (citing 9 U.S.C. § 5).

Congress can of course deviate from its default rules by enacting more specific provisions. A "default rule is only a default, meaning that it applies only absent congressional indication otherwise." *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 145 S. Ct. 2006, 2015-16 (2025).

### 2. Section 6201(a) of the Internal Revenue Code recognizes the Secretary's authority to assess taxes and "assessable penalties."

Section 6201(a) of the Tax Code recognizes that the Secretary has authority to assess taxes and "assessable penalties." Indeed, in a number of provisions throughout the Tax Code, Congress has granted Treasury authority to assess penalties—meaning the IRS can record them as a liability and pursue collection efforts without suing the taxpayer—thus overriding the default rule under 28 U.S.C. § 2461(a). The question in this case is whether the Secretary has authority to assess penalties under I.R.C. § 6038(b).

a.      The government's tax collection process begins with gathering information about a taxpayer's liability. *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 8 (2015). The next step is an "assessment," which is "the official recording of a taxpayer's liability." *Polselli*, 598 U.S. at 438. The "tax system is basically one of self-assessment," 26 C.F.R. § 601.103(a), meaning "each taxpayer computes the tax due and then files the appropriate form of return along with the requisite payment," *Galletti*, 541 U.S. at 122. Typically, the Secretary "accepts the self-assessment and simply records" the liability. *Id.*

If the taxpayer fails to file a return or the Secretary thinks the taxpayer incorrectly calculated the amount due, however, the Secretary must "assess[] … all taxes (including interest, additional amounts, additions to the tax, and assessable penalties)." I.R.C. § 6201(a); *see Galletti*, 541 U.S. at 122. The Secretary has delegated assessment authority and duties to the Commissioner of Internal Revenue, who has in turn delegated them to other IRS officials. *See* 26 C.F.R. §§ 301.6201-1(a), 301.7601-1, 301.7701-9. Those officials make the assessment "by recording the liability." I.R.C. § 6203.

b.      Although an assessment is essentially a "bookkeeping notation," *Hibbs v. Winn*, 542 U.S. 88, 100 (2004), it has significant implications because it triggers the IRS's administrative collection powers. Those powers include

- 9 -

"the seizure of assets, the freezing of bank accounts, and the creation of liens." *Philadelphia & Reading Corp. v. United States*, 944 F.2d 1063, 1064 n.1 (3d Cir. 1991); *see* I.R.C. §§ 6502(a), 6322; *Galletti*, 541 U.S. at 122.

After making the assessment and determining that there is an unpaid tax, the Secretary must provide notice to the taxpayer of "the unpaid tax" and "demand[] payment." I.R.C. § 6303(a). If the taxpayer does not pay, the IRS can seek to levy (*i.e.*, seize) the taxpayer's property to satisfy the tax debt. *See* I.R.C. §§ 6330, 6331; *Commissioner v. Zuch*, 145 S. Ct. 1707, 1710 (2025). Or the IRS might file a lien, which is a legal claim against the taxpayer's property. *See* I.R.C. § 6321. Sometimes that means a taxpayer may lose their home, *see United States v. National Bank of Commerce*, 472 U.S. 713, 731 (1985), or their income, *see TAS Helps Taxpayer Stop IRS Levy Against Social Security Benefits*, Taxpayer Advocate Service (Jan. 5, 2018), https://www.taxpayeradvocate. irs.gov/news/success-stories/successstories-tas-helps-taxpayer-stop-irs-levy-against-social-security-benefits/2018/01/. The IRS's lien and levy powers place the government "in an advantageous position when seeking to collect on alleged tax debts," *United States v. Forma*, 42 F.3d 759, 766 (2d Cir. 1994), and they can pressure taxpayers to settle or pay.

Some Tax Code provisions make clear that the Secretary has penalty-assessment authority. For example, I.R.C. § 6665(a) addresses "additions treated as tax." It provides that "additions to … tax, additional amounts, and penalties provided by" chapter 68 of subtitle F—which addresses "additions to the tax, additional amounts, and assessable penalties"—"shall be assessed, collected, and paid in the same manner as taxes." *See Mukhi II*, 163 T.C. at 160-61. And I.R.C. § 6671(a), which covers "penalt[ies] assessed as tax," confirms that "penalties … provided by" subchapter B of chapter 68—which in turn covers "assessable penalties"—"shall be assessed and collected in the same manner as taxes." Subchapter B lists several penalties, including for violations of reporting requirements. *See* I.R.C. §§ 6721–6725.

Similarly, outside of chapter 68, select Tax Code provisions state that particular penalties "shall be assessed." *E.g.*, I.R.C. §§ 527(j)(1), 4980H(d)(1), 5000A(g)(1), 5114(c)(3), 5684(b), 5761(e); *see Mukhi II*, 163 T.C. at 161. Other sections make penalties assessable by incorporating by reference penalty provisions in chapter 68 of subtitle F. *See, e.g.*, I.R.C. §§ 1275(c)(4), 6033(*o*), 6043(d), 6046(f), 6046A(e), 6420(i)(2), 6421(j)(1), 6427(p)(1), 7501(b). And some statutes make penalties assessable by stating that they "shall be treated

in the same manner as" a tax, *e.g.*, I.R.C. § 9707(f), or paid "in the same manner as" a tax, *e.g.*, I.R.C. §§ 856(g)(5)(C), 857(f)(2)(A). *Mukhi II*, 163 T.C. at 161.

Section 6201(a), in turn, provides that "[t]he Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title." The provision thus gives the Secretary authority to assess taxes and recognizes the Secretary's authority to assess "assessable penalties."

**c.**   Sometimes a taxpayer can seek Tax Court review of a liability *before* assessment, in what are known as deficiency proceedings. A deficiency generally "results from a taxpayer's understatement of tax liability on a federal tax return." *Bachner v. Commissioner*, 124 F.4th 1066, 1071 (7th Cir. 2025). If the IRS determines that a taxpayer owes more than she reported, the IRS typically sends her a deficiency notice, I.R.C. §§ 6212(a), 6211(a), informing the taxpayer that the IRS intends to assess the liability, which can include penalties, *Chai v. Commissioner*, 851 F.3d 190, 195, 218 (2d Cir. 2017).

The taxpayer can petition the Tax Court for a redetermination. I.R.C. § 6213(a). The Tax Court determines the correct amount owed and whether the taxpayer made overpayments that would entitle the taxpayer to a refund

or credit. I.R.C. §§ 6214(a), 6512(b)(1). The Tax Court's decision is reviewable by a court of appeals, I.R.C. § 7482(a)(1), and when the decision becomes final, the IRS assesses the deficiency, I.R.C. § 6215(a); *see Chai*, 851 F.3d at 218.

**d.** Even after assessment, a taxpayer can challenge an IRS effort to collect a penalty through a levy or lien. The IRS must notify the taxpayer that it is seeking a levy or lien and the taxpayer can request a "collection due process" hearing before the IRS Independent Office of Appeals (Appeals Office). *See* I.R.C. §§ 6320, 6330; *Zuch*, 145 S. Ct. at 1710-11. The taxpayer may petition the Tax Court to review the Appeals Office's determination. *See* I.R.C. §§ 6320(c), 6330(d)(1). The Tax Court's final judgment is reviewable in a court of appeals. I.R.C. § 7482(a)(1).

### 3. Section 6038(b) imposes penalties for a taxpayer's failure to report information about any controlling interest in a foreign business.

This appeal is about whether the Secretary can assess penalties under I.R.C. § 6038(b) for a taxpayer's failure to report information about foreign business entities in which the taxpayer holds a controlling interest. Section 6038(a) requires taxpayers to submit a form disclosing information "with respect to any foreign business entity which [the taxpayer] controls." Failure to submit the form can result in two penalties, which the taxpayer can avoid

by "show[ing] to the satisfaction of the Secretary" that the taxpayer had "reasonable cause … for failure to furnish" the information. I.R.C. § 6038(c)(4)(B).

**a.** The first penalty is at issue here: Under § 6038(b)(1), a taxpayer who fails to disclose the required information "shall pay a penalty of $10,000 for each annual accounting period with respect to which such failure exists." If, after receiving notice of the failure, the taxpayer still doesn't disclose, the penalty may increase over time to up to $50,000. I.R.C. § 6038(b)(2).

**b.** Section 6038(c) provides for the second penalty. If a taxpayer fails to report the required information, § 6038(c) reduces the foreign tax credits that the taxpayer might otherwise be able to claim. Foreign tax credits generally give a taxpayer credit against her U.S. taxes based on "taxes paid or accrued during the taxable year to any foreign country." I.R.C. § 901(b)(1).

Section 6038 "coordinat[es]" the two penalties: "[t]he amount of the reduction" in foreign tax credits "with respect to any annual accounting period shall be reduced by the amount of the penalty imposed by" § 6038(b). I.R.C. § 6038(c)(3). The IRS applies § 6038(c) by reducing the foreign tax credits available to the taxpayer; that reduction, in turn, can increase the taxpayer's overall liability if the taxpayer seeks to claim foreign tax credits.

**c.** Initially, the monetary penalty was not available for violations of § 6038(a); the only penalty was the foreign tax credit reduction penalty, now in § 6038(c). Congress enacted the § 6038(b) penalty in 1982 because, as a Senate Finance Committee report observed, the foreign tax credit reduction "penalty is complicated." S. Rep. No. 97-494 (Vol. 1), at 299 (1982). On the one hand, it could "be unduly harsh in some cases, because a taxpayer could incur a substantial penalty for a minor failure." *Id.* On the other, "reducing creditable foreign taxes is of no use" if the taxpayer "paid no foreign income taxes during the year in question." *Id.*

**B.    Factual and procedural background**

**1.** In 2018, the IRS assessed $50,000 in civil penalties against Mr. Safdieh, a New York resident, under I.R.C. § 6038(b) for failure to file Form 5471 to report information about foreign controlled businesses, *see* I.R.C. § 6038(a), for tax years 2005 to 2009. A-19-A-31, A-41, A-51; *see* IRS, *About Form 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations*, https://www.irs.gov/forms-pubs/about-form-5471. The IRS demanded payment. In 2019, after the penalties went unpaid, the IRS filed a notice of federal tax lien, giving "public notice that the government has a lien on all [of Mr. Safdieh's] property (such as [his] house or car), all [his] rights

- 15 -

to property (such as money owed to [him]) and to property [he] acquire[s] after [the] lien is filed." A-32; *see* A-31-A-32. The IRS sent Mr. Safdieh a notice of the lien and informed him of his right to a collection due process hearing before the Appeals Office, *see* I.R.C. § 6320. A-29-A-30.

2.    Mr. Safdieh timely requested a hearing. He asserted that the penalties were punitive and should be discharged. A-29, A-33-A-36. After a telephonic hearing, the Appeals Office sustained the lien. A-42-A-50.

3.    Mr. Safdieh, proceeding pro se, timely petitioned the Tax Court for review. A-5-A-10.

a.    Mr. Safdieh contested the lien and explained that he had paid his federal taxes for the tax years in question, that he had had net operating losses, and that, because of the COVID-19 pandemic, he had had difficulty obtaining the necessary records before his hearing. A-5-A-6.

b.    The IRS moved for summary judgment. A-2. While the motion was pending, the Tax Court held, in *Farhy I*, 160 T.C. 399 — a case appealable to the D.C. Circuit — that § 6038(b) penalties are not assessable and that the government can recover them only in a civil action under 28 U.S.C. § 2461(a).

The Tax Court explained in *Farhy I* that § 2461(a) "expressly provides" (160 T.C. at 406) that "[w]henever a … penalty … is prescribed for the

violation of an Act of Congress without specifying the mode of recovery or enforcement thereof, it may be recovered in a civil action," 28 U.S.C. § 2461(a). The Tax Court reasoned that "Congress has explicitly authorized assessment with respect to myriad penalty provisions in the Code, but not for section 6038(b) penalties." 160 T.C. at 405. To the contrary, for § 6038(b) penalties, "no mode of recovery or enforcement is specified." *Id.* at 406. The Tax Court thus refused to "infer[]" authority to assess § 6038(b) penalties "when Congress did not see fit to grant that power to the Secretary of the Treasury expressly as it did for other penalties in the Code." *Id.*

The Tax Court rejected the government's "argument that the term 'taxes' in section 6201(a) encompasses" § 6038(b) penalties "even if they are not assessable." *Id.* at 407. "Precedent firmly establishes that taxes and penalties are distinct categories of exactions," the court explained, "at least in the absence of a provision treating them as the same." *Id.* That is why certain Tax Code provisions "deem[] any reference in the Code to 'tax'" to also refer to penalties for some purposes. *Id.* at 408. And, the Tax Court reasoned, "[t]he adjective 'assessable' would also be unnecessary to modify the term 'penalties' in section 6201 if section 6201 authorized the Commissioner to assess all penalties provided in the Code." *Id.*

In *Mukhi v. Commissioner*, 162 T.C. 177 (2024) (*Mukhi I*), a case appealable to the Eighth Circuit, the Tax Court reaffirmed its holding in *Farhy I*.

**c.** In Mr. Safdieh's case, the Tax Court explained that it had "twice held that the Code does not permit the assessment of section 6038 penalties" and gave the IRS "an opportunity to point out any difference between [Mr. Safdieh's] case, and *Farhy* and *Mukhi*." A-52. The Tax Court explained that it "regard[ed] any arguments in [*Farhy* and *Mukhi*] as having been made in" Mr. Safdieh's case and stated that it would rule for Mr. Safdieh if the IRS failed to point to any material difference from those earlier cases. A-52.

Before the IRS responded, the D.C. Circuit reversed *Farhy I* and held that § 6038(b) penalties are assessable. *Farhy II*, 100 F.4th 223. The court didn't decide whether § 6201(a) gave the IRS authority to assess § 6038(b) penalties—the IRS's lead argument before this Court—but instead ruled that § 6038(b)'s text and structure make § 6038(b) penalties assessable. *Id.* at 231.

The IRS responded to the Tax Court's order in Mr. Safdieh's case. It conceded that "the basic facts" relating to whether § 6038(b) penalties are assessable in Mr. Safdieh's case, *Farhy*, and *Mukhi* "do not differ," and it asked the Tax Court to follow the D.C. Circuit's decision in *Farhy II*. A-54.

**d.** Meanwhile, the IRS asked the Tax Court to reconsider its ruling in *Mukhi I*. In an opinion joined by 15 of the court's 16 participating judges, the Tax Court reaffirmed its holding in *Farhy I*, for all cases except those going to the D.C. Circuit, that § 6038(b) penalties are not assessable. *Mukhi II*, 163 T.C. 150. The court rejected the D.C. Circuit's reasoning in *Farhy II*. *Id.*

The Tax Court reiterated that the default rule under 28 U.S.C. § 2461(a) is that "an agency may collect a civil penalty through a civil action in a district court," and that Congress hadn't altered that rule for § 6038(b) penalties in § 6038, § 6201(a), or any other provision. *Mukhi II*, 163 T.C. at 156-61. Section 6201(a)'s reference to "taxes" did not reach "all exactions," the court reasoned, *id.* at 157, and § 6038(b)'s text "does not set forth the procedure the IRS must use to collect the tax," so § 2461(a) applies, *id.* at 160-62.

Given § 6038(b)'s plain text, the Tax Court continued, it was unnecessary to examine legislative history, purpose, policy, or agency practice. *Id.* at 162. But the Tax Court rejected the IRS's and D.C. Circuit's arguments on each of those questions on its own terms anyway. *See id.* at 162-75. For example, the court rejected the IRS's argument that a Senate Finance Committee report's remark that the foreign tax credit penalty was "complicated" was "evidence that Congress intended the section 6038(b) penalty to be

assessable." *Id.* at 164. "[N]othing in this phrase touches on the IRS's authority to assess the penalty or the mode of collection," the Tax Court explained. *Id.* "When read in context," the court continued, "this statement appears to be directed at the unpredictable effect of the penalty that could be too harsh or lenient depending on a taxpayer's foreign tax credit." *Id.* And it would be "unusual" for Congress to "resolve the 'unduly harsh' section 6038(c) penalty by creating a penalty that is not subject to any pre-assessment judicial review." *Id.* at 164-65.

**e.** The Tax Court granted Mr. Safdieh summary judgment under *Mukhi II* and *Farhy I.* A-53-A-55. The court held that "because the Commissioner lacks the power to assess [§ 6038(b)] penalties in the first place, Mr. Safdieh's notice of determination" sustaining the tax lien "cannot survive." A-54. It thus barred the IRS from collecting Mr. Safdieh's liability for § 6038(b) penalties for the 2005 through 2009 tax years. A-55.

The IRS appealed to this Court. A-56-A-60.

## SUMMARY OF ARGUMENT

Nothing in the Tax Code gives the IRS authority to assess § 6038(b) penalties, so the government can collect them only through a civil action

under § 2461(a). The Tax Court thus correctly granted summary judgment for Mr. Safdieh.

**A.**     Section 2461(a) of title 28 and I.R.C. § 6201(a) make clear that the government must file a civil action to collect penalties unless another Tax Code provision grants the Secretary penalty-assessment authority.

**1.**     Congress sometimes writes default rules that apply absent more specific guidance in other U.S. Code provisions, as the Supreme Court has recognized. When Congress provides default rules, they apply when other statutes are silent about the topic.

**2.**     In § 2461(a), Congress provided a default rule for civil penalties. If Congress created a penalty "without specifying the mode of recovery or enforcement thereof," then the government must collect it "in a civil action." 28 U.S.C. § 2461(a). Various Tax Code provisions make clear that Congress knew how to deviate from that rule and make a penalty assessable when it wanted to. Other provisions, which align with § 2461(a) by requiring a civil action to collect penalties, reinforce that there is no broad assessment authority that applies across the entire Tax Code.

**3.**     Section 6201(a) confirms that some civil penalties in the Tax Code are assessable and others are not, and that the Secretary must look

beyond § 6201(a) to find assessment authority for any particular penalty. Section 6201(a)'s plain text makes clear that the Secretary has authority to assess only "assessable penalties," not *all* penalties. There would have been no reason for Congress to modify "penalties" if it had meant to grant the Secretary authority to assess all penalties in the Tax Code. And the Tax Code is replete with penalty provisions making clear that particular penalties are assessable, confirming that § 6201(a)'s reference to "assessable penalties" refers only to penalties that are elsewhere made assessable. Nor can the IRS or the courts modify that clear text by reasoning that "assessable penalties" is just one item in an illustrative list of "taxes," because the ordinary meaning of "taxes" in the Tax Code does *not* include penalties. What's more, § 6201(a)'s predecessor granted the IRS authority to assess "all taxes and penalties." But Congress amended that language in 1954 to restrict the Secretary's assessment authority to assess "assessable penalties" only.

**B.** Neither § 6038(b) nor any other Tax Code provision authorizes the Secretary to assess § 6038(b) penalties, so the government can collect them only through a civil action under 28 U.S.C. § 2461(a). Section 6038(b) contains no "text that approaches the assessment text in the other civil penalty statutes: There is no text demanding that the penalty be treated as an

assessable penalty, there is no text indicating the penalty should be treated as a tax, and there is no text directing the taxpayer to pay the penalty in a manner like a tax." *Mukhi II*, 163 T.C. at 162. There is nothing "specifying" a mode of enforcement that would override § 2461(a)'s default rule. *Id.*

The IRS assessed § 6038(b) penalties against Mr. Safdieh. Because it lacked authority to do so, the Tax Court correctly determined that Mr. Safdieh was entitled to summary judgment.

**C.** The IRS's counterarguments and the D.C. Circuit's contrary reasoning lack merit.

**1.** The IRS's primary argument—which the D.C. Circuit declined to resolve—is that I.R.C. § 6201(a), which authorizes the Secretary to make "assessments of all taxes," also grants the IRS authority to assess § 6038(b) penalties. That argument fails because it ignores Congress's limitation of the assessment authority to "*assessable* penalties," as well as statutory context (the numerous other Tax Code provisions making penalties assessable) and Congress's choice in 1954 to restrict penalties to assessable penalties.

**2.** The IRS alternatively claims that § 6038(b) grants the Secretary assessment authority—the theory that the D.C. Circuit endorsed. That is incorrect. Section 6038(b)'s text and context make clear that penalties are not

assessable—indeed, § 6038(b)'s silence as to assessment means the plain terms of § 2461(a) must control. The IRS's and the D.C. Circuit's concerns with the supposed administrative burdens and practical difficulties of suing to recover § 6038(b) penalties and coordinating with § 6038(c) penalties, and arguments from legislative history, cannot override statutory text, and are unpersuasive on their own terms anyway. Nor does the IRS's claim that it has been assessing § 6038(b) penalties for decades give it assessment authority, because, like other agencies, the IRS cannot acquire authority through "adverse possession." *Rapanos v. United States*, 547 U.S. 715, 752 (2006).

**3.** The IRS and the D.C. Circuit also contend that it would be absurd and bad policy if the IRS couldn't assess § 6038(b) penalties. But those absurdity and policy arguments cannot overcome statutory text and context— and they are wrong on their own terms anyway. Congress chose to put the government to the trouble of filing a civil suit to collect § 6038(b) penalties, likely because Congress wanted the IRS to take greater individualized care before imposing penalties. Regardless, any purported policy concerns are for Congress, not the IRS or the courts, to address.

## STANDARD OF REVIEW

This Court reviews the Tax Court's legal conclusions, including on questions of statutory interpretation, de novo and its factual findings for clear error. *Chai*, 851 F.3d at 204.

## ARGUMENT

**A.** **Under 28 U.S.C. § 2461(a) and I.R.C. § 6201(a), the government must file a civil action to collect civil penalties under the Tax Code unless another Code provision grants the Secretary penalty-assessment authority.**

When a civil penalty provision does not identify how the government can recover the penalty, by default the government must file a civil action in federal court under 28 U.S.C § 2461(a). But Congress may provide a different rule, as it has done expressly for many civil penalties under the Tax Code. And I.R.C. § 6201(a) recognizes the Secretary's authority to assess "assessable penalties," meaning that § 6201(a) requires *other* provisions to make a penalty assessable, or else § 2461(a)'s default rule applies.

Basic principles of statutory construction require that result. Statutory interpretation begins with the text and its "plain meaning." *Babb v. Wilkie*, 589 U.S. 399, 402 (2020). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Courts also read

statutory terms "in their context." *Environmental Protection Agency v. Calumet Shreveport Refinery, L.L.C.*, 145 S. Ct. 1735, 1750 (2025). And when there is any doubt, courts read Tax Code provisions "against the government and in favor of the taxpayer." *Exxon Mobil Corp. & Affiliated Cos. v. Commissioner*, 689 F.3d 191, 199-200 (2d Cir. 2012). Here, those principles make clear that § 2461's civil-suit default rule applies for collecting penalties unless a Tax Code provision—not including § 6201(a)—makes a penalty assessable.

> **1. Supreme Court precedent and basic principles of statutory interpretation make clear that default rules govern where Congress is silent or otherwise fails to make an exception.**

The U.S. Code provides many default rules that apply unless more specific provisions state otherwise. For example, 28 U.S.C. § 2401(a) provides "[t]he default" six-year "statute of limitations for suits against the United States." *Corner Post, Inc.*, 603 U.S. at 804. Similarly, as the Supreme Court recently explained in *McLaughlin*, 5 U.S.C. § 703 codifies "the default principle that parties in enforcement proceedings can challenge an agency's interpretation of a statute." 145 S. Ct. at 2015. That provision, which provides for judicial review "[e]xcept to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law," 5 U.S.C. § 703, supplies

the default rule where statutes "provide for pre-enforcement review [of agency action] but are silent" as to whether review is available "in subsequent enforcement proceedings," *McLaughlin*, 145 S. Ct. at 2014-15.

A default rule doesn't make an express statement of the default rule in other provisions redundant or superfluous. In *McLaughlin*, for example, the Supreme Court held that § 703 supplies the default rule making judicial review available in enforcement proceedings even though some statutes, consistent with § 703, "expressly *authorize* (or at least expressly contemplate) judicial review in subsequent enforcement proceedings." *Id.* at 2014. The § 703 default rule remains the default rule, and it applies where another statute is silent about review in enforcement proceedings.

Congress sometimes deviates from default rules. A "default rule … applies only absent congressional indication otherwise." *Id.* at 2015-16. When Congress wants to override a default rule, "it can easily say so." *Id.* at 2016. But "absent such congressional preclusion," the default rule applies. *Id.* Put differently, "Congress can and must say so" if it wants a different rule to apply. *Id.* at 2017. Faced with silence, Courts cannot infer that Congress instead wanted an exception to the default rule to apply. *See id.* at 2016-17.

2. **Section 2461(a)'s default rule requires the government to file a civil action to recover civil penalties unless Congress has specified a different method in other provisions.**

Congress created a default rule when it enacted 28 U.S.C. § 2461(a) in 1948: when a statute does not "specify[] the mode of recovery or enforcement" for a civil penalty, the government must recover it "in a civil action." 28 U.S.C. § 2461(a); *see Mukhi II*, 163 T.C. at 156. The Tax Code recognizes the default rule: I.R.C. § 7401 confirms that the government can initiate a "civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture." Thus, unless a provision of the Tax Code calls for another recovery method (like assessment), the government must file an action under § 2461(a) to recover the penalty.

Other provisions of the Tax Code drive the point home. Congress has overridden § 2461(a)'s default rule in many instances by "expressly *authoriz[ing]*" the Secretary to assess penalties, "or at least expressly contemplat[ing]" that the Secretary has such authority. *McLaughlin*, 145 S. Ct. at 2014. Indeed, in *Mukhi II*, the Tax Court explained that it had "conducted a survey of other civil penalties in the [Tax] Code, all of which expressly detail that the IRS may assess the penalty." 163 T.C. at 160.

For example, I.R.C. § 6665(a) provides that penalties in chapter 68 of subtitle F—which expressly governs "assessable penalties"—"shall be assessed, collected, and paid in the same manner as taxes." And I.R.C. § 6671(a) confirms that "penalties … provided by" subchapter B of chapter 68—many of which are for failure to comply with information reporting requirements—"shall be assessed and collected in the same manner as taxes." *See* I.R.C. §§ 6721–6725; *Mukhi II*, 163 T.C. at 160-61.

Outside of chapter 68, Congress has likewise specified when particular penalties "shall be assessed," *e.g.*, I.R.C. §§ 527(j)(1), 4980H(d)(1), 5000A(g)(1), 5114(c)(3), 5684(b), 5761(e); or stated that penalties shall be treated or paid "in the same manner as" a tax, *e.g.*, I.R.C. §§ 856(g)(5)(C), 857(f)(2)(A), 9707(f); or incorporated by reference penalty provisions in chapter 68, *see, e.g.*, I.R.C. §§ 1275(c)(4), 6033(*o*), 6043(d), 6046(f), 6046A(e), 6420(i)(2), 6421(j)(1), 6427(p)(1), 7501(b).

At the same time, elsewhere in the Tax Code, Congress specified that some civil penalties are *not* assessable, thus confirming that the default rule applies. *See McLaughlin*, 145 S. Ct. at 2016-17. For instance, I.R.C. § 5761(a) provides generally that the government can collect penalties through a civil action when a taxpayer "willfully omits, neglects, or refuses to comply with

any duty imposed" by chapter 52, subtitle E, which concerns taxes relating to tobacco products and cigarettes. And I.R.C. § 7269 imposes a civil penalty that the government may recover "in a civil action" when a taxpayer fails to comply with estate tax reporting and filing requirements.

> **3.** **Section 6201(a)'s text, context, and history confirm that some civil penalties in the Tax Code are assessable and some are not, and that § 6201(a) itself does not make penalties assessable.**

Section 6201(a) recognizes the Secretary's authority "to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by" the Tax Code. I.R.C. § 6201(a). The provision's text, context, and history make clear that some civil penalties in the Tax Code are assessable and some are not, and that § 6201(a) applies to assessable—but not non-assessable— penalties, and that it does not itself make penalties assessable.

> **a.** **Section 6201(a)'s plain text makes clear that there are assessable and non-assessable penalties, and § 6201(a) doesn't itself make penalties assessable.**

Section 6201(a) "authorize[s] and require[s]" the Secretary "to make the … assessments of all taxes (including interest, additional amounts, additions to the tax, and *assessable penalties*) imposed by [the Tax Code]." I.R.C.

- 30 -

§ 6201(a) (emphasis added). Those words make clear that the Tax Code includes both assessable and non-assessable penalties; that the Secretary has authority to assess "assessable penalties" only; and that the Secretary must look beyond § 6201(a) determine whether a particular penalty is assessable.

*i.*     Start with § 6201(a)'s express reference to "assessable penalties." That text makes clear that, in other Code provisions, Congress turned off the default rule for certain penalties by making them assessable, but that still other penalties remain non-assessable. There would be no reason for Congress to use "[t]he adjective 'assessable' … to modify the term 'penalties,'" if § 6201(a)'s assessment authority referred to "all penalties provided in the Code." *Farhy I*, 160 T.C. at 408. The word "assessable" would be surplusage. Put differently, § 6201(a)'s reference to "assessable penalties" presupposes that there are *non*-assessable penalties. *See, e.g.*, A. Scalia & B. Garner, Reading Law 107 (2012) (negative-implication canon); *cf. NFIB*, 567 U.S. at 534 ("[t]he enumeration" of powers "presupposes something not enumerated").

Congress's exclusion of *non*-assessable penalties from § 6201(a) is particularly clear in light of Congress's use of the word "penalty" or "penalties" without modifiers in other Tax Code provisions. For example, I.R.C. § 7401 provides that the government can initiate a "civil action for the collection or

recovery of … any … penalty." That language shows that "the Code uses the term 'any … penalty'" in describing penalties that are recoverable only in "civil actions that require the authorization of the Secretary of the Treasury and the direction of the Attorney General to commence." *Farhy I*, 160 T.C. at 408 n.11. If Congress had wanted § 6201(a) to make all penalties in the Tax Code assessable, "it knew how to do so," *Custis v. United States*, 511 U.S. 485, 492 (1994)—simply use the word "penalties" without a modifier.

Congress's choice instead to authorize "assessments of … assessable penalties," while omitting any reference to penalties generally, "strongly suggests" that Congress "intentionally and purposefully" excluded penalties not made assessable elsewhere. *Azar v. Allina Health Services*, 587 U.S. 566, 577 (2019). Courts must "give effect to Congress' express inclusions and exclusions, not disregard them." *National Ass'n of Manufacturers v. Department of Defense*, 583 U.S. 109, 126 (2018). Giving effect to § 6201(a)'s express inclusion of "assessable penalties" and its exclusion of non-assessable penalties requires reading the assessment authority described in § 6201(a) as "more limited than all penalties." *Mukhi II*, 163 T.C. at 157.

*ii.* Next, consider the ordinary meaning of "taxes," which does not include "penalties." Thus, by providing that "taxes" "includ[es]" "assessable

penalties," § 6201(a) makes clear that "taxes" includes only those penalties that are assessable. In other words, without the express inclusion of "assessable penalties" in § 6201(a)'s definition of "taxes," "taxes" wouldn't include any penalties at all.

Zooming out shows why. The Tax Code generally differentiates between taxes and penalties because they "are two distinct categories of exactions." *Mukhi II*, 163 T.C. at 157-58. As the Supreme Court put it in *NFIB*, "[t]here is no immediate reason to think that a statute applying to 'any tax' would apply to a 'penalty.'" 567 U.S. at 543. "A 'tax, in the general understanding of the term,' is merely 'an exaction for the support of the government.'" *Grajales v. Commissioner*, 47 F.4th 58, 64 (2d Cir. 2022). Civil penalties, in contrast, are "a form of monetary relief," and generally serve not just remedial purposes, but "retributive or deterrent purposes" as well. *Securities & Exchange Commission v. Jarkesy*, 603 U.S. 109, 123 (2024). Thus, as the Supreme Court has explained, although § 6201(a) says that "all taxes" include "assessable penalties," the Tax Code otherwise treats taxes and assessable penalties "as distinct terms." *NFIB*, 567 U.S. at 546. For example, I.R.C. § 7401 refers to the "recovery of taxes, or of any fine, penalty, or forfeiture," thus showing that "taxes" are not the same as a "penalty." Similarly,

a number of provisions deem penalties to be taxes for a particular purpose, *e.g.*, I.R.C. § 6665(a)(2); *supra* pp. 11-12, precisely because, absent such a provision, taxes don't normally include penalties.

Because the ordinary meaning of "taxes" does *not* include penalties, § 6201(a)'s statement that "taxes" "includ[es]" "assessable penalties" makes clear that § 6201(a)'s definition of "taxes" includes only penalties elsewhere made assessable. Congress's use of the word "including" doesn't change that. Using "the word 'include'" or "including" "*can* signal that the list that follows" is "illustrative rather than exhaustive," but "textual clues" determine what other terms make the list. *Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) (emphasis added). Indeed, "a statute's meaning does not always 'turn solely' on the broadest imaginable 'definitions of its component words.'" *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 523 (2018). "Linguistic and statutory context also matter." *Id.* Here, textual clues in § 6201(a) make clear that "taxes" does *not* include the opposite category of assessable penalties—*i.e.*, non-assessable penalties. *Id.* Congress deviated from the ordinary understanding of "taxes" in stretching the term to reach "assessable penalties," but courts may not strike the word "assessable" or change it to "any." Congress

could have defined "taxes" to include all penalties. It didn't, as text and context make clear.

### b. Statutory context confirms that some penalties in the Tax Code are assessable and some are not, and § 6201(a) recognizes but does not grant authority to make penalties assessable.

Context—the meaning of other provisions in the Tax Code—confirms that some penalties in the Tax Code are assessable and some are not. It also confirms that the Tax Code provisions expressly providing for penalty-assessment authority make those particular penalties assessable, and that § 6201(a) itself recognizes the authority to assess "assessable penalties" but does not itself make any penalties assessable.

The Tax Code's many penalty provisions expressly stating or contemplating that some penalties are assessable make clear that § 6201(a)'s reference to "assessable penalties" refers only to penalties that are, in fact, already assessable under those other provisions. As noted (at 28-29), "a survey of other civil penalties in the [Tax] Code," reveals provisions that "expressly detail that the IRS may assess the penalty." *Mukhi II*, 163 T.C. at 160; *see id.* at 160-61. What's more, as noted (at 29-30), the Tax Code also includes civil penalties that are plainly *not* assessable, further confirming that

§ 6201(a) reaches only those penalties that *are* assessable, not *all* penalties. The fact that many provisions expressly grant the Secretary penalty-assessment authority or at least expressly contemplate the Secretary's assessing those penalties confirms that *those* other provisions are what make the penalties assessable—not § 6201(a). Indeed, if § 6201(a) made all penalties assessable, that would make the language in the many provisions granting the Secretary assessment authority over particular penalties, *e.g.*, I.R.C. § 527(j)(1), and deeming particular penalties to be taxes, *e.g.*, I.R.C. § 6665(a), superfluous. *See infra* pp. 43-46. There would be no reason for those provisions to make penalties assessable if § 6201(a) did the job in one fell swoop.

### c. Statutory history shows that Congress narrowed the reach of § 6201(a) in 1954 when it amended § 6201(a)'s predecessor.

Finally, the history of § 6201(a) shows that Congress narrowed the reach of the provision in 1954 when it amended § 6201(a)'s predecessor—which authorized the Commissioner to assess "all taxes and penalties"—to limit the Secretary's assessment authority to reach only "assessable penalties." "When Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *Van Buren v. United States*, 593 U.S. 374, 393 (2021). Here, § 6201(a)'s precursor, section 3640 of the

Internal Revenue Code of 1939, *see* Pub. L. No. 76-1, 53 Stat. 1 (1939), "authorized and required" the Commissioner "to make the inquiries, determinations, and assessments of all taxes and penalties imposed by" the Tax Code. I.R.C. § 3640 (1939); *see Mukhi II*, 163 T.C. at 158-59. In 1954, however, Congress reorganized the Tax Code, *see* Internal Revenue Code of 1954, Pub. L. No. 83-591, 68 Stat. 730 (1954), and recodified the Secretary's assessment authority in § 6201(a). But instead of authorizing the Secretary to "make … assessments of all … penalties" under the Code, Congress narrowed the Secretary's authority by granting the Secretary assessment authority over "all taxes (including interest, additional amounts, additions to the tax, and *assessable penalties*)." I.R.C. § 6201(a) (1954) (emphasis added). The current version of § 6201(a) is materially identical.

That "change in the text of the statute" had "a 'real and substantial effect'": "the IRS's assessment authority was limited after 1954." *Mukhi II*, 163 T.C. at 158-59. Rather than having "authority to assess two distinct categories of liabilities: (1) all taxes and (2) penalties," "the IRS had assessment authority only over all taxes." *Id.* And "[i]n addition to removing the blanket assessment authority for all penalties," Congress made clear that the

Secretary has assessment authority over "assessable penalties"—"a necessarily more limited" term "than all penalties." *Id.* at 159.

### B. Neither § 6038(b) nor any other Code provision makes § 6038(b) penalties assessable, so the government can collect them only through a civil action under § 2461(a).

Because § 2461(a)'s default rule requires the government to pursue civil penalties by filing a civil action "[w]henever" a penalty "is prescribed … without specifying the mode of recovery or enforcement thereof," 28 U.S.C. § 2461(a), the government must show that some Tax Code provision "specif[ies]" that § 6038(b) penalties are assessable. As discussed (at 30-36), § 6201(a) does no such thing; it merely recognizes that the Secretary can assess already "assessable penalties." Section 6038 doesn't do the trick, either—nothing in its text or context "specif[ies]" that § 6038(b) penalties are assessable—and the government doesn't point to any other provision. The government can thus collect § 6038(b) penalties only by filing a civil action under 28 U.S.C. § 2461(a). The Tax Court correctly granted summary judgment to Mr. Safdieh on that basis.

1. **Section 6038(b)'s text and context show that the provision does not make penalties imposed under that provision assessable, so the government can recover them only by suing in district court under § 2461(a).**

**a.** Section 6038(b) imposes a penalty for a taxpayer's failure to report information about foreign businesses, in violation of I.R.C. § 6038(a). Nowhere does it say that the IRS may assess the penalty. Paragraph (1) of subsection (b) provides:

> If any person fails to furnish, within the time prescribed … , any information with respect to any foreign business entity required under paragraph (1) of subsection (a), such person shall pay a penalty of $10,000 for each annual accounting period with respect to which such failure exists.

I.R.C. § 6038(b)(1). Section 6038(b)(2), in turn, provides for an additional penalty, subject to a $50,000 cap, that the taxpayer "shall pay" for continuing violations.

The statute says nothing about assessment; it says only that a taxpayer must "pay" a penalty. But paying a penalty doesn't necessarily mean the IRS assessed the penalty. When it has the authority, the IRS can assess penalties, demand payment, and collect unpaid penalties with a levy or a lien. *Supra* pp. 9-10. Or the government can sue to recover them, *see* I.R.C. § 7401, and secure a judgment requiring the taxpayer to pay—and must do so when it

- 39 -

lacks assessment authority. Either way, the taxpayer "shall pay" the penalty, and that payment obligation says nothing about whether the IRS has authority to *assess* the penalty.

      **b.**     Put in context of the Tax Code more broadly, Congress's textual choices in § 6038(b) confirm that § 6038(b) doesn't grant the IRS assessment authority. The language of other statutes that grant the IRS authority to assess penalties, *supra* pp. 28-29, shows that when Congress intended to make penalties assessable, "it knew how to do so." *Custis*, 511 U.S. at 492. As the Tax Court explained in *Mukhi II*, § 6038(b) contains no "text that approaches the assessment text in the other civil penalty statutes: There is no text demanding that the penalty be treated as an assessable penalty, there is no text indicating the penalty should be treated as a tax, and there is no text directing the taxpayer to pay the penalty in a manner like a tax." 163 T.C. at 162. What's more, § 6038 is in chapter 61, not chapter 68 (which covers "assessable penalties"), and it doesn't incorporate by reference any provision of chapter 68. Nothing in § 6038(b) "specif[ies]" that the Secretary may collect penalties by assessing them. In short, "Congress did not grant the IRS authority to assess the section 6038(b)(1) penalty." *Id.* at 162.

Interpreting § 6038(b) to grant the IRS assessment authority would read into the statute words that Congress intentionally omitted. It would contravene the bedrock principle of statutory interpretation that "[w]here Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally." *NFIB*, 567 U.S. at 544; *cf. Russello v. United States*, 464 U.S. 16, 23 (1983). It also would disrupt the Tax Code's "highly reticulated" scheme, which "uses language, lots of language, with nearly mathematic precision … to pursue a wide range of policy goals" that the Court should not disturb. *Benenson v. Commissioner*, 910 F.3d 690, 699 (2d Cir. 2018).

    **c.** Section 6038(b) does not authorize the IRS to recover penalties through assessment, and the government points to no other provision that "specif[ies] the mode of recovery or enforcement" of § 6038(b) penalties. 28 U.S.C. § 2461(a). The U.S. Code's default provision for recovery of penalties, § 2461(a), thus applies and requires the government to pursue § 6038(b) penalties by filing a civil action. *Mukhi II*, 163 T.C. at 162.

- 41 -

### 2. Because the IRS lacks authority to assess penalties under I.R.C. § 6038(b), the IRS's tax lien is invalid and Mr. Safdieh is entitled to summary judgment.

The IRS assessed penalties against Mr. Safdieh under § 6038(b). When the penalties went unpaid, the IRS filed a tax lien against Mr. Safdieh's property and any future property rights he might acquire. *Supra* pp. 15-16. But because the IRS had no authority to assess the § 6038(b) penalties in the first place, the lien is invalid. As the Tax Court correctly determined, Mr. Safdieh is thus entitled to summary judgment.

### C. The IRS's counterarguments and the D.C. Circuit's contrary reasoning lack merit.

The IRS makes two primary and alternative arguments before resorting to policy and absurdity arguments. *First*, the IRS contends that § 6201(a), which authorizes the Secretary to make "assessments of all taxes (including … assessable penalties)," gives the Secretary authority to assess § 6038(b) penalties. Put differently, the IRS contends that § 6201(a) reaches *all* penalties, not just assessable penalties. The D.C. Circuit, for its part, declined to resolve that argument. *See Farhy II*, 100 F.4th at 230-31. *Second*, and alternatively, the IRS claims that § 6038(b) grants the Secretary penalty assessment authority — the theory that the D.C. Circuit adopted in *Farhy II*, *see id.* at 231-

36. Both arguments fail for the reasons explained above and further discussed below: Section 6201(a) recognizes the authority to assess penalties that the Code elsewhere makes assessable—it refers only to "assessable penalties"—and § 6038(b) specifies *no* enforcement mechanism, meaning § 2461(a)'s default rule plainly controls. *Finally*, the IRS falls back on policy and absurdity arguments, but they cannot overcome text and context.

### 1. Section 6201(a) does not grant the IRS authority to assess § 6038(b) penalties.

The IRS contends that § 6201(a) grants the Secretary authority to assess § 6038(b) penalties. Its arguments are unpersuasive.

### a. The IRS's textual and contextual arguments fail.

*i.* The IRS contends (Br. 15-19) that I.R.C. § 6201(a)'s reference to "taxes" includes *all* penalties—even though § 6201(a) refers only to "*assessable* penalties"—and § 6201(a) thus grants the Secretary authority to assess § 6038(b) penalties. That argument fails. *First*, § 6201(a)'s reference to "assessable penalties" shows that its grant of assessment authority does not extend to *all* penalties—it applies only to assessable ones. *Supra* pp. 30-36. *Second*, the IRS's contention that "all taxes" sweeps in all penalties in the Code—assessable or not—ignores that taxes and penalties, as discussed (at

- 43 -

32-35), are normally two different things, and would "render superfluous the various Code provisions deeming penalties to be taxes for certain purposes." *Mukhi II*, 163 T.C. at 157. The IRS itself has recognized that distinction. In *Grajales*, for example, the IRS argued that the exaction at issue "was a tax, not a 'penalty.'" 47 F.4th at 61. *Finally*, these points, taken together, make clear that the IRS's interpretation—that all penalties are assessable unless Congress says otherwise—turns § 2461(a)'s default rule on its head. Under § 2461(a), the government may recover civil penalties by civil action, and the Secretary thus can assess penalties only if Congress so "specif[ies]." 28 U.S.C. § 2461(a); *supra* pp. 28-30.

    *ii.*    The IRS asserts (Br. 16) that because § 6201(a) defines "taxes" by using the word "include," which typically introduces an illustrative rather than an exhaustive list, the term "taxes" must "include" not just "assessable penalties," but *all* penalties. That contention fails.

    Although a list in a statute that follows the word "includes" might be illustrative, *supra* pp. 34-35, that doesn't mean the statutory term encompasses everything under the sun. "[T]extual clues" and context still confine the statute's reach. *Samantar*, 560 U.S. at 317. And text and context make clear that when Congress said "assessable penalties" in § 6201(a), it didn't mean

"all penalties, assessable or not." *See Mukhi II*, 163 T.C. at 157. Congress could have said "penalties"—without the modifier—or it could have said "any penalties." But it did not, and the Court must "give effect to Congress' express inclusions and exclusions, not disregard them." *National Ass'n of Manufacturers*, 583 U.S. at 126. What's more, although "taxes" is a defined term, basic principles of statutory construction make clear that courts must also look to ordinary meaning in construing defined terms. *See Hayden v. Pataki*, 449 F.3d 305, 314-15 (2d Cir. 2006). The term "taxes" would not ordinarily include "penalties," and it doesn't encompass *all* penalties just because Congress expressly stated "*assessable* penalties." *Supra* pp. 32-35.

    ***iii.*** The IRS claims (Br. 31) that construing § 6201(a) to refer to assessable penalties only, so that the government must sue to recover § 6038(b) penalties, renders superfluous other Code provisions expressly saying that penalties are recoverable in a civil action. Not so.

    Congress's decision to make express the default rule in several Code provisions doesn't change the default rule. As explained (at 26-29), in *McLaughlin*, the default rule was that judicial review of agency orders is available in enforcement actions, even though some statutory provisions expressly authorize such review. *See* 145 S. Ct. at 2014-17. The existence of

provisions expressly stating the default rule didn't mean another rule applied by default. The same is true here. By default, the government must sue to recover civil penalties, and other provisions stating that default rule expressly, *supra* pp. 25-30, just confirm that rule.

In reality, the superfluity concerns cut against the IRS. As explained (at 35-36, 43-44), reading § 6201(a)'s reference to "taxes" to include all penalties would make superfluous the language in many other provisions expressly "deeming penalties to be taxes for certain purposes." *Mukhi II*, 163 T.C. at 157. The IRS doesn't dispute that point. *See* Br. 31. Instead, the IRS asserts that "there is already a fair bit of repetition," because I.R.C. § 6665 says that penalties set forth in chapter 68 are assessable, and § 6671 says that penalties in subchapter B of chapter 68 are assessable — but they already *are* assessable because of § 6665. Br. 31. All that shows, however, is that Congress knew how to turn off § 2461(a)'s default rule by "specifying" when the Secretary has authority to assess penalties. And there are far more provisions expressly authorizing the Secretary to assess penalties, or at least expressly contemplating the Secretary's ability to do so, than provisions reiterating the default rule. *See supra* pp. 28-30. So Congress had to go out of its way more often than not to overcome the default recovery-by-civil-action rule.

*iv.* The IRS argues that § 6201(a) must authorize all penalties, including § 6038(b) penalties, because if it doesn't, then it likewise doesn't authorize the IRS to make "inquiries" and "determinations" necessary to deciding whether a taxpayer is liable for § 6038(b) penalties. Br. 20 (quoting I.R.C. § 6201(a)). The government draws that argument from the authorization and requirement in § 6201(a) to make "inquiries, determinations, and assessments." That purposive argument fails both because it puts the IRS's preferred policy above § 6201(a)'s text and context and because Treasury has sufficient authority in other provisions to gather the information it needs to enforce the § 6038(b) penalty.

Take the most obvious source of authority: 28 U.S.C. § 2461(a). Because the government may bring a civil action to collect civil penalties under § 2461(a), it necessarily can investigate whether a taxpayer failed to disclose a controlling interest in a foreign business and determine whether the taxpayer might have a reasonable cause defense, all before filing a lawsuit. *See infra* pp. 54-55. Those are necessary steps, both practically and ethically speaking, before suing. Section 7401 confirms that conclusion. It recognizes that the government may initiate a civil action to recover "any … penalty," but makes clear that the Secretary must first "authorize[] or sanction[] the

proceedings." I.R.C. § 7401. That authority necessarily means the Secretary can inquire and make determinations about the issues beforehand.

Beyond § 2461(a), I.R.C. § 7602(a) "provides the IRS with sufficient authority to carry out the necessary investigative activities needed to enforce section 6038," as the Tax Court explained in *Mukhi II*. 163 T.C. at 166. Section 7602 "is the centerpiece" of Congress's grant to the Secretary of "expansive information-gathering authority." *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984). It authorizes the Secretary to "examine" a taxpayer's "books, papers, records, or other data," issue summonses, and take live testimony "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining" a taxpayer's tax liability, "or collecting any such liability." I.R.C. § 7602(a).

Section 7602 gives the IRS sufficient authority to investigate § 6038(b) penalties. That's because a taxpayer's failure to report the information required by § 6038(a) could mean that the taxpayer's return is incorrect, and it could also affect the taxpayer's liability—for example, if the taxpayer failed to report income relating to a controlled foreign business that the United States would have taxed. Section 7602(a) thus could permit the Secretary to investigate a taxpayer's compliance with § 6038(a)'s reporting requirements.

The government is thus incorrect (Br. 24-26) that, under Mr. Safdieh's theory, § 7602(a)(1)'s reference to "any internal revenue tax," must also mean "penalties." The bottom line is that the government cannot distort § 6201(a)'s text to reach all penalties, because the statute says "assessable penalties."

### b. The IRS's statutory history argument lacks merit.

The IRS asserts that § 6201's statutory history shows that Congress intended § 6201(a) "to cover all penalties in the Code, regardless of their label." Br. 26; *see* Br. 26-30. According to the IRS, in 1954, Congress "broadened" the term "taxes" "to sweep in exactions that would not traditionally be thought of as taxes." Br. 27. Not so. As explained (at 36-38), the 1954 amendment confirms that Congress *narrowed* § 6201(a) to reach only *assessable* penalties, given that § 6201(a)'s predecessor granted the IRS authority to assess "all taxes and penalties."

### c. Legislative history doesn't help the IRS.

Falling back on legislative history, the IRS notes that congressional reports accompanying the 1954 Tax Code "noted only 'two material changes from existing law' in Section 6201"—neither of which involved narrowing the Secretary's assessment authority. Br. 28-29 (citing H.R. Rep. No. 83-1337, at A404 (1954); S. Rep. No. 83-1622, at 572 (1954)). The IRS claims those

limited remarks show that Congress didn't narrow the Secretary's assessment authority in 1954. That contention fails.

For one thing, "legislative history is not the law." *Epic Systems*, 584 U.S. at 523. Whatever some committee members or their staffers thought about the 1954 Tax Code, it doesn't change the plain text of § 6201(a), which makes clear that there are both "assessable penalties" in the Tax Code, and non-assessable penalties, and that § 6201(a) applies only to the narrower category of "assessable penalties." *Supra* pp. 36-38. "[N]o amount of guesswork about the purposes behind legislation can displace what" § 6201(a)'s and 28 U.S.C. § 2461(a)'s "terms clearly direct." *Martin v. United States*, 145 S. Ct. 1689, 1699-1700 (2025); *see Mukhi II*, 163 T.C. at 158-60.

The decisions the IRS cites (Br. 29)—*United States v. Foster Lumber Co.*, 429 U.S. 32, 46 (1976), and *United States v. Basye*, 410 U.S. 441, 453 (1973)—don't suggest otherwise. *Foster Lumber* didn't rely on legislative history to override statutory text, as the IRS asks the Court to do here. Instead, the Supreme Court found that legislative history was not inconsistent with the correct interpretation of the statutory term "taxable income." 429 U.S. at 36-37, 45-46. Nor did the Court use legislative history to override statutory text in *Basye*. The Court merely observed in a footnote that there was no evidence

- 50 -

in the legislative history that, by removing a phrase in one provision in 1954, Congress intended "any substantive change." 410 U.S. at 453 n.14.

For another thing, even taken on their terms, the House and Senate Reports mentioning two material changes unrelated to assessment aren't proof of the meaning of § 6201(a) anyway. They do not support a negative inference that Congress *wasn't* trying to narrow the Secretary's assessment authority. Indeed, the IRS seeks "to divine messages from congressional commentary directed to different questions altogether"—neither having to do with the IRS's penalty assessment authority. *Epic Systems*, 584 U.S. at 523. Beyond the fact that Congress votes on laws, not committee reports, the IRS's efforts to find interpretive clues where none exist would impermissibly substitute the IRS's and the Court's judgment for Congress's. *See id.*

### d. The IRS's claims about administrative practice are unconvincing.

The IRS insists (Br. 32-33), that because there are few decisions invoking 28 U.S.C. § 2461(a), it is unlikely that Congress intended the government to use that provision to recover § 6038(b) penalties, and Congress must have intended § 6201(a) to apply instead. That contention suffers from the same flaw as many of the IRS's other arguments: it ignores § 6201(a)'s text, which

makes clear that the only kind of penalties it authorizes the Secretary to assess are "assessable penalties." It also ignores the plain text of 28 U.S.C. § 2461(a), which expressly provides the default rule: civil penalties "may be recovered in a civil action." Tallying up citing references to § 2461(a) cannot change the default rule that the provision's plain text provides. And if the government's point is that it has long considered § 6038(b) penalties (and perhaps others) assessable, and thus has filed no suits that could give rise to § 2461(a) citations in the caselaw, its argument is completely circular. As explained below (at 61), an agency cannot acquire authority by adverse possession, and Congress did not ratify the IRS's practice.

> ### 2. Section 6038(b) doesn't authorize the Secretary to assess § 6038(b) penalties either, contrary to the D.C. Circuit's reasoning and the IRS's argument.

The IRS claims that even if § 6201(a) doesn't give the Secretary authority to assess § 6038(b) penalties, then in the alternative, as the D.C. Circuit held in *Farhy II*, that authority comes from § 6038(b) itself. The IRS's arguments and D.C. Circuit's reasoning, which fail to grapple with § 2461(a)'s express requirement that another provision "specify[]" an alternative to the default civil suit, lack merit.

### a. The IRS's textual and contextual arguments fail.

*i.* The IRS doesn't dispute that § 6038(b) contains no language authorizing the IRS to assess penalties. Instead, it says (Br. 35-37) that § 6038(b) need not contain language authorizing the IRS to assess penalties, because other provisions outside of chapter 68—namely, I.R.C. §§ 45(b)(7)(B)(i)(II) and 6038D(d), plus 48 and 179D—grant assessment authority without expressly saying so. But the language in those provisions makes clear that penalties are assessable and thus proves that § 6038(b), which contains no such language, does *not* grant the IRS penalty-assessment authority:

- Section 45(b)(7)(B)(i)(II) imposes a penalty that the taxpayer "pay[s] to the Secretary." And § 45(b)(7)(B)(ii) expressly contemplates that the IRS will assess the penalty: it says that deficiency procedures "shall not apply with respect to the *assessment* or collection of any penalty imposed by this paragraph." I.R.C. § 45(b)(7)(B)(ii) (emphasis added).

- Sections 48 and 179D simply cross-reference § 45(b)(7)(B), making clear that they are assessable, too. *See* I.R.C. §§ 48(a)(10)(B), 179D(b)(4)(B).

- Section 6038D likewise expressly contemplates assessment by providing for a calculation that applies "for purposes of assessing the penalties imposed under this section." I.R.C. § 6038D(e).

*ii.* The IRS argues (Br. 32, 40) and the D.C. Circuit concluded that because § 6038 allows taxpayers to "show[] to the satisfaction of the

Secretary" that "reasonable cause existed for failure to furnish" the required information, the Secretary should have authority to assess the penalties. *Farhy II*, 100 F.4th at 233-34. If a federal court adjudicates the government's claim for § 6038(b) penalties, the D.C. Circuit reasoned, then the Secretary won't have had an opportunity to determine whether the taxpayer showed there was reasonable cause for the filing failure. *Id.* at 233.

That argument fails for the same reason that the argument that the government lacks investigative authority fails, as discussed above (at 47-49). As the Tax Court recognized in *Mukhi II*, the Secretary can determine whether a taxpayer has shown reasonable cause for the reporting failure *before* referring the case to the Department of Justice to file a civil action. 163 T.C. at 165-67. The authority to bring a civil action isn't a requirement to blindly sue without investigation or a command not to engage with the other side. Instead, before filing the complaint, the government can give the taxpayer an opportunity to explain whether she had reasonable cause for the failure. If the explanation isn't "to the satisfaction of the Secretary," I.R.C. § 6038(c)(4)(B), the government can sue. As the Tax Court explained in *Mukhi II*, "[t]here is nothing in the statute's text that demands that the IRS make the reasonable cause determination after assessment of the penalty." 163 T.C. at

167. And given the presumption of judicial review of agency action, *supra* pp. 26-27, there is also nothing unusual about a federal court's reviewing the Secretary's reasonable cause determination, *see* 163 T.C. at 167 n.8.

> **b.** **The IRS's and D.C. Circuit's concerns about the practical difficulties of coordinating the § 6038(b) and (c) penalties are unpersuasive.**

Echoing the D.C. Circuit's concerns in *Farhy II*, 100 F.4th at 231-34, the IRS next claims (Br. 22, 39-40) that § 6038(b) must grant the Secretary penalty-assessment authority given the coordination between the two different penalties under § 6038(b) and (c). *See supra* pp. 14, 24. The IRS and the D.C. Circuit point to the supposed practical difficulties of imposing § 6038(c) penalties while suing to recover § 6038(b) penalties, plus § 6038's legislative history. The IRS's arguments and the D.C. Circuit's reasoning lack merit.

*i.* The IRS says, and the D.C. Circuit concluded, that it would be burdensome and nonsensical for penalties under subsection (b) and (c) to be reviewed in two different forums, so both should be assessable. Otherwise, the D.C. Circuit reasoned, the Secretary would have to sue to recover § 6038(b) penalties and wait for the lawsuit to end before coordinating the subsection (b) and (c) penalties. 100 F.4th at 232. Those arguments fail.

For starters, § 2461(a)'s plain text makes clear that if § 6038(b) doesn't specify an assessment mechanism, then the government must sue, and neither the IRS nor the Court can rewrite § 2461(a) or § 6038(b) in the interest of making it easier to for the IRS to collect penalties. "[P]leas of administrative inconvenience … never 'justify departing from the statute's clear text.'" *Niz-Chavez v. Garland*, 593 U.S. 155, 169 (2021). "[N]o matter the administrative burden on the IRS," the Court must "follow the plain text of the statute." *Mukhi II*, 163 T.C. at 168. And that makes sense. Congress's decisions about how penalties should be enforced—like its decisions about how statutory rights should be enforced—"pose[] delicate questions of public policy" "that, under our system of government, only Congress may answer." *Medina*, 145 S. Ct. at 2229, 2239. "The job of resolving how best to weigh [the] competing costs and benefits" associated with different enforcement mechanisms "belongs to the people's elected representatives," and judges must "apply[] the law as they find it." *Id.* at 2229-30.

What's more, the IRS's complaint about the supposed burdens associated with suing to recover § 6038(b) penalties fails on its own terms anyway. There are several reasons:

- The § 6038(c) foreign tax credit reduction penalty applies only if a taxpayer is subject to penalties under § 6038(b) for failing to report an interest in a foreign business *and* the taxpayer claims a foreign tax credit. *See supra* pp. 14-15. Thus, there are likely situations where § 6038(c) does not apply even if a taxpayer is subject to § 6038(b) penalties, because the taxpayer might not claim foreign tax credits to begin with.

- In addition, as the Tax Court observed in *Mukhi II*, "[i]t appears that the Commissioner rarely asserts" the § 6038(c) foreign tax credit reduction. 163 T.C. at 168. "The limited use" of the § 6038(c) credit reduction undermines the IRS's policy-oriented complaints about alleged burdens of suing to recover § 6038(b) penalties while proceeding administratively to impose § 6038(c) penalties. *Id.* at 169.

- Further, if Congress was concerned about coordinating the § 6038(b) penalty, which the IRS claims is immediately assessable, with the § 6038(c) credit reduction, which the IRS concedes is subject to Tax Court deficiency proceedings (Br. 41), then the IRS's argument still fails. Under the IRS's view, it still would be impossible to coordinate the penalties in one forum because taxpayers cannot contest assessable penalties in Tax Court deficiency proceedings. *See Chai*, 851 F.3d at 202. The risk of multiple judicial proceedings would thus still exist.

- Finally, it is not unusual for an agency to pursue remedies for statutory violations in two different tracks—one in federal court and one through administrative processes. The Consumer Financial Protection Bureau, for example, has statutory authority to adjudicate certain penalties administratively, and it can sue to recover civil penalties. *See* 12 U.S.C. §§ 5563, 5564, 5565(c). Similarly, the Environmental Protection Agency is authorized to pursue "administrative penalties," 33 U.S.C. § 1319(g), and "civil actions," *id.* § 1319(b), against regulated parties. There is thus no reason to assume, as the D.C. Circuit did, that Congress must have wanted § 6038(b)'s penalties and § 6038(c)'s credit

reduction to "be imposed at the same time" and in the same administrative forum. *Farhy II*, 100 F.4th at 232.

*ii.* The IRS also repeats the D.C. Circuit's concern about "collateral estoppel" concerns and "inconsistent doctrinal development" arising from parallel § 6038(b) and § 6038(c) proceedings. Br. 42 (quoting *Farhy II*, 100 F.4th at 234). That argument is unpersuasive:

- Such concerns are unlikely to arise frequently, given how rarely the IRS asserts § 6038(c) credit reductions. *Supra* p. 57.

- Courts are well-equipped to "apply the long-developed doctrines of claim and issue preclusion" when they do confront such issues. *Mukhi II*, 163 T.C. at 169.

- The concern of "inconsistent doctrinal development" makes little sense given that both paths—a civil action under § 6038(b) and Tax Court review—lead to the same court of appeals. *See* I.R.C. § 7482(b)(1) (venue in appeals from Tax Court decisions); 28 U.S.C. § 1391(b) (venue in federal district court).

- Similarly, it is not unusual for related issues to be reviewed in Tax Court or district court, or sometimes in both courts, both with appeal to the same court of appeals. A deficiency suit will go to Tax Court while a refund suit will go to district court. *See supra* pp. 12-13; I.R.C. § 7421(a); *see Zuch*, 145 S. Ct. at 1710. And sometimes, even after raising issues in administrative proceedings and in the Tax Court, a taxpayer must raise those same issues in a refund suit in federal court. *See Zuch*, 145 S. Ct. at 1714.

The fatal flaw in the D.C. Circuit's and IRS's reasoning is that they substituted their judgment for Congress's, which is clearly reflected in the text of § 2461(a) and § 6038(b). No matter whether coordinating separate

- 58 -

§ 6038(b) and (c) proceedings is a good idea, Congress wrote the statutes it wrote. Subsections (b) and (c) are "creatures of Congress's own creation"; "[h]ow they relate to each other is up to Congress, and the best evidence of Congress's intent is the statutory text." *NFIB*, 567 U.S. at 544.

   ***iii.*** Finally, the IRS contends that legislative history shows that Congress enacted § 6038(b) as an efficient collection mechanism because the foreign tax-credit reduction penalty was "complicated." Br. 5, 40-43; *see* Br. 42 (citing *Farhy II*, 100 F.4th at 231-32). But again, "legislative history is not the law." *Epic Systems*, 584 U.S. at 523. And nothing in the legislative history "states that the penalty is assessable or the manner in which the IRS can collect" § 6038(b) penalties anyway. *Mukhi II*, 163 T.C. at 164. That is a "particularly pronounced" absence given the discussions in the legislative history stating that "other penalties established by the same act" *are* assessable. *Id.* (citing S. Rep. No. 97-494 (Vol. I), at 267, 277). And the statement in the legislative history acknowledging that the foreign tax credit reduction penalty was "complicated" likely related to "the unpredictable effect of the penalty that could be too harsh or lenient depending on a taxpayer's foreign tax credit." *Id.* It wouldn't make sense for Congress to "resolve the 'unduly

harsh' section 6038(c) penalty by creating a penalty that is not subject to any pre-assessment judicial review." *Id.* at 164-65; *supra* pp. 15, 19-20.

### c. The IRS's purposive and administrability arguments lack merit.

The IRS also claims that § 6038(b) penalties must be assessable to efficiently serve § 6038's purpose of "allow[ing] the IRS to determine if taxpayers failed to report taxable income from foreign sources" and assess any additional taxes. Br. 21; *see* Br. 43. That argument fails because "no statute pursues any single 'purpos[e] at all costs.'" *Medina*, 145 S. Ct. at 2229. And, as discussed (at 55-59), the IRS's appeals to administrative convenience or good policy cannot overcome § 6038(b)'s text. The government must follow the law and sue to recover § 6038(b) penalties, even if that isn't the quickest and easiest way to take money from a taxpayer's pocket.

The IRS next asserts that "[i]t is reasonable to infer that … the IRS is expected to assess" § 6038(b) penalties because the IRS must notify a taxpayer of her reporting failure before imposing the continuation penalty, *see* I.R.C. § 6038(b)(2). Br. 32, 40. That argument makes no sense. The government can notify a taxpayer of a continuing violation whether or not it must sue to collect the related penalty. And the Court cannot "infer" that Congress

"expected" the IRS to wield its powerful assessment and collection authority given § 2461(a)'s command that a civil action is required absent another provision "specifying" otherwise. The IRS, like all administrative agencies, has "only those powers given to [it] by Congress." *West Virginia v. Environmental Protection Agency*, 597 U.S. 697, 723 (2022). And Congress did not grant the Secretary assessment authority for § 6038(b) penalties. *Supra* pp. 39-41.

### d. The IRS's ratification argument fails.

The IRS next argues that it has been assessing § 6038(b) penalties for 40 years, so Congress's amendments over the years must have ratified its assessment authority. That's wrong. Agencies cannot acquire authority by "adverse possession." *Rapanos*, 547 U.S. at 752. They thus cannot dictate a statute's meaning "by engaging in a consistent and unchallenged practice over a long period of time." *Career Colleges & Schools of Texas v. United States Department of Education*, 98 F.4th 220, 241 (5th Cir. 2024); *cf. Jarkesy*, 603 U.S. at 118; *Lucia v. Securities & Exchange Commission*, 585 U.S. 237, 241 (2018).

Congress speaks through statutory text. It didn't authorize assessment of § 6038(b) penalties, and its decision not to bar the IRS from assessing § 6038(b) penalties thus does not show that Congress silently *authorized* the practice. *See Career Colleges*, 98 F.4th at 241. To the contrary, Congress didn't

need to say anything given § 2461(a)'s default rule. And there is no evidence "that Congress was aware of the IRS's" view that the Secretary can assess § 6038(b) penalties—yet another reason a ratification inference makes no sense. *Mukhi II*, 163 T.C. at 171.

### 3. The IRS's and the D.C. Circuit's absurdity and policy arguments cannot overcome text and context and are unconvincing anyway.

The IRS advances (and the D.C. Circuit offered) several reasons why it would supposedly be absurd, or bad policy, if the Secretary lacked authority to assess § 6038(b) penalties. But policy choices are "for Congress, not [the courts], to resolve," *Soto v. United States*, 145 S. Ct. 1677, 1689 (2025), as discussed (at 56), and absurdity plays a role only in the "rare and exceptional circumstance[]" where applying the plain language would be "so gross as to shock the general moral or common sense," *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930). The IRS's arguments and D.C. Circuit's reasoning don't come close to meeting that standard.

Take the IRS's argument that it would be "highly anomalous" for Congress to have created a penalty without any "express statutory instruction for other enforcement." Br. 22-23. But as the Supreme Court recently made

clear in *McLaughlin*, the point of default rules is to kick in where other provisions provide no other rule, and that's exactly what § 2461(a) does here.

Nor can the government show that it would be "absurd" to require a civil action to recover § 6038(b) penalties when the penalty for failure to report a foreign trust, I.R.C. § 6048, is assessable. Br. 34. Congress may have believed that foreign trusts are more easily abused and thus imposed a more robust penalty-collection mechanism. *See Transactions With Foreign Trusts and Information Reporting on Transactions With Foreign Trusts and Large Foreign Gifts*, 89 Fed. Reg. 39,440, 39,440-41 (May 8, 2024). In any event, Congress dealt separately with reporting for foreign businesses (in § 6038) and foreign trusts (in § 6048), and the government's desire to treat all that reporting the same way doesn't make Congress's approach absurd.

Further, the D.C. Circuit reasoned that § 6038(b) penalties must be assessable, because it wouldn't be worth it for the government to sue to recover a $10,000 penalty. *Farhy II*, 100 F.4th at 232. The IRS wisely doesn't appear to endorse that argument here. As discussed, policy questions are for Congress, not the Court, to decide. But the argument fails on its own terms, too, as the Tax Court explained in *Mukhi II*, 163 T.C. at 173-75. Reporting failures across several years can result in penalties of more than $100,000, as in *Mukhi II*,

especially when the penalty for a given year can reach up to $50,000 for a continuing violation. *See* 163 T.C. at 173 & n.11; I.R.C. § 6038(b)(2).

Finally, the government collects other comparable penalties through civil actions, and there's no reason it would not do the same here. *Mukhi II*, 163 T.C. at 173-74. For example, taxpayers must submit annual reports disclosing interests in foreign bank accounts, securities, or other financial accounts. *See* 31 U.S.C. § 5314(a). A reporting failure sometimes subjects the taxpayer to a civil penalty of up to $10,000. *See id.* § 5321(a)(5)(B)(i). Although the Secretary may assess the penalty, *see id.* § 5321(b), the Department of Justice generally collects it by suing in district court. *Mukhi II*, 163 T.C. at 173. There is thus "no reason to believe" that the Department of Justice would treat its collection responsibility for the § 6038(b)(1) penalty any differently.

Beyond all that, requiring the government to sue for penalties under § 6038(b) makes good sense and protects taxpayers from IRS overreach—further underscoring that the IRS and the courts must respect Congress's policy choice. In the vast majority of cases, the IRS automatically and systematically assesses the penalty, with notice to taxpayers only after the fact. *Id.* at 174 (citing Taxpayer Advocate Service, National Taxpayer Advocate Annual Report to Congress 124-26 (2020)). "A large portion" of those

systematically assessed penalties are then abated—suggesting they never should have been assessed in the first place. *Id.* But by then, taxpayers already have been under the threat of the IRS's severe lien and levy powers. *See supra* pp. 9-10. Requiring the IRS to refer cases to the Department of Justice will require the government "to exercise more individualized and thorough judgment before asserting the penalty"—good policy, not an absurd burden. *Mukhi II*, 163 T.C. at 174.

## CONCLUSION

The Court should affirm the Tax Court's grant of summary judgment for Mr. Safdieh.

Dated: July 24, 2025                    Respectfully submitted,

                                        /s/ Parker Rider-Longmaid

                                        Parker Rider-Longmaid
                                          *Counsel of Record*
                                        Shay Dvoretzky
                                        Armando Gomez
                                        Sylvia Tsakos
                                        Eman Cuyler
                                        SKADDEN, ARPS, SLATE,
                                          MEAGHER & FLOM LLP
Sherry M. Tanious                       1440 New York Ave., NW
SKADDEN, ARPS, SLATE,                   Washington, DC 20005
  MEAGHER & FLOM LLP                    Telephone: 202-371-7000
One Manhattan West                      parker.rider-longmaid@skadden.com
New York, NY 10001

        *Counsel for Petitioner-Appellee Joseph Safdieh*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because, as calculated by Microsoft Word, it contains 13,988 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: July 24, 2025

Respectfully submitted,

*/s/ Parker Rider-Longmaid*
Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Petitioner-Appellee*
 *Joseph Safdieh*

- 67 -

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated: July 24, 2025    Respectfully submitted,

          */s/ Parker Rider-Longmaid*
          Parker Rider-Longmaid
          SKADDEN, ARPS, SLATE,
           MEAGHER & FLOM LLP
          1440 New York Ave., NW
          Washington, DC 20005
          202-371-7000
          parker.rider-longmaid@skadden.com

          *Counsel for Petitioner-Appellee*
           *Joseph Safdieh*



[This page intentionally left blank.]

# INDEX OF ADDENDUM

Page

28 U.S.C. § 2461(a) ........................................................................Add.1

I.R.C. § 6038 ..................................................................................Add.1

I.R.C. § 6201 ................................................................................Add.12

I.R.C. § 7401 ................................................................................Add.16

I.R.C. § 527(j)(1) ..........................................................................Add.16

I.R.C. § 856(g)(5)(C) ....................................................................Add.17

I.R.C. § 857(f)(1), (2) ...................................................................Add.18

I.R.C. § 1275(c)(4) ........................................................................Add.19

I.R.C. § 4980H(a), (b), (c)(2)(D), (d) ..........................................Add.20

I.R.C. § 5000A(g) .........................................................................Add.24

I.R.C. § 5114(c) ............................................................................Add.25

I.R.C. § 5684 ................................................................................Add.27

I.R.C. § 5761(a), (e) .....................................................................Add.28

I.R.C. § 6033(o) ...........................................................................Add.29

I.R.C. § 6043(d) ...........................................................................Add.29

I.R.C. § 6046(f) ............................................................................Add.30

I.R.C. § 6046A(e) .........................................................................Add.30

I.R.C. § 6420(i)(2) ........................................................................Add.30

I.R.C. § 6421(j)(1) ........................................................................Add.31

I.R.C. § 6665 ................................................................................Add.31

I.R.C. § 6671(a) ............................................................................Add.32

I.R.C. § 7501 ................................................................................Add.32

I.R.C. § 9707(f) ............................................................................Add.33

## ADDENDUM

### 28 U.S.C. § 2461(a). Mode of Recovery

(a) Whenever a civil fine, penalty or pecuniary forfeiture is prescribed for the violation of an Act of Congress without specifying the mode of recovery or enforcement thereof, it may be recovered in a civil action.

### I.R.C. § 6038. Information reporting with respect to certain foreign corporations and partnerships

**(a) Requirement**

**(1) In general**

Every United States person shall furnish, with respect to any foreign business entity which such person controls, such information as the Secretary may prescribe relating to—

(A) the name, the principal place of business, and the nature of business of such entity, and the country under whose laws such entity is incorporated (or organized in the case of a partnership);

(B) in the case of a foreign corporation, its post-1986 undistributed earnings (as defined in section 902(c));

(C) a balance sheet for such entity listing assets, liabilities, and capital;

(D) transactions between such entity and —

(i) such person,

(ii) any corporation or partnership which such person controls, and

(iii) any United States person owning, at the time the transaction takes place —

(I) in the case of a foreign corporation, 10 percent or more of the value of any class of stock outstanding of such corporation, and

(II) in the case of a foreign partnership, at least a 10-percent interest in such partnership; and

(E)(i) in the case of a foreign corporation, a description of the various classes of stock outstanding, and a list showing the name and address of, and number of shares held by, each United States person who is a shareholder of record owning at any time during the annual accounting period 5 percent or more in value of any class of stock outstanding of such foreign corporation, and

(ii) information comparable to the information described in clause (i) in the case of a foreign partnership.

The Secretary may also require the furnishing of any other information which is similar or related in nature to that specified in the preceding sentence or which the Secretary determines to be appropriate to carry out the provisions of this title.

**(2) Period for which information is to be furnished, etc.**

The information required under paragraph (1) shall be furnished for the annual accounting period of the foreign business entity ending with or within the United States person's taxable year. The information so required shall be furnished at such time and in such manner as the Secretary shall prescribe.

**(3) Limitation**

No information shall be required to be furnished under this subsection with respect to any foreign business entity for any annual accounting period unless the Secretary has prescribed the furnishing of such information on or before the first day of such annual accounting period.

**(4) Information required from certain shareholders in certain cases**

If any foreign corporation is treated as a controlled foreign corporation for any purpose under subpart F of part III of subchapter N of chapter 1, the Secretary may require any United States person treated as a United States shareholder of such corporation for any purpose under subpart F to furnish the information required under paragraph (1).

**(5) Information required from 10-percent partner of controlled foreign partnership**

In the case of a foreign partnership which is controlled by United States persons holding at least 10-percent interests (but not by any one United States person), the Secretary may require each United States person who holds a 10-percent interest in such partnership to furnish information relating to such partnership, including information relating to such partner's ownership interests in the partnership and allocations to such partner of partnership items.

**(b) Dollar penalty for failure to furnish information**

**(1) In general**

If any person fails to furnish, within the time prescribed under paragraph (2) of subsection (a), any information with respect to any foreign business entity required under paragraph (1) of subsection (a),

such person shall pay a penalty of $10,000 for each annual accounting period with respect to which such failure exists.

**(2) Increase in penalty where failure continues after notification**

If any failure described in paragraph (1) continues for more than 90 days after the day on which the Secretary mails notice of such failure to the United States person, such person shall pay a penalty (in addition to the amount required under paragraph (1)) of $10,000 for each 30-day period (or fraction thereof) during which such failure continues with respect to any annual accounting period after the expiration of such 90-day period. The increase in any penalty under this paragraph shall not exceed $50,000.

**(c) Penalty of reducing foreign tax credit**

**(1) In general**

If a United States person fails to furnish, within the time prescribed under paragraph (2) of subsection (a), any information with respect to any foreign business entity required under paragraph (1) of subsection (a), then—

(A) in applying section 901 (relating to taxes of foreign countries and possessions of the United States) to such United

States person for the taxable year, the amount of taxes (other than taxes reduced under subparagraph (B)) paid or deemed paid (other than those deemed paid under section 904(c)) to any foreign country or possession of the United States for the taxable year shall be reduced by 10 percent, and

(B) in the case of a foreign business entity which is a foreign corporation, in applying section 960 to any such United States person which is a corporation (or to any person who acquires from any other person any portion of the interest of such other person in any such foreign corporation, but only to the extent of such portion) for any taxable year, the amount of taxes paid or deemed paid by each foreign corporation with respect to which such person is required to furnish information during the annual accounting period or periods with respect to which such information is required under paragraph (2) of subsection (a) shall be reduced by 10 percent.

If such failure continues 90 days or more after notice of such failure by the Secretary to the United States person, then the amount of the reduction under this paragraph shall be 10 percent plus an additional 5

percent for each 3- month period, or fraction thereof, during which such failure to furnish information continues after the expiration of such 90-day period.

**(2) Limitation**

The amount of the reduction under paragraph (1) for each failure to furnish information with respect to a foreign business entity required under subsection (a)(1) shall not exceed whichever of the following amounts is the greater:

(A) $10,000, or

(B) the income of the foreign business entity for its annual accounting period with respect to which the failure occurs.

**(3) Coordination with subsection (b)**

The amount of the reduction which (but for this paragraph) would be made under paragraph (1) with respect to any annual accounting period shall be reduced by the amount of the penalty imposed by subsection (b) with respect to such period.

**(4) Special rules**

(A) No taxes shall be reduced under this subsection more than once for the same failure.

(B) For purposes of this subsection and subsection (b), the time prescribed under paragraph (2) of subsection (a) to furnish information (and the beginning of the 90-day period after notice by the Secretary) shall be treated as being not earlier than the last day on which (as shown to the satisfaction of the Secretary) reasonable cause existed for failure to furnish such information.

**(d) Two or more persons required to furnish information with respect to same foreign corporation**

Where, but for this subsection, two or more United States persons would be required to furnish information under subsection (a) with respect to the same foreign business entity for the same period, the Secretary may by regulations provide that such information shall be required only from one person. To the extent practicable, the determination of which person shall furnish the information shall be made on the basis of actual ownership of stock.

**(e) Definitions**

For purposes of this section—

**(1) Foreign business entity**

The term "foreign business entity" means a foreign corporation and a foreign partnership.

### (2) Control of corporation

A person is in control of a corporation if such person owns stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote, or more than 50 percent of the total value of shares of all classes of stock, of a corporation. If a person is in control (within the meaning of the preceding sentence) of a corporation which in turn owns more than 50 percent of the total combined voting power of all classes of stock entitled to vote of another corporation, or owns more than 50 percent of the total value of the shares of all classes of stock of another corporation, then such person shall be treated as in control of such other corporation. For purposes of this paragraph, the rules prescribed by section 318(a) for determining ownership of stock shall apply; except that—

(A) subparagraphs (A), (B), and (C) of section 318(a)(3) shall not be applied so as to consider a United States person as owning stock which is owned by a person who is not a United States person, and

  (B) in applying subparagraph (C) of section 318(a)(2), the phrase "10 percent" shall be substituted for the phrase "50 percent" used in subparagraph (C).

### (3) Partnership-related definitions

#### (A) Control

  A person is in control of a partnership if such person owns directly or indirectly more than a 50 percent interest in such partnership.

#### (B) 50-percent interest

  For purposes of subparagraph (A), a 50-percent interest in a partnership is—

    (i) an interest equal to 50 percent of the capital interest, or 50 percent of the profits interest, in such partnership, or

    (ii) to the extent provided in regulations, an interest to which 50 percent of the deductions or losses of such partnership are allocated.

For purposes of the preceding sentence, rules similar to the rules of section 267(c) (other than paragraph (3)) shall apply.

- Add.10 -

### (C) 10-percent interest

A 10-percent interest in a partnership is an interest which would be described in subparagraph (B) if "10 percent" were substituted for "50 percent" each place it appears.

### (4) Annual accounting period

The annual accounting period of a foreign business entity is the annual period on the basis of which such foreign business entity regularly computes its income in keeping its books. In the case of a specified foreign business entity (as defined in section 898), the taxable year of such foreign business entity shall be treated as its annual accounting period.

## (f) Cross references

**(1) For provisions relating to penalties for violations of this section, see section 7203.**

**(2) For definition of the term "United States person", see section 7701(a)(30).**

**I.R.C. § 6201. Assessment authority**

**(a) Authority of Secretary**

The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, which have not been duly paid by stamp at the time and in the manner provided by law. Such authority shall extend to and include the following:

**(1) Taxes shown on return**

The Secretary shall assess all taxes determined by the taxpayer or by the Secretary as to which returns or lists (or payments under section 6225(c)(2)(B)(i)) are made under this title.

**(2) Unpaid taxes payable by stamp**

**(A) Omitted stamps**

Whenever any article upon which a tax is required to be paid by means of a stamp is sold or removed for sale or use by the manufacturer thereof or whenever any transaction or act upon which a tax is required to be paid by means of a stamp occurs without the use of the proper stamp, it shall be the duty of

the Secretary, upon such information as he can obtain, to estimate the amount of tax which has been omitted to be paid and to make assessment therefor upon the person or persons the Secretary determines to be liable for such tax.

**(B) Check or money order not duly paid**

In any case in which a check or money order received under authority of section 6311 as payment for stamps is not duly paid, the unpaid amount may be immediately assessed as if it were a tax imposed by this title, due at the time of such receipt, from the person who tendered such check or money order.

**(3) Erroneous income tax prepayment credits**

If on any return or claim for refund of income taxes under subtitle A there is an overstatement of the credit for income tax withheld at the source, or of the amount paid as estimated income tax, the amount so overstated which is allowed against the tax shown on the return or which is allowed as a credit or refund may be assessed by the Secretary in the same manner as in the case of a mathematical or clerical error appearing upon the return, except that the provisions of section 6213(b)(2) (relating to abatement of mathematical or clerical error

assessments) shall not apply with regard to any assessment under this paragraph.

**(4) Certain orders of criminal restitution**

    **(A) In general**

        The Secretary shall assess and collect the amount of restitution under an order pursuant to section 3556 of title 18, United States Code, for failure to pay any tax imposed under this title in the same manner as if such amount were such tax.

    **(B) Time of assessment**

        An assessment of an amount of restitution under an order described in subparagraph (A) shall not be made before all appeals of such order are concluded and the right to make all such appeals has expired.

    **(C) Restriction on challenge of assessment**

        The amount of such restitution may not be challenged by the person against whom assessed on the basis of the existence or amount of the underlying tax liability in any proceeding authorized under this title (including in any suit or proceeding in court permitted under section 7422).

**(b) Amount not to be assessed**

**(1) Estimated income tax**

No unpaid amount of estimated income tax required to be paid under section 6654 or 6655 shall be assessed.

**(2) Federal unemployment tax**

No unpaid amount of Federal unemployment tax for any calendar quarter or other period of a calendar year, computed as provided in section 6157, shall be assessed.

**(c) Compensation of child**

Any income tax under chapter 1 assessed against a child, to the extent attributable to amounts includible in the gross income of the child, and not of the parent, solely by reason of section 73(a), shall, if not paid by the child, for all purposes be considered as having also been properly assessed against the parent.

**(d) Required reasonable verification of information returns**

In any court proceeding, if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed with the Secretary under subpart B or C of part III of subchapter A of chapter 61 by a third party and the taxpayer has fully cooperated with the Secretary

(including providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), the Secretary shall have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return.

**(e) Deficiency proceedings**

**For special rules applicable to deficiencies of income, estate, gift, and certain excise taxes, see subchapter B.**

## I.R.C. § 7401. Authorization

No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.

## I.R.C. § 527(j)(1). Political organizations

**(j) Required disclosure of expenditures and contributions**

**(1) Penalty for failure**

In the case of —

(A) a failure to make the required disclosures under paragraph (2) at the time and in the manner prescribed therefor, or

(B) a failure to include any of the information required to be shown by such disclosures or to show the correct information,

there shall be paid by the organization an amount equal to the rate of tax specified in subsection (b)(1) multiplied by the amount to which the failure relates. For purposes of subtitle F, the amount imposed by this paragraph shall be assessed and collected in the same manner as penalties imposed by section 6652(c).

**I.R.C. § 856(g)(5)(C). Definition of real estate investment trust**

**(g) Termination of election**

**(5) Entities to which paragraph applies**

This paragraph applies to a corporation, trust, or association—

(C) if such corporation, trust, or association pays (as prescribed by the Secretary in regulations and in the same manner as tax) a penalty of $50,000 for each failure to satisfy a provision of this part due to reasonable cause and not willful neglect.

**I.R.C. § 857(f)(1), (2). Taxation of real estate investment trusts and their beneficiaries**

**(f) Real estate investment trusts to ascertain ownership**

**(1) In general**

Each real estate investment trust shall each taxable year comply with regulations prescribed by the Secretary for the purposes of ascertaining the actual ownership of the outstanding shares, or certificates of beneficial interest, of such trust.

**(2) Failure to comply**

**(A) In general**

If a real estate investment trust fails to comply with the requirements of paragraph (1) for a taxable year, such trust shall pay (on notice and demand by the Secretary and in the same manner as tax) a penalty of $25,000.

**(B) Intentional disregard**

If any failure under paragraph (1) is due to intentional disregard of the requirement under paragraph (1), the penalty under subparagraph (A) shall be $50,000.

### (C) Failure to comply after notice

The Secretary may require a real estate investment trust to take such actions as the Secretary determines appropriate to ascertain actual ownership if the trust fails to meet the requirements of paragraph (1). If the trust fails to take such actions, the trust shall pay (on notice and demand by the Secretary and in the same manner as tax) an additional penalty equal to the penalty determined under subparagraph (A) or (B), whichever is applicable.

### (D) Reasonable cause

No penalty shall be imposed under this paragraph with respect to any failure if it is shown that such failure is due to reasonable cause and not to willful neglect.

### I.R.C. § 1275(c)(4). Other definitions and special rules

### (c) Information requirements

### (4) Cross reference

For civil penalty for failure to meet requirements of this subsection, see section 6706.

**I.R.C. § 4980H(a), (b), (c)(2)(D), (d). Shared responsibility for employers regarding health coverage**

**(a) Large employers not offering health coverage**

If —

(1) any applicable large employer fails to offer to its full-time employees (and their dependents) the opportunity to enroll in minimum essential coverage under an eligible employer-sponsored plan (as defined in section 5000A(f)(2)) for any month, and

(2) at least one full-time employee of the applicable large employer has been certified to the employer under section 1411 of the Patient Protection and Affordable Care Act as having enrolled for such month in a qualified health plan with respect to which an applicable premium tax credit or cost-sharing reduction is allowed or paid with respect to the employee,

then there is hereby imposed on the employer an assessable payment equal to the product of the applicable payment amount and the number of individuals employed by the employer as fulltime employees during such month.

**(b) Large employers offering coverage with employees who qualify for premium tax credits or cost-sharing reductions**
    **(1) In general**

If —

      (A) an applicable large employer offers to its full-time employees (and their dependents) the opportunity to enroll in minimum essential coverage under an eligible employer-sponsored plan (as defined in section 5000A(f)(2)) for any month, and

      (B) 1 or more full-time employees of the applicable large employer has been certified to the employer under section 1411 of the Patient Protection and Affordable Care Act as having enrolled for such month in a qualified health plan with respect to which an applicable premium tax credit or cost-sharing reduction is allowed or paid with respect to the employee,

then there is hereby imposed on the employer an assessable payment equal to the product of the number of full-time employees of the applicable large employer described in subparagraph (B) for such month and an amount equal to 1/12 of $3,000.

**(2) Overall limitation**

The aggregate amount of tax determined under paragraph (1) with respect to all employees of an applicable large employer for any month shall not exceed the product of the applicable payment amount and the number of individuals employed by the employer as fulltime employees during such month.

**(c) Definitions and special rules**

For purposes of this section—

**(2) Applicable large employer**

**(D) Application of employer size to assessable penalties**

**(i) In general**

The number of individuals employed by an applicable large employer as full-time employees during any month shall be reduced by 30 solely for purposes of calculating—

(I) the assessable payment under subsection (a), or

(II) the overall limitation under subsection (b)(2).

### (ii) Aggregation

In the case of persons treated as 1 employer under subparagraph (C)(i), only 1 reduction under subclause (I) or (II) 1 shall be allowed with respect to such persons and such reduction shall be allocated among such persons ratably on the basis of the number of full-time employees employed by each such person.

## (d) Administration and procedure

### (1) In general

Any assessable payment provided by this section shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as an assessable penalty under subchapter B of chapter 68.

### (2) Time for payment

The Secretary may provide for the payment of any assessable payment provided by this section on an annual, monthly, or other periodic basis as the Secretary may prescribe.

**(3) Coordination with credits, etc.**

The Secretary shall prescribe rules, regulations, or guidance for the repayment of any assessable payment (including interest) if such payment is based on the allowance or payment of an applicable premium tax credit or costsharing reduction with respect to an employee, such allowance or payment is subsequently disallowed, and the assessable payment would not have been required to be made but for such allowance or payment.

**I.R.C. § 5000A(g). Requirement to maintain minimum essential coverage**

**(g) Administration and procedure**

**(1) In general**

The penalty provided by this section shall be paid upon notice and demand by the Secretary, and except as provided in paragraph (2), shall be assessed and collected in the same manner as an assessable penalty under subchapter B of chapter 68.

**(2) Special rules**

Notwithstanding any other provision of law —

**(A) Waiver of criminal penalties**

In the case of any failure by a taxpayer to timely pay any penalty imposed by this section, such taxpayer shall not be subject to any criminal prosecution or penalty with respect to such failure.

**(B) Limitations on liens and levies**

The Secretary shall not—

(i) file notice of lien with respect to any property of a taxpayer by reason of any failure to pay the penalty imposed by this section, or

(ii) levy on any such property with respect to such failure.

**I.R.C. § 5114(c). Drawback**

**(c) Allowance of drawback even where certain requirements not met**

**(1) In general**

No claim for drawback under this section shall be denied in the case of a failure to comply with any requirement imposed under this subpart or any rule or regulation issued thereunder upon the

claimant's establishing to the satisfaction of the Secretary that distilled spirits on which the tax has been paid or determined were in fact used in the manufacture or production of medicines, medicinal preparations, food products, flavors, flavoring extracts, or perfume, which were unfit for beverage purposes.

**(2) Penalty**

### (A) In general

In the case of a failure to comply with any requirement imposed under this subpart or any rule or regulation issued thereunder, the claimant shall be liable for a penalty of $1,000 for each failure to comply unless it is shown that the failure to comply was due to reasonable cause.

### (B) Penalty may not exceed amount of claim

The aggregate amount of the penalties imposed under subparagraph (A) for failures described in paragraph (1) in respect of any claim shall not exceed the amount of such claim (determined without regard to subparagraph (A)).

**(3) Penalty treated as tax**

The penalty imposed by paragraph (2) shall be assessed, collected, and paid in the same manner as taxes, as provided in section 6665(a).

## I.R.C. § 5684. Penalties relating to the payment and collection of liquor taxes

**(a) Failure to pay tax**

Whoever fails to pay any tax imposed by part I of subchapter A at the time prescribed shall, in addition to any other penalty provided in this title, be liable to a penalty of 5 percent of the tax due but unpaid.

**(b) Applicability of section 6665**

The penalties imposed by subsection (a) shall be assessed, collected, and paid in the same manner as taxes, as provided in section 6665(a).

**(c) Cross references**

**(1) For provisions relating to interest in the case of taxes not paid when due, see section 6601.**

**(2) For penalty for failure to file tax return or pay tax, see section 6651.**

**(3) For additional penalties for failure to pay tax, see section 6653.**

**(4) For penalty for failure to make deposits or for overstatement of deposits, see section 6656.**

**(5) For penalty for attempt to evade or defeat any tax imposed by this title, see section 7201.**

**(6) For penalty for willful failure to file return, supply information, or pay tax, see section 7203.**

**I.R.C. § 5761(a), (e). Civil penalties**

**(a) Omitting things required or doing things forbidden**

Whoever willfully omits, neglects, or refuses to comply with any duty imposed upon him by this chapter, or to do, or cause to be done, any of the things required by this chapter, or does anything prohibited by this chapter, shall in addition to any other penalty provided in this title, be liable to a penalty of $1,000, to be recovered, with costs of suit, in a civil action, except where a penalty under subsection (b) or (c) or under section 6651 or 6653 or part II of subchapter A of chapter 68 may be collected from such person by assessment.

**(e) Applicability of section 6665**

The penalties imposed by subsections (b) and (c) shall be assessed, collected, and paid in the same manner as taxes, as provided in section 6665(a).

**I.R.C. § 6033 (*o*). Returns by exempt organizations**

**(*o*) Cross references**

For provisions relating to statements, etc., regarding exempt status of organizations, see section 6001.

For reporting requirements as to certain liquidations, dissolutions, terminations, and contractions, see section 6043(b). For provisions relating to penalties for failure to file a return required by this section, see section 6652(c).

For provisions relating to information required in connection with certain plans of deferred compensation, see section 6058.

**I.R.C. § 6043(d). Liquidating, etc., transactions**

**(d) Cross references**

For provisions relating to penalties for failure to file —

(1) a return under subsection (b), see section 6652(c), or

(2) a return under subsection (c), see section 6652(1).

**I.R.C. § 6046(f). Returns as to organization or reorganization of foreign corporations and as to acquisitions of their stock**

**(f) Cross reference**

For provisions relating to penalties for violations of this section, sections 6679 and 7203.

**I.R.C. § 6046A(e). Returns as to interests in foreign partnerships**

**(e) Cross reference**

For provisions relating to penalties for violations of this section, see sections 6679 and 7203.

**I.R.C. § 6420(i)(2). Gasoline used on farms**

**(i) Cross references**

**(2)** For civil penalty for excessive claim under this section, see section 6675.

- Add.30 -

### I.R.C. § 6421(j)(1). Gasoline used for certain nonhighway purposes, used by local transit systems, or sold for certain exempt purposes

**(j) Cross references**

> **(1) For civil penalty for excessive claims under this section, see section 6675.**

### I.R.C. § 6665. Applicable rules

**(a) Additions treated as tax**

Except as otherwise provided in this title—

(1) the additions to the tax, additional amounts, and penalties provided by this chapter shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes; and

(2) any reference in this title to "tax" imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter.

**(b) Procedure for assessing certain additions to tax**

For purposes of subchapter B of chapter 63 (relating to deficiency procedures for income, estate, gift, and certain excise taxes), subsection (a) shall not apply to any addition to tax under section 6651, 6654, or 6655; except that it shall apply—

(1) in the case of an addition described in section 6651, to that portion of such addition which is attributable to a deficiency in tax described in section 6211; or

(2) to an addition described in section 6654 or 6655, if no return is filed for the taxable year.

## I.R.C. § 6671(a). Rules for application of assessable penalties

**(a) Penalty assessed as tax**

The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes. Except as otherwise provided, any reference in this title to "tax" imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this subchapter.

## I.R.C. § 7501. Liability for taxes withheld or collected

**(a) General rule**

Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special

fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

**(b) Penalties**

**For penalties applicable to violations of this section, see sections 6672 and 7202.**

**I.R.C. § 9707(f). Failure to pay premium**

**(f) Treatment**

For purposes of this title, the penalty imposed by this section shall be treated in the same manner as the tax imposed by section 4980B.