# No. 25-501

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

JOSEPH SAFDIEH,

*Petitioner-Appellee*

v.

COMMISSIONER OF INTERNAL REVENUE

*Respondent-Appellant,*

United States Tax Court Docket No. 11680-20L (Hon. M. Holmes)

---

## BRIEF AMICUS CURIAE OF THE CENTER FOR TAXPAYER RIGHTS
## IN SUPPORT OF APPELLEE

---

Audrey Patten,
*Counsel for Amicus*
Director, Tax Litigation Clinic at
the Legal Services Center
of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130
(617) 384-0734
apatten@law.harvard.edu

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................ii

TABLE OF AUTHORITIES .......................................................iiv

STATEMENT OF THE PARTIES' CONSENT........................................ vi

CORPORATE DISCLOSURE STATEMENT .......................................... vii

INTEREST OF THE *AMICUS* ...................................................... 1

SUMMARY OF ARGUMENT .......................................................... 1

ARGUMENT ....................................................................... 3

I.   Per Tax Court Precedent, the Internal Revenue Code, and Statutory Principles of Interpretation, Section 6038(b) Penalties Are Not Subject to Assessment ................................................................ 3

   A.  The Tax Court Has Repeatedly Held That § 6038(b) Penalties Are Not Assessable........................................................... 5

   B.  The Internal Revenue Code Does Not Allow for Assessment of § 6038(b) Penalties ..................................................... 6

     1.  28 U.S.C. § 2461(a) Requires That § 6038(b) Penalties be Collected by the Government Through a Civil Action ........................ 6

     2.  Section 6038(b) Penalties Do Not Fall Under the Scope of § 6201(a)................................................................. 10

       a.  Section 6038(b) Penalties Do Not Qualify as "Taxes" under § 6201(a) ............................................................ 10

       b.  Section 6038(b) Penalties Do Not Qualify as "Assessable Penalties" under § 6201(a) .......................................... 12

   C.  Section 6038(b) Is Unambiguous and No Relevant Legislative History Undermines that Reading ...................................... 14

II.  Summary Assessment of § 6038 Penalties Violates Taxpayer Rights 16

   A.  The IRS' Practice of Summarily Assessing § 6038(b) Penalties Disproportionately Harms Moderate and Low-Income Taxpayers for Whom the Fixed Amount of the Penalty is Disproportionate to the Underlying Tax ...................................................... 17

B.  Summary Assessment of § 6038(b) Penalties Results in High Abatement Rates ...................................................................... 19

C.  An Administrative Scheme is Unsuited to These Penalties Because It Lacks Safeguards ..................................................................... 22

D.  Summary Assessment of § 6038 Penalties Violates the Protections Afforded Taxpayers Under the Taxpayer Bill of Rights ........................ 25

CONCLUSION........................................................................................... 29

CERTIFICATE OF COMPLIANCE........................................................... 30

CERTIFICATE OF SERVICE .................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Farhy v. Comm'r*, 100 F.4th 223 (D.C. Cir. 2024)....................................5, 15

*Farhy v. Comm'r*, 160 T.C. 399 (2023)....................................................5, 7

*Flora v. United States*, 362 U.S. 145 (1960). ...............................................24

*Mukhi v. Comm'r*, 162 T.C. 177 (2024). ...................................................... 5

*Mukhi v. Comm'r*, 163 T.C. No. 8 (2024) (*en banc*)...... 5, 6, 7, 11, 13, 19, 22

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012). ..................... 11

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021)...............................................12

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022). ....................................16

*Pereira v. Sessions*, 138 S. Ct. 2105 (2018). ...............................................12

*U.S. v. Butler*, 297 U.S. 1 (1936)....................................................................11

*Williams v. Comm'r*, 131 T.C. 54 (2008) ....................................................19

## Statutes & Regulations

26 U.S.C. § 501(c)(3)....................................................................................... 1

26 U.S.C. § 6038.................................................................................*passim*

26 U.S.C. § 6038(b)..............................................................................*passim*

26 U.S.C. § 6038A...........................................................................3, 18, 20

26 U.S.C. § 6038D(d)...................................................................................... 8

26 U.S.C. § 6201(a)...........................................................................2, 10, 12

26 U.S.C. § 6330(c)(2)(B)..............................................................................23

26 U.S.C. § 7803(a)......................................................................................... 2

26 U.S.C. § 7803(a)(2)(A)..............................................................................17

26 U.S.C. § 7803(a)(3)....................................................................................25

26 U.S.C. § 7803(c)(1)(B). .............................................................................. 1

28 U.S.C. § 2461(a). .....................................................2, 5, 6, 7, 10, 14, 26

Fed. R. App. P. 26.1..................................................................................... viii

Fed. R. App. P. 29(a)(2)................................................................................. vii

Fed. R. App. P. 29(a)(4)(e). ............................................................................ 1

IRM 20.1.1.1.3(4), (Mar. 29, 2023)...............................................................27

IRM 20.1.1.2.1, (Mar. 29, 2023). ................................................................... 4

iv

**Other Authorities**

*Foreign Information Penalties: Provide Taxpayers Their Rights Before Assessment*, NAT'L TAXPAYER ADVOC. BLOG (May 21, 2024), https://www.taxpayeradvocate.irs.gov/news/nta-blog/foreign-information-penalties-provide-taxpayers-their-rights-before-assessment/2024/05/ 19, 24

Les Book and Michael Saltzman, *IRS Practice and Procedure*, Ch. 7B (June 2025) ................................................................................................ 13

Nat'l Taxpayer Advoc., 2020 Annual Report to Congress . 3, 4, 9, 12, 14, 20, 21

Nat'l Taxpayer Advoc., 2023 Annual Report to Congress ... 9, 17, 18, 20, 21, 23, 27

*Your Rights as a Taxpayer: The Taxpayer Bill of Rights*, IRS PUBLICATION 1 REV. 9-2017, https://www.irs.gov/pub/irs-pdf/p1.pdf (last visited July 25, 2025) ........................................................................................................ 26

## STATEMENT OF THE PARTIES' CONSENT

Pursuant to Federal Rule of Appellate Procedure 29(a)(2), *amicus curiae* the Center for Taxpayer Rights states that, through its counsel, it has consulted with both the Appellant and Appellee in this case and that both consent to the filing of this brief.

Date:  July 30, 2025

<u>*/s/ Audrey Patten*</u>
Audrey Patten

*Counsel for* Amicus Curiae

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* the Center for Taxpayer Rights states that it is a non-profit, tax-exempt organization incorporated in Virginia. The Center has no parent corporation, and no publicly held corporation holds a ten percent or greater ownership stake in the Center.

Date: July 30, 2025

*/s/ Audrey Patten*

Audrey Patten

*Counsel for* Amicus Curiae

## INTEREST OF THE *AMICUS*[1]

The Center for Taxpayer Rights ("the Center") is a § 501(c)(3)[2] non-profit corporation dedicated to furthering taxpayers' awareness of and access to taxpayer rights. The Center accomplishes its mission, in part, by educating the public and government officials about the role taxpayer rights play in promoting compliance and trust in systems of taxation. The Executive Director of the Center is Nina E. Olson, who, from 2001 through 2019, served as the Internal Revenue Service ("IRS") National Taxpayer Advocate, appointed under § 7803(c)(1)(B). The Center also operates a low-income taxpayer clinic, providing pro bono legal representation to low-income taxpayers in tax disputes with the IRS and before the courts.

## SUMMARY OF ARGUMENT

The Center for Taxpayer Rights, as *amicus curiae* supporting the Appellee, contends that § 6038(b) penalties imposed on United States taxpayers who fail to timely file information returns reporting foreign holdings are not subject to

---

[1] Pursuant to the Federal Rules of Appellate Procedure (FRAP) 29(a)(4)(E), this is to affirm that no party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code, Title 26.

1

assessment.  Rather *Amicus* supports the view of the Tax Court that prior caselaw, the plain language of the Internal Revenue Code, and statutory principles of interpretation make it clear that imposition of these penalties does not lie in the IRS' assessment power, but rather 28 U.S.C. § 2461(a)'s mandate that the United States bring a civil action against individual taxpayers to enforce these penalties. This is largely because 26 U.S.C. § 6201(a) does not cover § 6038(b) penalties, as they are neither taxes nor specifically assessable penalties.

The IRS' current practice of treating these penalties, not just as assessable, but as subject to summary assessment in a systematic fashion, is a misapplication of the law and undermines taxpayers' rights.   It disproportionately harms moderate- and low-income taxpayers, many of whom have some form of foreign business holdings, in that they are less likely to be aware of such filing requirements because they do not have access to costly tax advisors and less able to pay the flat rate penalties than wealthy individuals or large multinational businesses.  Furthermore, the high abatement rates of these penalties demonstrate that many taxpayers are experiencing profound harm, especially because taxpayers lack the protections under deficiency procedures.  This situation violates the mandate in § 7803(a) that the Commissioner ensure his officers and employees adhere to taxpayer rights codified in the Internal Revenue Code.

# ARGUMENT

## I.     Per Tax Court Precedent, the Internal Revenue Code, and Statutory Principles of Interpretation, Section 6038(b) Penalties Are Not Subject to Assessment.

Under the Internal Revenue Code ("the Code"), United States taxpayers are required to furnish specific information regarding foreign business entities they control. This foreign information reporting regime lies in §§ 6038 and 6038A, the former applying to individual taxpayers and the latter to 25% foreign-owned domestic corporations or foreign corporations engaged in a United States trade or business. Under § 6038, individuals are expected to timely provide relevant information on a Form 5471 attached to their annual income tax return. For every missing or incomplete Form 5471, they are subject to a one-time penalty of $10,000 and continuation penalties of $10,000 after 90 days, and then again, for every 30-day period, capped at $50,000. Under § 6038A, qualifying corporations are expected to timely provide relevant information on a Form 5472 attached to their corporate income tax return. For every missing or incomplete Form 5472, they are subject to a one-time penalty of $25,000 and continuation penalties of $25,000 for every 30-day period after notification of assessment, with no upper limit. It is important to note that "taxpayer[s] may be missing tens or even hundreds of [these] forms." Nat'l Taxpayer Advoc., 2020 Annual Report to Congress at 121. These penalties can become exponentially punitive in practice,

3

even if the taxpayer is not actually deficient in the amount of tax they reported and paid.

It had been IRS practice to manually assess these penalties on taxpayers who had been subject to audit, despite there being no legal justification to do so. Beginning in 2009, the IRS exacerbated the situation by assessing these penalties summarily, meaning taxpayers have no prior notice that the penalty has been applied against them. *Id.* at 129. The move to summary assessment significantly broadened the scope of taxpayers affected by these penalties, severely punishing even those whose failure to file the relevant forms would not have affected their underlying tax liability. Moreover, once taxpayers are summarily assessed a foreign-information reporting penalty, they then face the risk of manual assessment of continuation penalties. *Id.* at 121. The result is an excessive penalty scheme that runs contrary to the IRS penalty handbook's guidance to keep penalties "objectively proportioned to the offense" and use them "as an opportunity to educate taxpayers and encourage their future compliance." IRM 20.1.1.2.1, (Mar. 29, 2023). It is particularly troublesome given that the weight of authority indicates that these penalties may not be collected through assessment at all, whether manually or by automation.

### A. The Tax Court Has Repeatedly Held That § 6038(b) Penalties Are Not Assessable.

In *Farhy v. Comm'r*, 160 T.C. 399 (2023), the Tax Court held that the Section 6038(b) penalty was not assessable, but rather recoverable by civil action pursuant to 28 U.S.C. § 2461(a) and with specific jurisdiction over these civil cases in 28 U.S.C. § 1340 and 26 U.S.C. § 7402(a). Since then, the Tax Court has repeatedly reaffirmed its judgment that the IRS lacks authority to assess § 6038(b) penalties. *Farhy v. Comm'r*, 160 T.C. 399 (2023); *Mukhi v. Comm'r*, 162 T.C. 177 (2024); *Mukhi v. Comm'r*, 163 T.C. 150 (2024) (*en banc*). Despite the D.C. Circuit Court's recent rejection of this view in *Farhy v. Comm'r*, 100 F.4th 223 (D.C. Cir. 2024), the Tax Court reaffirmed its position in its reexamination of *Mukhi*. It is significant that in doing so, the Tax Court went beyond its textual arguments against the IRS' authority to assess these penalties by outlining policy concerns that weighed heavily against the IRS's overreach. Specifically, it pointed out that the $10,000 penalty is like other penalties that the Department of Justice ("DOJ") regularly collects, such as those for failing to report Foreign Banks and Financial Accounts ("FBAR"). *Mukhi*, 163 T.C. at 174. The Court believed that the DOJ would enforce collection actions against individual violators with no less competence than it does in those other scenarios. Moreover, the Court pointed out that the requirement to pursue civil action will act as a check on the IRS and force it to only impose penalties on deserving taxpayers. At the same time, the mere

5

threat of accumulating $10,000 penalties is enough to deter taxpayers from willfully choosing not to submit their required information returns.

### B. The Internal Revenue Code Does Not Allow for Assessment of § 6038(b) Penalties.

Section 6038(b) penalties must be collected through a civil action, as required by 28 U.S.C. § 2461(a). They do not fall under the purview of § 6201.

#### 1. 28 U.S.C. § 2461(a) Requires That § 6038(b) Penalties be Collected by the Government Through a Civil Action.

By default, federal agencies collect penalties through a civil action unless Congress alters this requirement by statute. 28 U.S.C. § 2461(a). 28 U.S.C. § 2461(a) requires the federal government to collect a "civil fine, penalty, or pecuniary forfeiture…for the violation of an Act of Congress without specifying the mode of recovery…in a civil action." Congress did not specify the mode of recovery for a taxpayer's failure to timely report information pursuant to § 6038(b). *Mukhi*, 163 T.C. at 162. Instead, the statute details and coordinates the timing and amount of overlapping penalty regimes while remaining silent with respect to the mode of recovery. Since there is no statutory basis for altering the default rule of 28 U.S.C. § 2461(a), any attempt by the IRS to assess and collect § 6038(b) penalties without a civil action is unlawful.

When Congress aims to make a penalty assessable without a civil action, it has multiple avenues by which it may do so. Past cases considering § 6038(b)

6

analyzed whether the parties had exhaustively and properly enumerated how Congress may designate a particular penalty for assessment in the same manner as taxes. In *Farhy* and *Mukhi,* the Tax Court identified multiple formulations within the Code that identify a penalty as an assessable penalty including: (1) designating a penalty as a tax for assessment purposes; (2) granting stand-alone assessment authority or cross-referencing chapter 68; (3) granting assessment authority to a group of penalties to which a specific penalty belongs; (4) applying a penalty as a result of deficiency proceedings; (5) indicating that deficiency procedures do not apply; or (6) providing a statutory basis for implying one of the foregoing. *Farhy*, 160 T.C.; *Mukhi*, 163 T.C.

No statute constrains how Congress may express its intention to designate a penalty as subject to an alternative method of collection. Though the threshold is low, there must be *some* basis in statutory text to alter a default rule. Otherwise, the statutory requirement of 28 U.S.C § 2461(a) controls and a civil action is necessary. With respect to § 6038(b), Congress provided no indication whatsoever in the statute that an alternative to a civil action applies; therefore, a civil action is required to collect § 6038(b) penalties.

Moreover, the § 6038(b) penalty is comparable with other penalties that the DOJ collects by civil action, including the FBAR penalty. *Mukhi*, 163 T.C. at 173. This penalty applies to taxpayers who fail to timely file an annual report disclosing

to the Treasury Department any of their interests in a foreign bank account, securities, or other financial accounts in which the taxpayer has an interest over $10,000. The Tax Court has found it has "no reason to believe the Department of Justice would treat its collection responsibility for the section 6038(b)(1) penalty any differently than that of the FBAR penalty." *Id.* at 174.

The Government nonetheless argues that a civil action requirement to collect § 6038(b) penalties effectively nullifies the Congressional effort to penalize the failure to comply with certain filing requirements, simply because the Government cannot allocate resources to collect a penalty of this size. However, as the Tax Court noted this argument fails to appreciate the speed with which § 6038(b) penalties accumulate. *Id.* at 173. In the initial tax year, a taxpayer may accumulate up to $60,000 in penalties by failing to file Form 5471 within eight months of the deadline. § 6038D(d).[3] Moreover, the main cases that have considered the § 6038(b) penalty regime have involved multi-year failures to comply with reporting obligations leading to penalties totaling more than $100,000. In effect, the Government's contentions that it is burdensome and time consuming to file individual civil actions in these cases and obtain relevant information pale in comparison to the real-life disastrous impacts on taxpayers.

---

[3] The initial penalty for failing to do so is $10,000, and if taxpayers do not respond in the first 90 days, the IRS assesses an additional $10,000 every 30 days, up to a ceiling of $50,000.

8

The Government's position is untenable. First, the Government claims that it has the authority to assess against any person, regardless of their tax liability, a penalty of $10,000 that accrues exponentially. This violates the requirement that penalties be proportionate. Nat'l Taxpayer Advoc., 2020 Annual Report to Congress at 121. In other instances, such as with FBAR penalties, where Congress has enacted a flat rate penalty instead of a percentage of the underlying tax liability, it has made the penalty collectible only by civil suit. This bars the Government from enacting a potentially disproportionate penalty against everyone who fails to file and using the penalty as a punishment as opposed to a means of encouraging tax compliance. *See*, Nat'l Taxpayer Advoc., 2023 Annual Report to Congress at 101. By going even further to summarily assess the penalty, the IRS has converted a civil deterrence-based penalty into a punitive criminal penalty.

Moreover, it is absurd for the Government to argue that it should be allowed to summarily assess the penalty against every taxpayer who fails to file their forms on time because it would be too expensive to recover those penalties through civil actions. By taking this stance the Government is saying that it will not apply this penalty judiciously and with regard to the underlying behavior by, for example, learning through an audit whether the failure to file was inadvertent or intentional and then filing a civil suit based on that determination. Instead, the Government believes it can bludgeon taxpayers first and leave it to them to raise questions later.

9

Congress can specifically state when it wants the Government to have such power. As it has not done so here, Congress relied on the protective check in 28 U.S.C. § 2461(a) that requires the Government to bring a civil action to recover the penalty.

### 2. Section 6038(b) Penalties Do Not Fall Under the Scope of § 6201(a).

Section 6201(a) allows the IRS to assess "taxes (including interest, additional amounts, additions to the tax, and assessable penalties)."  By attempting to sweep § 6038(b) penalties into the categories of either "taxes" or "assessable penalties," the Government aims again to avoid the clear statutory mandate requiring a civil action to collect foreign information reporting penalties.  The Government relies on broad interpretations of "taxes" and "assessable penalties" under § 6201(a) to expand its reach to all penalties for which the Code does not explicitly provide deficiency procedures.  The Government's arguments are off the mark, as § 6038(b) penalties neither qualify as "taxes" nor "assessable penalties" under § 6201(a).

### a. Section 6038(b) Penalties Do Not Qualify as "Taxes" under § 6201(a).

The Commissioner argues that the government's authority to make "assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties)" in § 6201(a) grants authority to treat § 6038(b) penalties as "taxes."  However, this position disregards the longstanding legal

10

distinction between taxes and penalties. The Supreme Court has stated that "if the concept of a penalty means anything, it means punishment for an unlawful act or omission." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 546 (2012). By contrast, "[a] tax…signifies an exaction for the support of the Government." *U.S. v. Butler*, 297 U.S. 1, 61 (1936). Though penalties and taxes may share features with one another, the distinction remains important for determining the process by which the government may impose them. While it is possible for a statute to designate a penalty as a tax, this occurs only when Congress indicates this intention in a statute. Moreover, defining "taxes" so broadly that it includes § 6038(b) penalties despite the silence of that provision would render a multitude of code provisions superfluous. *Mukhi*, 163 T.C. at 157. In other words, if "taxes" already included all penalties in the code, many sections of the Code that designate various penalties as taxes would be meaningless.

In § 6038(b), Congress created a method by which the government could punish the failure to file Form 5471. There is no indication in the Code or elsewhere that § 6038(b) aims to support the government by raising revenue. Instead, it seeks to penalize the failure to enable the proper assessment of taxes on foreign income. Though the government may raise revenue through this penalty, that impact is ancillary to the purpose of § 6038(b) to incentivize timely, accurate reporting of foreign income that enables the government to apply revenue raising

11

provisions of the Code accurately.  Since the statute itself does not indicate § 6038(b) penalties should be regarded as a tax and their purpose aligns with a penalty rather than a tax, there is no basis to conflate § 6038(b) penalties as analogous to "taxes" under § 6201(a).

Since these penalties are not functionally a tax nor assessed and collected in the same way as a tax, "(1) the IRS is not authorized to assess them; (2) the IRS cannot file tax liens or levy against assets to collect them; and (3) the collection due process provisions do not apply." Nat'l Taxpayer Advoc., 2020 Annual Report to Congress at 124.  Consequently, where the IRS seeks to collect any unpaid § 6038(b) penalties, it is instead required to ask the DOJ to sue the taxpayer in a civil action. This requirement remains regardless of the Government's contentions of marginally increased administrative burdens, in recognition of the Supreme Court's holding that "pleas of administrative inconvenience … never 'justify departing from the statute's clear text.'" *Niz-Chavez v. Garland*, 593 U.S. 155, 157 (2021) (quoting *Pereira v. Sessions*, 138 S. Ct. 2105, 2118 (2018)).

### b. Section 6038(b) Penalties Do Not Qualify as "Assessable Penalties" under § 6201(a).

While the authority granted by § 6201(a) includes "assessable penalties," it is important to note that this does not include all penalties under the Code.  Per the rules laid out in § 6671, assessable penalties are typically those described in

12

Chapter 68, Subchapter B, spanning §§ 6677 through 6725 of the Code. *See* Les

Book and Michael Saltzman, *IRS Practice and Procedure*, Ch. 7B (June 2025).

Any penalties listed therein can be assessed immediately without being subject to

deficiency procedures.  Though the list is extensive, it should not be construed to

include § 6038(b) penalties, which are in Chapter 61 of the Code.  While the Tax

Court has held that this list should be considered more illustrative than exhaustive,

it still "does not therefore follow that the definition becomes inclusive of every

exaction in the Code [as] … the adjective 'assessable' would be unnecessary to

modify 'penalties.'" *Mukhi*, 163 T.C. at 157.  Congress' decision to draft the

statute as including "assessable penalties," and not just "penalties," exhibits its

specific intention to prevent the IRS's assessment authority from turning into a

blank check to assess penalties in the Code. *Id.*  Congress wants the Government to

apply these penalties judiciously.

 In *National Federation of Independent Businesses*, the Supreme Court found

that the plain language of § 6201 provides that the IRS' authority to assess tax

includes the authority to assess penalties that are deemed assessable. 567 U.S. at

546.  The Government relies on this case to infer that it can summarily assess any

penalties not subject to deficiency procedures, whether or not those penalties are

listed in Chapter 68, Subchapter B.  In other words, even though the Code does not

explicitly recognize these penalties as assessable, they must be treated as assessable simply because they are not subject to deficiency procedures.

But § 6038(b) penalties are not assessable penalties because the statute neither directly nor indirectly contemplates assessment and collection in the same manner as taxes. Nat'l Taxpayer Advoc., 2020 Annual Report to Congress at 123. The statute only creates an option for a fixed penalty when a taxpayer fails to comply with certain informational reporting requirements. It does not belong to a larger group of penalties for which Congress designated an alternative to civil action. Section 6038(b) does not indicate that civil actions are unnecessary, which would lend credence to the notion that any alternative to civil action exists. In sum, the Government cannot prove that an alternative to civil action applies to § 6038(b) penalties because the statute contains no direct or indirect evidence that any other method of assessment and collection applies.

## C. Section 6038(b) Is Unambiguous and No Relevant Legislative History Undermines that Reading.

In the absence of a statutory justification, the Government relies on the D.C. Circuit's arguments related to legislative history and policy to justify the contention that § 6038(b) penalties are assessable. However, these considerations cannot fill in for the silence of § 6038(b) with respect to its method of collection and alter the default rule of 28 U.S.C. § 2461, as the Government's arguments rely

14

on bases of authority that are insufficient to overcome unambiguous statutory language. Moreover, the Government relies on a weak inference that, in the absence of any changes made to the statute, Congress affirmed the summary assessment of § 6038(b) penalties despite a dearth of evidence as to whether legislators even contemplated this question during reauthorization.

In *Farhy v. Comm'r*, a panel of the D.C. Circuit correctly identified that "[d]iscerning the operation of each penalty is a context-dependent exercise[,]" but failed to properly apply its own reasoning. *Farhy*, 100 F.4th at 235. The panel identified two examples of an assessable penalty for which Congress did not provide explicit guidance to collect outside of civil action and concluded, "Congress can make a penalty assessable by implication, and it did so [in § 6038(b)]." *Id.* at 236 (identifying statutory references to collection that assume assessability of a particular penalty and statutory prohibitions on the use of deficiency procedures). However, the panel did not apply its own reasoning to § 6038(b). Assuming *arguendo* that a statute may designate a penalty as assessable by implication, the panel cited no statutory language as a basis for the claim that § 6038(b) implies assessability of its penalties. Instead, the panel looked to the omission of changes by Congress (known as the reenactment canon) to the relevant statute. *Id.* at 235. This "context-dependent" exercise ignored the most important

piece of context: the absence of any statutory language that explicitly or implicitly justifies summary assessment of § 6038(b) penalties. *Id.*

With respect to legislative history, the Government argues that Congress endorsed the IRS' view of § 6038(b) penalties by failing to alter the statute during any of several reenactments. However, the Government fails to provide evidence that the congressional record indicated cognizance of the IRS position that § 6038(b) penalties are assessable penalties. At most, this is a weak inference. Even if the Government had provided evidence that Congress considered the position of the IRS when reenacting this statute, the Government's argument would nevertheless fail because, "the reenactment canon does not override clear statutory language[.]" *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 644 (2022).

## II. Summary Assessment of § 6038 Penalties Violates Taxpayer Rights.

Because § 6038 penalties require sophisticated tax preparation to avoid, they disproportionately fall on moderate- and low-income taxpayers who are also the least able to pay them. Furthermore, the high abatement rate after imposition shows that the IRS is not judicious in their application, and this is particularly troublesome given that summary assessment of these penalties lacks the protections inherent in deficiency procedures. The current practice thus implicates several violations of the Taxpayer Bill of Rights in § 7803. The Commissioner of

16

Internal Revenue is required to ensure that IRS employees adhere to administering internal revenue laws. § 7803(a)(2)(A).

### A. The IRS' Practice of Summarily Assessing § 6038(b) Penalties Disproportionately Harms Moderate and Low-Income Taxpayers for Whom the Fixed Amount of the Penalty is Disproportionate to the Underlying Tax.

The goal of the § 6038 penalty is to discourage U.S. taxpayers from hiding income and assets abroad. Nat'l Taxpayer Advoc., 2023 Annual Report to Congress at 101. At first blush, this regime seems like one that affects only the wealthiest taxpayers – those holding stocks, securities, and assets all over the world. But the statutory language is so expansive that § 6038, in practice, often applies to U.S. taxpayers who are of low- to moderate-income. *Id.* at 107. Take, for example, taxpayers who hold a controlling interest in a foreign partnership even where the partnership generates no taxable income, or Americans who obtained citizenship by virtue of being born in the United States but have lived all or most of their lives and conducted their business dealings overseas. *Id.* at 102. Such taxpayers shoulder many of these assessments and face significant penalties.

In fact, in its 2023 Annual Report to Congress, the Taxpayer Advocate Service determined that 71 percent of individual § 6038 penalties for tax years 2018 through 2021 were assessed against taxpayers whose reported income fell under $400,000. *Id.* Of this figure, low-income taxpayers who had earned $50,000

or less accounted for 23.3 percent of the total penalties assessed. *Id.* at 108.
Similarly, small and midsize businesses comprise 83 percent of summary §§ 6038
and 6038A penalty assessments, while large businesses with assets greater than or
equal to $10 million constitute the remaining meager 17 percent. *Id.* These
statistics should not come as a surprise, as high-income taxpayers and large
companies often have access to more sophisticated tax advisors who can help get
their paperwork lined up and thus avoid such penalties unlike moderate- and low-
income individuals, immigrants, and small business owners. *Id.* at 101. The result
of such findings is clear: the penalty disproportionately applies to moderate and
low-income taxpayers.

Moreover, the flat-fee nature of the penalty imposes a disproportionately
large financial burden on affected taxpayers since the amount of the penalty does
not vary regarding a given taxpayer's income. This disproportionate impact is
contemplated by Congress in the plain language of § 6038, but it intended that this
inequity be mitigated through the civil action requirement, not assessment. This is
why the statute does not explicitly grant the IRS the authority to assess the penalty.
Congress understood that in practice assessment of this penalty leads to inequitable
results. Like the FBAR penalty, which is similar in scope and whose "collection
mechanism authorized in the FBAR statute itself is not lien or levy but 'a civil
action to recover a civil penalty,'" here, too, the IRS retains authority to impose §

18

6038 penalties but not to assess them. *Mukhi*, 163 T.C. at 174 (quoting *Williams v. Comm'r*, 131 T.C. 54, 59 n.6 (2008)). If the Government followed the law and approached these penalties as collectible through civil action, moderate- and low-income taxpayers would not suffer the same degree of disproportionate harm as under current practice.

**B. Summary Assessment of § 6038(b) Penalties Results in High Abatement Rates.**

The IRS' unlawful use of assessment led to a slippery slope where it has adopted the even more destructive tactic of systematic summary assessment of § 6038 penalties. This occurs when taxpayers file late upon realization that they failed to meet a reporting requirement or were unable to report the information in time for reasonable cause. This summary assessment occurs systemically because the IRS computer system will automatically assess a § 6038 penalty on late receipt of the information required by the section prior to any review or action from IRS personnel. *Foreign Information Penalties: Provide Taxpayers Their Rights Before Assessment*, Nat'l Taxpayer Advoc. Blog (May 21, 2024), https://www.taxpayeradvocate.irs.gov/news/nta-blog/foreign-information-penalties-provide-taxpayers-their-rights-before-assessment/2024/05/. The National Taxpayer Advocate summed up the issue best when she stated that "[t]he disproportionality is bad enough when considered in isolation. The harsh results sometimes generated by these penalties, however, are exacerbated because [such]

penalties are systemically assessed." Nat'l Taxpayer Advoc., 2023 Annual Report to Congress at 110. Where penalties that are assessed in haste and without consideration of case-specific facts and circumstances, resources are needlessly expended by the IRS at the taxpayers' expense in the form of significant personnel hours and scarce IRS funds. Nat'l Taxpayer Advoc., 2020 Annual Report to Congress at 127.

TAS found that between 2018 and 2021, §§ 6038 and 6038A penalties were the most frequently assessed international information return penalties. Nat'l Taxpayer Advoc., 2023 Annual Report to Congress at 110. In its 2023 Annual Report to Congress, it reported that the abatement percentage for summary assessments was 74 percent when measured by the number of penalties and 84 percent when measured in dollar value. *Id.* This differed remarkably from manual assessments for individual taxpayers, which were abated at just 27 percent in the number of penalties assessed and 16 percent in dollar amount. *Id.* It is important to note that while "abatements are always preferable to improperly assessed and collected penalties, high abatement rates indicate flawed policies and that there may be a better way to proceed." *Id.*

Such high abatement rates demonstrate that this practice is imposing unnecessary burdens on most taxpayers under the § 6038 regime, given that nearly three quarters of taxpayers who were summarily assessed do not end up having to

pay.  Such overinclusion places significant emotional and financial stress on

moderate- and low-income taxpayers, for whom the baseline $10,000 dollar

liability stemming from a single missing form could be the difference between

being able to pay off their tax liability or not for a given year.  Additionally, even if

these taxpayers achieve an abatement or refund, the attorneys' fees needed to

obtain such results will still impose a significant financial burden, especially for

those who are unfamiliar with the complexities of administrative tax procedure.

This aligns with the Taxpayer Advocate Service's finding per a professional group

that the Government often delays settlement discussions so much so that litigants

are effectively required to incur legal fees in the range of $100,000 just to contest

the penalties in court. *Id.* at 112.

Rather than continue to harm and place additional burdens on taxpayers, the

Government must comply with the law and only recoup § 6038 through civil

actions. The high abatement rate of the penalties that were summarily assessed

buttresses the likelihood that Congress did not intend for the penalty to be applied

in a shot-gun approach.  Further, the fact that the IRS does use its discretion in

some § 6038 cases and that in those instances there is a much lower abatement rate

belies the Government's argument that it is too expensive to bring civil actions in

the appropriate cases.  In stopping assessment altogether, the IRS would be

following the law which contemplates an emphasis on taxpayer awareness and incentivizing disclosure over doling out punishment.

### C. An Administrative Scheme is Unsuited to These Penalties Because It Lacks Safeguards.

Congress did not make § 6038(b) penalties subject to deficiency procedures, which means there is generally no affordable and accessible prepayment avenue to challenge assessment of these penalties in courts. The Tax Court has explained that "[b]eing subject to deficiency procedures creates a whole host of obligations on the IRS before the amount can be assessed and collected," including first sending a notice to the taxpayer's last known address, which starts the clock on the 90-day period within which a taxpayer can file a petition to the Tax Court to obtain prepayment review. *Mukhi*, 163 T.C. at 165. Taxpayers who do so are shielded from any assessment or collection efforts made by the IRS, absent jeopardy assessment, until receiving a final judgment as to whether they truly owe before the IRS can then assess and begin collecting on their deficiency.

Absent access to such valuable prepayment review, the most efficient path to recourse is for a taxpayer to request abatement of the penalty by filing a Form 843. But abatement requests can take many months for the IRS to process, and abatement grants are often subject to the whim of whichever IRS personnel

22

reviews one's request. Nat'l Taxpayer Advoc., 2023 Annual Report to Congress at 106. Alternatively, the taxpayer can wait for the IRS to impose a lien or levy and request a CDP hearing during which they can challenge the merits of the penalty. If they disagree with the determination from the CDP hearing, they can appeal to the Tax Court. But waiting to assert CDP rights takes a very long time, and taxpayers cannot challenge the existence or amount of the underlying liability in a CDP hearing or in Tax Court if they otherwise had a prior opportunity to dispute the liability. § 6330(c)(2)(B). This prior opportunity to dispute the liability could be anything from an invitation from the IRS to request an Appeals conference either before or after the assessment of the liability, even if there was no prior or future opportunity for the Tax Court to review the substantive application of the penalty. Taxpayers living overseas have the added complication that they are less likely to meet the 30-day deadline to file a CDP case given the logistics of international mail. They may even receive the notice providing them the opportunity to request a CDP hearing after the due date for response has passed.

The difficulty in abating these penalties once imposed is more reason that they must only be applied when necessary and through civil action to act as a check on the Government. Furthermore, when paired with the high abatement rates on § 6038 penalties, the current administrative approach creates unnecessary frictions for taxpayers that were not contemplated by Congress in the plain

23

language of the Code. These frictions are higher for taxpayers who are low- to moderate- income because, to challenge any erroneous applications of these penalties, they must first pay the penalty and any other tax owed before they can then bring a refund suit in U.S. District Court or the Court of Federal Claims. *See, Flora v. United States*, 362 U.S. 145 (1960); *See also, Foreign Information Penalties: Provide Taxpayers Their Rights Before Assessment*, NAT'L TAXPAYER ADVOC. BLOG. For many of these taxpayers, the $10,000 up-front payment requirement is enough to prevent them from seeking recourse in court as making the payment may require taking out a loan or making other financial decisions that would greatly increase their financial risk. For many moderate- and low-income taxpayers, this increased risk is too costly, especially when considering additional costs of lawyers' fees and time spent as litigation pends.

The IRS begins collection procedures for payment of the penalty at the point of assessment. Thus, the system encourages taxpayer noncompliance with the § 6038 requirements in cases where a taxpayer is unable to file the appropriate information in time since providing the information late will automatically subject them to the penalty. That the penalty would be summarily assessed upon late filing, leading taxpayers to not file at all and undermining the very purpose of the penalty, is an absurd result and one that Congress cannot have intended.

24

All available avenues to challenge a § 6038 penalty under the current regime are costly to the taxpayer, both in terms of legal expenses and time. Additionally, in the § 6038 context, these penalties are often imposed on taxpayers who (1) were not aware of its existence and (2) who do not have any underlying taxable income in the foreign holding subject to the information requirement. This system is stacked against taxpayers without access to expensive tax preparers or legal services and places an unjustified burden on them to prove through complex legal avenues that the penalty was erroneously applied. This could not be the intended result when Congress codified the penalty. Rather, Congress contemplated the IRS would use the penalty judiciously and enforced that expectation by requiring the Government to bring a civil action to enforce.

### D. Summary Assessment of § 6038 Penalties Violates the Protections Afforded Taxpayers Under the Taxpayer Bill of Rights.

The Taxpayer Bill of Rights is codified in § 7803(a)(3) and states that the Commissioner of the IRS "shall ensure that … the Internal Revenue Service … act[s] in accord with taxpayer rights … including – (B) the right to quality service … (C) the right to pay no more than the correct amount of tax …  (D) the right to challenge the position of the Internal Revenue Service and be heard, (F) the right to finality, and (J) the right to a fair and just tax system." § 7803(a)(3).  As the § 6038 regime is currently implemented, the IRS fails on all five counts.  By treating the

penalty as assessable, the taxpayer is subjected to pay more than the correct amount of tax in the case of an erroneous assessment (which is statistically likely under current IRS practices) and is forced to first pay the penalty before challenging the merits of the penalty, which puts the opportunity to be heard out of reach for moderate- and low-income taxpayers.

Assessment of § 6038 penalties, in violation of 28 U.S.C. 2461(a), tramples upon taxpayers' right to pay "only the amount of tax legally due, including interest and penalties." *Your Rights as a Taxpayer: The Taxpayer Bill of Rights*, IRS PUBLICATION 1 REV. 9-2017, https://www.irs.gov/pub/irs-pdf/p1.pdf (last visited July 25, 2025). The high abatement rate of these penalties suggests that most of the time such penalties are assessed, they are done so improperly. For taxpayers unfamiliar with the abatement process or who do not hire an attorney to help them resolve the penalty, they will be forced to pay the penalty even though the likelihood they are truly deserving of such penalty is relatively low. This runs contrary to the statutory duty of the IRS to ensure that tax paid should be limited to the amount actually owed. Summary assessment of § 6038 penalties also makes it more likely that taxpayers will end up paying more than the correct amount of tax due to the high error rate.

Additionally, assessment violates the taxpayer's right to challenge the position of the IRS and be heard. As mentioned *supra*, there is no deficiency

procedure for § 6038 penalties, which necessitates full payment of the penalty prior to being able to seek and obtain review of the determination. This prepayment puts substantive review out of reach for many taxpayers, directly trampling on their right to challenge the IRS determination and be heard. Moreover, their right to finality is violated in that many who pay the alleged deficiency are redirected to the U.S District Courts or the U.S. Court of Federal Claims to obtain judicial review– a costly avenue that, for some, may consume too many resources to prove viable. Nat'l Taxpayer Advoc., 2023 Annual Report to Congress at 112. Though this is fundamentally a problem with assessing § 6038 penalties, summary assessment only makes this violation worse – imposing the up-front payment necessary to achieve review of the decision on a greater number of taxpayers. In effect, taxpayers' right to quality service and a fair and just tax system are compromised.

The Internal Revenue Manual recognizes that "a wrong [penalty] decision, even though eventually corrected, has a negative impact on voluntary compliance." IRM 20.1.1.1.3(4), Responsibilities (Mar. 29, 2023). By allowing the IRS to continue to assess § 6038(b) penalties without analysis of the taxpayer's facts and circumstances, this Court would decrease public confidence in government and deliver a blow to taxpayer compliance with tax laws that are already complex and expensive to navigate, thus disproportionately unforgiving to moderate - to low-

income taxpayers. To protect taxpayer rights, we urge the Court to hold that summary assessment of § 6038 penalties violates the plain language of the Internal Revenue Code.

## CONCLUSION

For these reasons, this Court should find in favor of the Appellee and rule that §

6038(b) penalties are not subject to assessment by the IRS.

Respectfully Submitted,

/s/____*AUDREY PATTEN*____

       Audrey Patten,
       *Counsel for Amicus*
       Director, Tax Litigation Clinic at
       the Legal Services Center
       of Harvard Law School
       122 Boylston Street
       Jamaica Plain, MA 02130
       (617) 384-0734
       apatten@law.harvard.edu

Dated:  July 30, 2025

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.    This document complies with the type-volume limit of Fed.  R.  App.  P. **29(a)(5) and 32(a)(7)(B)** because, excluding the parts of the document exempted by Fed.  R.  App.  P.  32(f):

    **X**    this document contains 6,451 words, excluding the items exempted by Fed. R.  App.  P.  32(f) **or**

    ☐    this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2.    This document complies with the typeface requirements of Fed.  R.  App. P.  32(a)(5) and the type-style requirements of Fed.  R.  App.  P.  32(a)(6) because:

    **X**    this document has been prepared in a proportionally spaced typeface using **Microsoft Word** in **Times New Roman size 14 font**, **or**

    ☐    this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

*/s/ Audrey Patten*

Attorney for       *Amicus Curiae,* Center for Taxpayer Rights

Dated: July 30, 2025

# CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ACMS system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 30, 2025

*/s/ Audrey Patten*

Attorney for _____*Amicus Curiae,* Center for Taxpayer Rights__

Dated:  July 30, 2025