# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2025

No. 25-501-cv

JOSEPH SAFDIEH,
*Petitioner-Appellee,*

*v.*

COMMISSIONER OF INTERNAL REVENUE,
*Respondent-Appellant.*

————

Appeal from the United States Tax Court.

————

ARGUED: DECEMBER 17, 2025
DECIDED: FEBRUARY 27, 2026

————

Before: JACOBS, CABRANES, and LOHIER, *Circuit Judges.*

————

Respondent-Appellant, the Commissioner of Internal Revenue, appeals from a December 5, 2024, order of the United States Tax Court

1   (Mark V. Holmes, *Judge*) granting summary judgment to Petitioner-
2   Appellee Joseph Safdieh.

3        The Commissioner assessed Safdieh $50,000 in penalties for
4   allegedly failing to report control of a foreign business in tax years
5   2005–09.  *See* I.R.C. § 6038(b).  But the Tax Court granted Safdieh
6   summary judgment, reasoning that Congress did not empower the
7   Commissioner to collect the penalties through assessment, an
8   administrative process.  If the Commissioner wanted to collect the
9   penalties, the Tax Court ruled, he had to go to federal district court.

10       Seeing things differently, we hold that the Commissioner may
11   assess penalties under § 6038(b).  Accordingly, we **VACATE** the Tax
12   Court's order granting Safdieh summary judgment and **REMAND**
13   for further proceedings consistent with this opinion.

14                 _____
15

16           ROBERT J. WILLE (Jennifer M. Rubin, *on the brief*),
17           Tax Division, Department of Justice, Washington,
18           DC, *for Respondent-Appellant*.
19

20           PARKER RIDER-LONGMAID (Shay Dvoretzky,
21           Armando Gomez, Sylvia Tsakos, Eman Cuyler,
22           Sherry M. Tanious, *on the brief*), Skadden, Arps,
23           Slate, Meagher & Flom LLP, Washington, DC,
24           and New York, NY, *for Petitioner-Appellee*.
25

1    AUDREY PATTEN, Legal Services Center of
2    Harvard Law School, Jamaica Plain, MA, *for*
3    *Amicus Curiae Center for Taxpayer Rights*.

4                         _____
5

6    JOSÉ A. CABRANES, *Circuit Judge*:

7         The question presented is whether Respondent-Appellant, the
8    Commissioner of Internal Revenue, can collect penalties under
9    Internal Revenue Code ("I.R.C.") § 6038(b)[1] through administrative
10   assessment, or instead must obtain a judgment in federal district
11   court.

12        The Commissioner appeals from a December 5, 2024, order of
13   the United States Tax Court (Mark V. Holmes, *Judge*) granting
14   Petitioner-Appellee Joseph Safdieh summary judgment.[2]

15        Safdieh allegedly failed to report control of a foreign business
16   in violation of I.R.C. § 6038.  That provision carries a $10,000 penalty
17   for each year during which such a reporting failure exists.[3]  For
18   Safdieh, who allegedly failed to report in tax years 2005–09, the
19   penalties add up to $50,000.

---

[1] I.R.C. § 6038 requires "[e]very United States person [to] furnish, with respect to any foreign business entity which such person controls, such information as the Secretary may prescribe . . . ."  I.R.C. § 6038(a).  Though the statute speaks of the Secretary of the Treasury, the Secretary has delegated his authority to administer and enforce the I.R.C. to the Commissioner.  *See generally* Treas. Reg. §§ 301.7701-9, 301.6201-1(a), 301.7601-1.

[2] *Safdieh v. Comm'r*, No. 11680-20L (T.C. Dec. 5, 2024).

[3] I.R.C. § 6038(b)(1).

1    When Safdieh did not pay the penalties, the Commissioner
2    filed notice of a federal tax lien.  Safdieh challenged the lien before the
3    Independent Office of Appeals in a Collection Due Process hearing.[4]
4    When he lost that appeal, he petitioned the Tax Court for relief.

5    The Tax Court sided with Safdieh, granting him summary
6    judgment.  Its rationale was purely legal.  It held that Congress had
7    not statutorily authorized the Commissioner to collect the § 6038(b)
8    penalty through assessment, the administrative process that records
9    a taxpayer's liability and triggers the Internal Revenue Service's
10   collection powers.[5]  If the Commissioner wished to penalize Safdieh's
11   reporting failures, the Court held, he had to go to federal district
12   court.

13   In this Court, whether the Commissioner may assess the
14   penalty for failure to report control of a foreign business under
15   § 6038(b) is a new question.  Like the D.C. Circuit,[6] the only other
16   court of appeals to have decided the issue, we hold that he can.

## DISCUSSION

18   The IRS normally does not have to go to federal district court
19   to take taxpayers' money, though some might wish it did.  Only in

---

[4] *See generally Farhy v. Comm'r*, 100 F.4th 223, 227 (D.C. Cir. 2024).  A Collection Due Process hearing gives the taxpayer a chance for a highly "informal oral or written conversation with the IRS before he must pay."  *Id.* (citation omitted).

[5] *See Safdieh*, No. 11680-20L at 1–2.

[6] *Farhy*, 100 F.4th at 223.

4

1  rare instances is a lawsuit necessary.[7]  The agency can instead usually
2  collect taxpayers' liabilities through "assessment."   The power of
3  assessment is vital, handing the Commissioner the tools needed to
4  collect "*all* taxes."[8]   As such, assessment is commonplace in tax
5  collection.

6      Take the familiar example of a taxpayer adding up how much
7  she owes Uncle Sam and mailing off her return with the payment due.
8  This process is "self-assessment,"[9] which one Commissioner called a
9  "marvel of the world."[10]  The Commissioner will normally accept the
10  taxpayer's self-assessment.  But if the taxpayer does not file a tax
11  return or misstates what she owes, the Commissioner will calculate
12  the tax liability on her behalf and record it in the government's
13  books.[11]

14      Assessment does much more than keep the IRS's books in good
15  order.  It plays the singular role of triggering an all-important process:
16  collection.  "[I]t is the assessment, and only the assessment, that sets
17  in motion the collection powers of the IRS."[12]  Those powers allow the

---

[7] *Id.* at 226.

[8] I.R.C. § 6201(a) (emphasis added).

[9] *United States v. Galletti*, 541 U.S. 114, 122 (2004).

[10] Bob Kuttner, *The Taxing Trials of I.R.S.*, N.Y. Times, Jan. 6, 1974, https://www.nytimes.com/1974/01/06/archives/the-taxing-trials-of-irs-white-house-heat-and-artful-dodging.html.

[11] *Galletti*, 541 U.S. at 122.

[12] *Phila. & Reading Corp. v. United States*, 944 F.2d 1063, 1064 n.1 (3d Cir. 1991).

1    IRS to seize assets, freeze bank accounts, and create liens—all without

2    setting foot in a courtroom.[13]

3    We have noted that these tools, "which quite obviously place

4    the Government in a better position to collect on alleged tax debts

5    than individuals seeking to collect on private debts, are said to be

6    necessary because . . . 'taxes are the life-blood of government, and

7    their prompt and certain availability an imperious need.'"[14]

8    Critical to this case, the Commissioner's assessment power

9    extends beyond "all taxes" to include "assessable penalties."[15]  There

10    is no question that the dollar amount at issue here is a "penalty":  the

11    statute says so outright.[16]  The only doubt is whether this penalty is

12    "assessable."  Though the great Professor Boris Bittker and his

13    coauthors observed that "[v]irtually all civil penalties are assessed,"[17]

14    Safdieh contends that § 6038(b) is an exception.

15    Section 6038(b)'s text is silent as to whether the penalty is

16    assessable.[18]  In this sense, it is unlike the provisions in the I.R.C. that

---

[13] *Id.*  That said, the IRS may have to go to court if the taxpayer challenges the assessment.  *See generally Farhy*, 100 F.4th at 226–28.

[14] *United States v. Forma*, 42 F.3d 759, 766 (2d Cir. 1994) (quoting *Bull v. United States*, 295 U.S. 247, 259 (1935)).

[15] I.R.C. § 6201(a).

[16] *Id.* § 6038(b) ("such person shall pay a penalty of $10,000").

[17] Boris I. Bittker, Martin J. McMahon & Lawrence Zelenak, *Federal Income Taxation of Individuals* ¶ 50.03 (3d ed. 2002).

[18] The core of the penalty provision reads:

expressly allow, or bar, assessment.[19]  Section 6201(a), which covers the Commissioner's assessment authority, is likewise silent.  That ambiguity has not stopped the parties from claiming the texts of these provisions for themselves.  But because their arguments struggle to make sense out of silence, we do not parse them here.

We instead focus on § 6038(b)'s history, purpose, and structure[20]—including the text of a key coordination clause—which lead us to hold that the penalty is assessable.[21]  There are three reasons why.

## I.

First, the history of § 6038(b) strongly suggests that the penalty is assessable.

---

> If any person fails to furnish, within the time prescribed under paragraph (2) of subsection (a), any information with respect to any foreign business entity required under paragraph (1) of subsection (a), such person shall pay a penalty of $10,000 for each annual accounting period with respect to which such failure exists.

I.R.C. § 6038(b)(1).  Despite the parties' attempts at exegesis, the text simply does not say whether the penalty is, or is not, assessable.

[19] *Contrast*, *e.g.*, I.R.C. § 527(j)(1) ("shall be assessed"), *with id.* § 7269 ("to be recovered . . . in a civil action").

[20] *Accord, e.g.*, *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 627 & n.16 (1993).

[21] Our review is *de novo*.  *Maier v. Comm'r*, 360 F.3d 361, 363 (2d Cir. 2004).

Start by understanding the reason for § 6038(b)'s existence. At the time of its enactment in 1982, there already existed a penalty for a taxpayer's failure to report control of a foreign business: a 10-percent reduction of the violator's foreign tax credit.[22] This provision was assessable, meaning that the Commissioner did not have to go to court to collect it.[23]

Even so, the provision was too hard to use. As a Senate report put it, "penalties generally are not imposed."[24] This was partly "because the penalty is complicated."[25] It was "unduly harsh" to taxpayers who "could incur a substantial penalty for a minor failure."[26] And it was toothless in the cases of taxpayers who paid no foreign taxes, and so had no foreign tax credit to reduce.[27]

Under-enforcement resulted, and the Senate heard "complaints about inadequate reporting with respect to controlled foreign corporations."[28] In other words, even though the Commissioner did not have to go to district court and could assess the penalty, the

---

[22] *Farhy*, 100 F.4th at 228 (citing Act of Sept. 14, 1960, Pub. L. No. 86-780, § 6(a), 74 Stat. 1010, 1014–16; Revenue Act of 1962, Pub. L. No. 87-834, § 20(a), 76 Stat. 960, 1059–60)). This provision is now codified at I.R.C. § 6038(c).

[23] *Farhy*, 100 F.4th at 231; *see also* Appellee's Letter (Jan. 7, 2026) at 2 (conceding that the § 6038(c) penalty is assessable). That the existing penalty was assessable may explain why Congress did not specify that the new, supplemental penalty was also to be assessable.

[24] S. Rep. No. 97-494(I), at 299 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 781, 1042.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

1    process was cumbersome. To supplement this assessable tax-credit

2    penalty, Congress enacted § 6038(b)'s dollar penalty.

3        As the Senate report makes clear in noting the problem of

4    under-enforcement, Congress wanted to make it easier, not harder,

5    for the IRS to penalize reporting failures. If an assessable penalty was

6    too "complicated" to impose (as the Senate report said), a non-

7    assessable one would be even more so.

8        Yet Safdieh argues that Congress made the new dollar penalty

9    non-assessable anyway. In his view, Congress required the tax

10   collector to make a detour to the nearest federal district court to wage

11   a legal battle for the money. That seems implausible. It is unlikely

12   that Congress would have wished to put even more logs in the way

13   of the tax harvester when its stated aim was to clear the road.[29]

14       Indeed, the IRS got the message from the start and has assessed

15   the penalty ever since its enactment in 1982.[30] Given Congress's aim

---

[29] This conclusion finds further support in a Committee Print accompanying the Tax Compliance Act of 1982, a bill which contained the same language that would work its way into § 6038(b). *Compare* Tax Compliance Act of 1982, H.R. 6300, 97th Cong. § 411(b) (1982), *with* Tax Equity and Fiscal Responsibility Act of 1982, H.R. 4961, 97th Cong. § 338(b) (1982). The Committee Print indicates that the fixed dollar penalty was meant to "simplify the penalty for failure to furnish information" by "giv[ing] Internal Revenue Service agents a simple straight-forward penalty to impose where reports . . . are not filed or are inadequate." Staff of Joint Comm. on Taxation, Comparative Description of H.R. 6300 and H.R. 5829 at 30 (Comm. Print 1982). Safdieh asks us to conclude that the § 6038(b) penalty can be collected only through a civil suit filed by the Department of Justice. This is hardly a "simple straight-forward penalty" that "Internal Revenue Service agents" can "impose."

[30] *Farhy*, 100 F.4th at 229–30, 236.

1 in enacting the provision, the IRS's early (and consistent) view of the

2 statute is unsurprising. As evidence of the statute's original meaning,

3 it deserves substantial weight.[31]

4   What is more, in the forty-three years since enacting the

5 provision, Congress has never, to our knowledge, questioned the

6 IRS's practice. In fact, it has acquiesced. "The failure of Congress to

7 alter or amend [a statute], notwithstanding this consistent

8 construction by the department charged with its enforcement, creates

9 a presumption in favor of the administrative interpretation, to which

10 we should give great weight."[32] Congress has amended § 6038 seven

11 times since first enacting the dollar penalty in 1982, most recently in

12 2017.[33] Yet, on each amendment, it has done nothing to curb the use

13 of assessment.

---

[31] To be clear, we cannot and do not "defer" to the IRS's interpretation of the provision. *Contra Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), *overruled by Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). Rather, in our *de novo* quest to say what the law is, we look to the IRS's contemporaneous understanding of the statute as evidence of its original meaning. To ask what the law meant to its intended audience at the time of enactment is a well-worn interpretive tool in the face of textual ambiguity, one that predates *Chevron*. *See, e.g., F.T.C. v. Mandel Bros., Inc.*, 359 U.S. 385, 391 (1959) (collecting cases); *Shen v. Esperdy*, 428 F.2d 293, 301–02 (2d Cir. 1970). It is not unique to administrative law, either. *See, e.g., Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 432 (2024) (constitutional law); *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 431–32 (1943) (treaty law); *Clark v. Carolina & Yadkin River Ry. Co.*, 122 N.E. 453, 454 (N.Y. 1919) (contract law). Nothing in *Loper Bright* forecloses courts from considering this kind of evidence.

[32] *Costanzo v. Tillinghast*, 287 U.S. 341, 345 (1932); *accord, e.g., Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986).

[33] I.R.C. § 6038; *see also Farhy*, 100 F.4th at 236.

And contrary to Safdieh's claim, Congress's acquiescence was not born of ignorance. The legislature knew of the Commissioner's view that he could assess penalties under § 6038(b).[34] Congress's decision not to challenge the Commissioner's assessment power over the course of four decades and seven amendments thus seems to be a choice.

Other historical context backs up our conclusion that the penalty is assessable. At the time of the penalty's enactment, the backlog of pending civil cases in federal district court had surged to a record high.[35] The same year that § 6038(b) became law, Congress enacted the Federal Courts Improvement Act with the overriding aim of clearing that pileup.[36] It seems improbable that amid this crisis Congress required the Commissioner to mount a potentially protracted federal case to stand any chance of collecting a modest penalty.

That conclusion is reinforced by the fact that the penalty was magnitudes lower then than now, both in real and nominal terms.

---

[34] *See, e.g., Treasury and General Government Appropriations for Fiscal Year 1998: Hearings Before a Subcomm. of the S. Comm. on Appropriations*, 105th Cong. 254 (1998) (discussing a proposal to "allow taxpayers an *administrative* appeal prior to the payment of the penalty") (emphasis added). An administrative appeal before payment would make sense if the administrative agency, and not an Article III court, were to impose the penalty.

[35] Administrative Office of the United States Courts, *Report of the Proceedings of the Judicial Conference of the United States: March 11–12, 1982*, at 4 (1982), https://share.google/SWT3p20gILYLEDsfT [https://perma.cc/XN5Q-BT3V].

[36] R. Anthony Howard, Jr., Note, *The Federal Courts Improvement Act of 1982: No Relief for the Disappointed Bidder*, 11 J. Legis. 403, 418 (1984).

1    The original penalty was $1,000 (that's $3,400 in today's money).[37]  For

2    perspective, at that time a diversity case could get into federal court

3    only if it was worth at least ten times the penalty's amount—a floor

4    that, in just six years, Congress would raise to fifty times the

5    amount.[38]  Saddling the Commissioner with a federal case over such

6    a small sum would hamper the federal courts and the Commissioner

7    at a time when the evidence suggests that Congress wished to relieve

8    both.[39]

9          Safdieh responds that going to federal court for the penalty,

10   which now stands at $10,000 a year, could nonetheless be worth the

11   Commissioner's trouble, since "[r]eporting failures across several

12   years can result in penalties of more than $100,000."[40]  But Safdieh

13   points to no evidence showing that Congress meant to make it

14   worthwhile to pursue only serial offenders.  Such an approach would

---

[37] *See* Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 338, 96 Stat. 324, 631 (1982);  *CPI Inflation Calculator*, U.S. Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm.

[38] Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, § 201(a), 102 Stat. 4642, 4646 (1988) (raising the amount-in-controversy requirement for diversity jurisdiction from $10,000 to $50,000).

[39] At first glance, it seems that the Internal Revenue Code makes *lesser* penalties recoverable in a civil action only.  *See* I.R.C. § 5761(a) ($1,000);  § 7269 ($500).  First glances mislead.  When Congress set those penalties in 1954, they were, in inflation-adjusted terms, 3.6 and 1.8 times higher respectively than the original $1,000 § 6038(b) penalty that Congress enacted in 1982.  *See* Internal Revenue Code of 1954, 68A Stat. 3, 736, 865 (1954);  *CPI Inflation Calculator*, U.S. Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm.

[40] Appellee's Br. at 63;  *cf. Mukhi v. Comm'r*, 163 T.C. 150, 173 (2024).

12

1  allow tax-reporting failures—so long as there were not too many of

2  them.  We have no reason to believe that was Congress's intent.[41]

3                                    II.

4        Second, requiring the Commissioner to sue for § 6038(b)

5  penalties would badly disrupt the section's overall enforcement

6  scheme, defeating Congress's design.

7        To see why, understand that Congress expected § 6038(b) to

8  work in concert with another provision, § 6038(c).  That provision,

9  briefly noted above, penalizes failure to report control of a foreign

10  business with a 10-percent reduction of the taxpayer's foreign tax

11  credit.[42]  But that penalty does not work in isolation.  A coordination

12  clause reduces "[t]he amount of the reduction . . . by the amount of

13  the penalty imposed by subsection (b)"—that is, by the yearly dollar

14  penalty.[43]

15        The coordination clause suggests that Congress meant for the

16  Commissioner to be able to impose the subsection (b) and (c) penalties

---

[41] Similarly, we are not swayed by Safdieh's claim that the Department of Justice "generally collects" another $10,000 penalty by suing in district court. *See* Appellee's Br. at 64 (citing 31 U.S.C. § 5321(a)(5)(B)(i)).  To start, this other penalty is in fact also assessable, as Safdieh concedes. *See id.* (citing 31 U.S.C. § 5321(b)).  It is thus undisputed that Congress gave the Executive a choice between assessing that penalty or going to court.  And while it is true that the Executive sometimes does go to court, the cases in which it does so routinely have more than $10,000 at stake. *See Mukhi*, 163 T.C. at 174 n.12 (collecting cases).  A federal case may not be worthwhile when lesser amounts are in controversy. *See Farhy*, 100 F.4th at 232.

[42] I.R.C. § 6038(c)(1).

[43] *Id.* § 6038(c)(3).

13

1   at the same time.  Under Safdieh's argument, however, that would be
2   impossible.  Before the Commissioner could coordinate the two
3   penalties, he would have to await a federal district court's entry of
4   judgment for the subsection (b) penalty.  Only then could he know
5   "the amount of the penalty imposed by subsection (b)" and reduce
6   the subsection (c) penalty accordingly.

7        "To agree with that reading, we would have to conclude that,
8   in enacting subsection (b), Congress not only failed in its avowed
9   quest to streamline, but also counterproductively threw sand in the
10  gears of section 6038's existing enforcement scheme."[44]  We give
11  Congress more credit than that.

12       Safdieh's view of the law would greatly complicate the
13  penalty's collection.  If the Commissioner were to seek penalties
14  under subsections (b) and (c), there might be proceedings in federal
15  district court for the former and in the Tax Court for the latter.[45]  Both
16  courts might have to address the same questions.  Did the taxpayer
17  really control the business during the relevant years?  Did the
18  business count as a "foreign business entity"?  Were there any
19  defenses, such as reasonable cause?[46] The duplication of effort would
20  be wasteful.

---

[44] *Farhy*, 100 F.4th at 232–33.

[45] *Id.* at 234. Safdieh argues that it is unlikely that the Commissioner would use subsections (b) and (c) at once.  But likelihood is beside the point since Congress intended the dual option to be available.

[46] *Id.*

14

1    Once one of the two relevant courts resolves the issues,
2  questions of preclusion may arise.  It has long been the law that
3  "where a question of fact essential to the judgment is actually litigated
4  and determined in the first tax proceeding, the parties are bound by
5  that determination in a subsequent proceeding."[47]  Taking note of
6  this, parties may try to game the proceedings by rushing to judgment
7  in the "right" court and erecting barriers to judgment in the "wrong"
8  one.

9    All this complicates the penalization of tax-reporting failures
10  and promotes gamesmanship.  Could that have been the known effect
11  of a provision that aimed to simplify things—to make a penalty less
12  "complicated" and the tools of enforcement easier to wield?  We
13  doubt it.

14                                 III.

15    Third, if the Commissioner cannot assess the § 6038(b) penalty,
16  what litigation authority does he have to sue for it?

17    Safdieh cites 28 U.S.C. § 2461(a) as the Commissioner's "only"
18  collection authority.[48]  This provision provides that "[w]henever a
19  civil fine, penalty or pecuniary forfeiture is prescribed for the

---

[47] *Comm'r v. Sunnen*, 333 U.S. 591, 601 (1948) (citing *The Evergreens v. Nunan*, 141 F.2d 927 (2d Cir. 1944) (L. Hand, J.)); *see also Farhy*, 100 F.4th at 234 (citing *Burrows v. United States*, 945 F.2d 408 (9th Cir. 1991) (unpublished table decision)).
[48] Appellee's Br. at 38.

15

1   violation of an Act of Congress without specifying the mode of
2   recovery or enforcement thereof, it may be recovered in a civil action."

3       One problem with this argument is that § 2461(a) is not in the
4   I.R.C.  Congress instead directed that it be codified in Title 28, which
5   concerns the judiciary.[49]  That placement is telling.[50]

6       Even more revealingly, in the thirty-four years between this
7   provision's enactment in 1948 and the dollar penalty's enactment in
8   1982, the provision was never used to collect a tax or tax penalty.[51]  It
9   is doubtful that Congress silently meant to require the Commissioner
10  to look for the first time to this provision outside the I.R.C. to be able
11  to do his job.

12      In sum, § 6038(b)'s history, purpose, and structure all point in
13  the same direction:  the penalty is assessable.

## CONCLUSION

15      For the reasons set out above, we hold that the Commissioner
16  can assess penalties incurred under § 6038(b).  Accordingly, we

---

[49] An Act to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary," Pub. L. No. 80-773, § 2461(a), 62 Stat. 869, 974 (1948).

[50] *See*, *e.g.*, *Yates v. United States*, 574 U.S. 528, 541–42 (2015) (plurality opinion).

[51] Neither the Court nor the parties have been able to find any such example.  Appellant's Letter (Jan. 7, 2026) at 1;  Appellee's Letter (Jan. 7, 2026) at 2.

16

1    **VACATE** the judgment of the Tax Court and **REMAND** for further

2    proceedings consistent with this opinion.